IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jane Doe, | ) | |
| | ) | C/A No. 2:24-cv-1682-RMG-KFM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Weston & Sampson Engineers, Inc., | ) | |
| and Jason Roberts, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT JASON ROBERTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS**

Defendant Jason Roberts ("Defendant" or "Roberts"), by and through his undersigned attorney, files this Partial Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Roberts moves to dismiss Plaintiff Jane Doe's ("Plaintiff") claims of defamation, intentional infliction of emotional distress, and tortious interference with contract against Roberts for failure to state a claim.

**I.     FACTS[1]**

Plaintiff brings this action alleging several claims against her former employer and co-worker, Roberts, arising from Robert's allegedly inappropriate behavior towards Plaintiff during a business trip. In March 2022, Plaintiff was hired by Defendant Weston & Sampson Engineers, Inc. ("W&S"), as a GIS analyst for its North Charleston, South Carolina office. (ECF No. 1,

---

[1] In ruling on a motion to dismiss, the factual allegations are to be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Therefore, while Roberts disputes many of the allegations in the Complaint, the factual allegations in the Complaint are set forth here as facts solely for purposes of this Motion to Dismiss.

Compl. ¶¶ 20, 27). Plaintiff incorrectly alleges that Roberts was also employed by W&S as a Technical Specialist and was Plaintiff's supervisor. (Compl. ¶¶ 6, 20).

On or about March 30, 2022, Plaintiff and Roberts traveled to Palm Beach, Florida, to attend a work conference along with another male coworker. *Id.* ¶¶ 31, 34-35. Plaintiff alleges that during the conference Roberts engaged in inappropriate behavior towards her and others, drank alcohol excessively, and sexually assaulted her on two separate occasions – once in Palm Beach during the conference and again in a hotel where Plaintiff and Roberts stayed while traveling home from the conference. *Id.* ¶¶ 41, 47-48, 52, 54-55, 66, 71, 73-75, 77. Plaintiff subsequently sought medical care and reported the allegedly inappropriate behavior to law enforcement and W&S. *Id.* ¶¶ 57-58. [2] Roberts contended that any physical contact with Plaintiff was consensual, which she denies. *Id.* ¶¶ 64. W&S terminated Roberts from his employment for excessive drinking at the conference. *Id.* ¶¶ 60, 64. She alleges that Roberts retaliated and harassed her through social media and text messaging. *Id.* ¶¶ 58, 61, 73, 77.

W&S granted Plaintiff's request for a week off from work, and when she returned to work on April 18, 2022, she alleges that W&S failed to adequately address the situation and failed to take additional security measures - leaving the office unlocked during the day when Roberts could have walked in. *Id.* ¶¶ 60-63. Plaintiff alleges that she was isolated at work and given little to no training or guidance on how to complete assignments. *Id.* ¶ 69. After working for W&S for less than two months, she took an unpaid leave of absence and subsequently she resigned from her employment. *Id.* ¶ 70.

---

[2] Plaintiff does not allege that Roberts was ever charged with any crime. In fact, although Plaintiff apparently reported the alleged incident to two different law enforcement agencies in Palm Beach, Florida and Charlotte, North Carolina. Both agencies thoroughly investigated the allegations and declined to bring any criminal charges.

Plaintiff alleges four state law claims against Roberts: (1) civil assault and battery; (2) intentional infliction of emotional distress; (3) defamation and defamation per se; and (4) tortious interference with contract. Plaintiff additionally alleges the two federal causes of action against W&S: (1) Title VII hostile environment harassment; and (2) Title VII retaliation and two state law claims: (1) intentional infliction of emotional distress; and (2) defamation, including defamation per se.

## II.     LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft,* 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   ARGUMENT

As set forth below, Plaintiff's claims for defamation, intentional infliction of emotional distress, and tortious interference with a contract against Roberts should be dismissed for failure to state a claim because the defamation and intentional infliction of emotional distress allegations lack the requisite specificity. Further, as to the tortious interference with a contract claim, Plaintiff fails to set forth any allegations to establish Roberts' intentional procurement of a contractual breach of Plaintiff's employment relationship.

**A. The Court should dismiss Plaintiff's defamation claim against Roberts because she failed to plead this claim with the requisite specificity.**

"The tort of defamation allows plaintiffs to recover for injuries to their reputation as the result of defendants' communications to others of falsities regarding the plaintiffs." *Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 580, 556 S.E.2d 732, 737 (Ct. App. 2001)). "To establish a defamation claim, a plaintiff must prove: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable regardless of harm or the publication of the statement caused special harm." *West v. Morehead*, 396 S.C. 1, 7, 720 S.E.2d 495, 498 (Ct. App. 2011).

Statements may be defamatory per se when they "charge the plaintiff with one of five types of acts or characteristics: (1) commission of a crime of moral turpitude; (2) contraction of a loathsome disease; (3) adultery; (4) unchastity; or (5) unfitness in one's business or profession." *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012). To qualify as defamation per se, the "defamatory meaning of a message or statement" must be "obvious on the face of the statement." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 501 (S.C. 1998) (using

as an example of a defamatory per se statement "A is a thief."). A statement that is not actionable per se cannot support a defamation claim without evidence of "special damages [which] are tangible losses or injury to the plaintiff's property, business, occupation or profession, capable of being assessed monetarily, . . . ." *Id.* Special damages do not include hurt feelings, embarrassment, humiliation, or emotional distress. *Wardlaw v. Peck*, 282 S.C. 199, 205–06, 318 S.E.2d 270, 274–75 (Ct. App. 1984).

The effect of classifying a defamatory statement as actionable per se is to relieve the plaintiff of the burden of "plead[ing] and prov[ing] both common law malice and special damages." *McBride v. Sch. Dist. of Greenville Cty.*, 698 S.E.2d 845, 852 (S.C. Ct. App. 2010) (internal quotation marks omitted). The per se determination, however, does not establish whether a statement constitutes actionable defamation in the first instance. Plaintiff is still required to sufficiently establish the other prongs of her defamation claim—including that the remark or remarks were published and not subject to qualified privilege. *See generally Davis v. New Penn Fin. LLC,* No. 6:18-3342-TMC-KDW, 2021 WL 3410790 *19 (D.S.C. May 25, 2021), adopted 2021 WL 3088059 (July 22, 2021). "Where a statement is defamatory per se, a Plaintiff is excused from pleading and proving special damages; [however,] [s]he is not excused from identifying the defamatory statement with sufficient specificity." *Young c. CSL Plasma, Inc.*, No. 3:21-cv-1208-SAL, 2022 WL 19406605 * (D.S.C. Sept. 30, 2022) (citation omitted). Here, Plaintiff has failed to plead any specifics about any alleged defamatory statements.

In *Carson v. Emergency MD, LLC*, the Court found that the plaintiff failed to state a claim that is plausible on its face because she failed to pled acts with specificity, i.e. she failed to allege the defamatory statements and it was unclear to whom the statements were published. No. 6:20-cv-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020). Further the court noted

that "[m]any courts applying South Carolina law have found that a lack of specificity in a plaintiff's allegations regarding a defamation claim warrants dismissal. *Id*. (citing *Dombek v. Adler*, No. 2:18-cv-391-RMG, 2019 WL 459019, at *2 (D.S.C. Feb. 5, 2019) (unpublished) (granting motion to dismiss claim for defamation per se because claimant alleged "nothing more than a recitation of the[ ] elements" and merely stated that " 'on multiple occasions,' including in email dated '19 September 2015' plaintiffs 'published unprivileged statements alleging that [the claimant] engaged in crimes of moral turpitude and acted in a manner unfit for [the claimant's] lawsuit business or profession.' "); *McNeil v. S.C. Dep't of Corr.*, 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (upholding dismissal of defamation claim, in part, because plaintiff "did not set forth with any specificity what the alleged false statements were"); *Jackson v. Denmark Tech. Coll.*, No. 1:17-03431-MGL, 2018 WL 3729743, at *5-6 (D.S.C. Aug. 6, 2018) (unpublished) (partially granting motion to dismiss because plaintiff failed properly plead publication element of defamation per se claim where she did not allege to whom she was defamed)); *Doe v. McGowan*, No. 2:16-cv-00777-RMG-MGB, 2017 WL 573619, at *3 (D.S.C. Jan. 5, 2017), report and recommendation adopted, 2017 WL 571487 (D.S.C. Feb. 13, 2017) (citations omitted) (dismissing defamation claim because "defendant cannot be expected to defend against an allegation that [the defendant] defamed [the] plaintiff by making a statement heard by unknown persons at an unknown place at an unknown time."). More recently, the court dismissed claims for failure to allege a defamation claim with specificity in *Barrett v. Grand Strand Reg. Med. Center*, No. 4:23-cv-2658-RBH-TER, 2024 WL 1494706, *6 (D.S.C. Jan. 3, 2024), adopted 2024 WL 1191109 (D.S.C. Mar. 20, 2024).

"Each act of defamation is a separate tort that, in most instances, a plaintiff must specifically allege." *Doe v. McGowan*, No. 2;16-cv-00777-RMG-MGB, 2017 WL 573619, *3

(D.S.C. Jan. 5, 2017), adopted 2017 WL 571487 (Feb. 13, 2017). Plaintiff, however, fails to provide sufficient detail of any alleged defamatory statements so as to state a defamation claim.

The following allegations in Plaintiff's Complaint are the ones that appear to touch on Plaintiff's defamation claim against Roberts:

> 71. Since the incident, defendant Roberts has disseminated misinformation regarding Jane Doe including that the actions were consensual and has attacked her reputation for chastity.
>
> 72. In the course of his employment with the Defendant Employer, Defendant Roberts was permitted to have access to personal information regarding the Plaintiff. This would potentially include information regarding her name, address, phone, vehicle, passwords, social security number, date of birth, residences, family details, and personal health data.
>
> 73. During and after his employment, Defendant Roberts used this information to harass Jane Doe and shared her personal information with the mother of one of his children, A.M..
>
> 74. After Defendant Roberts was terminated from Defendant Employer, A.M. repeatedly accused Jane Doe of being unchaste, and harassed and threatened Plaintiff.
>
> 75. The harassment took the form of LinkedIn messaging, Facebook, text messaging, and other forms of social media from Defendant Roberts, A.M., and two of A.M.'s co-workers and social media "friends" S.D. and B.A.
>
> 76. S.D. and B.A, tried contacting/requesting Plaintiff "to be my friend" on Facebook after she blocked A.M. on all social media.
>
> 77. Plaintiff continues to be harassed and threatened by Defendant Roberts and A.M. Plaintiff most recently in December 2023 she received 38 phone calls and voicemail messages from A.M. regarding her interaction with Defendant Roberts while employed at Weston & Sampson.
>
> . . .
>
> 113. Said statements, attacking Plaintiff's veracity and chastity, were upon information and belief, published to the employer, other employees of the Defendant employer, and others within the business and police communities, to Defendant Roberts' paramour and to other persons, not specifically stated herein.

(Compl. ¶¶ 74, 75, 113).

7

Plaintiff's allegations are not entirely clear. She first alleges that Roberts "disseminated" misinformation regarding her. *Id.* ¶ 71. However, she fails to allege to whom and she does not allege what misinformation was published to third parties. She then alleges Roberts used her personal information to harass her and shared this information with A.M., who then accused Plaintiff of being unchaste and harassed and threatened her. *Id.* ¶ 74. In this allegation, she alleges only A.M., not Roberts, accused her of being unchaste and harassed her. Further, she does not allege that A.M. acted at Roberts' direction or as his agent.[3]

Moreover, she does not allege that these statements were made to a third party. The publication of defamatory matter is its communication, intentionally or by a negligent act, to a third party—someone other than the person defamed. *Holtzscheiter*, 506 S.E.2d at 507. She generally alleges harassment from Roberts, A.M., and two of A.M.'s co-workers and social media friends, took place on LinkedIn, Facebook, text messaging, and though other social media forums. (Compl. ¶ 75). Harassment does not equate to defamation. Further, she does not allege the content of any of these texts or social media posts or whether these social media posts were available to the public. In fact, she alleges that she blocked S.D. and B.A.'s friendship request on Facebook. *Id.* ¶ 76. Additionally, she does not allege who received the text messages. While she does allege that Roberts used her personal information that he had access to, including **her** phone number, to harass her, *id.* ¶ 73, there are simply no specific allegations that third persons were sent defamatory text messages.

Plaintiff also makes conclusory allegations that the alleged defamatory statements "upon information and belief" were published to the employer, other employees, and others within the

---

[3] During this time period, Roberts was involved in litigation adverse to A.M. and had a Restraining Order against her.

8

business and police communities, Roberts' paramour and others not specifically stated herein." (Compl. ¶ 113). Again, to demonstrate publication to a third party, a plaintiff must provide facts that include "the time, place, content and listener of the alleged defamatory matter." *Campbell v. Int'l Paper Co.*, 2013 WL 1874850, at *3 (D.S.C. May 3, 2013) (quoting *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999) (unpublished table opinion)); *see also Davis*, 2021 WL 3410790, at *16 (finding that the plaintiff had failed to provide sufficient detail regarding the allegedly defamatory statements, including what was said and when they were made, that would allow the court to evaluate them for defamatory content); *Sigler v. Black River Elec. Coop.*, C/A No. 3:20-2203-JMC-SVH, 2020 WL 9209285 (D.S.C. Jul. 24, 2020) (report and recommendation), adopted by 2021 WL 856879 (D.S.C. Mar 8, 2021) (dismissing defamation claim because it lacked the necessary specificity); *Doe v. Cannon*, No. 2:16-cv-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017) (dismissing defamation claim because the plaintiff's allegations fail to "state with specificity the time, place, medium, and listener of the alleged defamatory statements"). Plaintiff's allegations lack these required details.

Additionally, Plaintiff specifically pleads this claim as one for "defamation and defamation per se." (Compl. at 17). While Plaintiff includes a general allegation that Roberts attacked her chastity, *id.* ¶ 71, without any allegations as to the details of such statements and to whom and when they were published, Plaintiff has failed to sufficiently establish any alleged defamatory per se statement. Moreover, Plaintiff must allege special damages for those alleged statements that do not constitute defamation per se, which she fails to do. Because Plaintiff's allegations fail to provide sufficient detail, her defamation claim should be dismissed.

Finally, any statements that Roberts made to W&S during the internal investigation are qualifiedly privileged, and any statements to the law enforcement in any subsequent investigation are also absolutely privileged. Pursuant to qualified privilege, "one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it [qualifiedly or] conditionally privileged, and (2) the privilege is not abused." *West* v. *Morehead*, 396 S.C. 1, 7, 720 S.E.2d 495, 499 (Ct. App. 2011) (alteration in original) (internal quotation omitted). The required elements of a qualified privileged communication are: (1) good faith; (2) an interest to be upheld; (3) statement limited in scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner to proper parties. *Bell v. Saturday Evening Post Publ. Co.*, 459 S.E.2d 315, 317 (Ct. App. 1995); *Manley v. Manley*, 353 S.E.2d 312, 315 (S.C. Ct. App. 1987). "An absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear reasonable relationship to it." *Crowell v. Herring*, 392 S.E.2d 464, 467 (S.C. Ct. App. 1990). Based on the foregoing, Plaintiff's defamation claim against Roberts should be dismissed.

**B.  The Court should dismiss Plaintiff's intentional infliction of emotional distress claim against Roberts as she has failed to sufficiently plead this claim.**

Plaintiff alleges a claim for intentional infliction of emotional distress against "all Defendants." (Compl. at 16). She alleges that "the Defendants above named, acted *negligently*, willfully, wantonly, recklessly, grossly negligently, and intentionally, being fully aware of the severe emotional trauma that the Plaintiff would suffer as a consequence of their actions." *Id.* ¶ 107 (emphasis added).

To recover for intentional infliction of emotional distress, a plaintiff must establish: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or

substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it." *Argoe v. Three Rivers Behav. Health, L.L.C.*, 392 S.C. 462, 475, 710 S.E.2d 67, 74 (2011); *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).

Here, Plaintiff merely recites the elements of a claim for intentional infliction of emotional distress. (Compl. ¶¶ 106-110). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor must the court "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts. Inc. v. J.D. Assocs., LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

Further, Plaintiff alleges Defendants acted "negligently" and "intentionally." (Compl. ¶ 107). Thus, to the extent, that she is relying on negligent actions, this claim should be dismissed. Finally, another issue with this claim is that it is unclear exactly what factual allegations Plaintiff is relying on to support this claim. She merely "realleges and incorporates each and every allegation" and does not refer to any specific conduct when alleging his claim. Moreover, she does not even distinguish between the Defendants when alleging this claim. "A shotgun pleading is '[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading.'" *Hill v. Stryker Sales Corp.*, No. 4:13-cv-0786-BHH, 2014 WL 4198906, at *2 (D.S.C. Aug. 20, 2014) (citations omitted). Sometimes such a complaint

"assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). With this type of pleading "to one degree or another, . . . defendants [are not afforded] adequate notice of the claims against them and the grounds upon which each claim rests" thereby impeding a meaningful response. *Id.* For these reasons, Roberts moves to dismiss Plaintiff's claim for intentional infliction of emotional distress.

### C. Plaintiff also fails to state a claim of intentional infliction of emotional distress against Roberts because the exclusivity provision of the South Carolina Workers' Compensation Act bars such a claim.

In Plaintiff's complaint, she alleges that she has suffered damages arising out of and in the course of her employment with Defendant. Accordingly, Plaintiff's claim falls within the exclusivity provision of the South Carolina Workers' Compensation Act ("Act"). *See* S.C. Code Ann. § 42-1-540 (providing that in the event of an injury, all other rights and remedies of such employees are excluded).

The Act contains an exclusivity provision which "precludes an employee from maintaining a tort action against an employer where the employee sustains a work-related injury." *Todd v. Fed. Express Corp.*, No. 4:09-1501-TLW-TER, 2010 WL 1294070, at *1 (D.S.C. Mar. 29, 2010) (citation omitted). "South Carolina has expressly acknowledged, at least twice, that the immunity under the Act 'is conferred not only on the direct employer but also on co-employees.' " *Crutchfield v. Pfizer, Inc.*, 2103 WL 2897023, *5 (D.S.C. June 13, 2013) (citing *Posey v. Proper Mold & Engineering, Inc.*, 378 S.C. 210, 661 S.E.2d 395, 403 (S.C. Ct. App. 2008) and *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004)).

"[T]he only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the *employer or its alter ego*; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations." *Whicker v. Sci. Applications Int'l. Corp.*, No. 2:11-3193-SB-BHH, 2012 WL 4983864, at *2 (D.S.C. Sept. 20, 2012) (emphasis added) (citing *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 (S.C. 2002)). A co-employee who negligently injures another employee while in the scope of employment is immune under the Act and cannot be held personally liable. *Dickert*, 428 S.E.2d at 702 (citing *Nolan v. Daley*, 73 S.E.2d 449 (S.C. 1952) ). This immunity is not extended to a co-employee who commits an intentional tortious act upon another employee. *Id*.

However, in *Peay v. U.S. Silica Company*, the South Carolina Supreme Court held that the exception for intentional injuries should be given the most narrow construction and thus, only those injuries inflicted by an employer who acts with deliberate or specific intent to injure are exempted from the exclusivity provisions of the Act. 313 S.C. 91, 94, 437 S.E.2d 64, 65-66 (1993). "The same standard also would apply to injuries intentionally inflicted by a co-employee." *Id.* at 94 n.1, 437 S.E.2d at 66-n.1. *See also Sibert v. Raycom Media., Inc.*, No. 3:17-cv-1544-CMC, 2017 WL 3721238, *3 (D.S.C. Aug. 29, 2017).

"[C]laims of intentional infliction of emotional distress, when committed by another employee, typically fall within the exclusivity provisions of the South Carolina Workers' Compensation Act." *Todd v. Fed'l Express Corp.*, 2010 WL 1294070, *2 (D.S.C. Mar. 29, 2010) (citations omitted). *See also Loges v. Mack Trucks*, 417 S.E.2d at 540 (holding that actions for intentional infliction of emotional distress are personal injuries that fall within the scope of the

13

exclusive remedy provision of the Act). And Plaintiff does not sufficiently allege such "conscious and deliberate intent directed to the purpose of inflicting an injury" on the part of Roberts to render it an exception. Accordingly, Plaintiff fails to state a claim for the intentional infliction of emotional distress because it is barred by the Act's exclusivity provision.[4]

### D. The Court should dismiss Plaintiff's tortious interference with contract claim as she has not alleged any facts to support the allegations that Roberts intentionally procured her resignation.

Because Plaintiff voluntarily resigned and was not constructively discharged, there was no breach of the employment at-will contract. Further, Roberts cannot be a third party who interfered with Plaintiff's at-will contract with W&S because he was an agent of W&S, and agents of employers are not third parties to the employer's contracts. Finally, there are no allegations that Roberts intended to cause or actually caused the termination of Plaintiff's job at W&S.

Under South Carolina law, the elements of a cause of action for tortious interference with contract are: (1) the existence of the contract; (2) the other party's knowledge of the contract; (3) the other party's intentional procurement of a breach of the contract; (4) the absence of

---

[4] Recently the Fourth Circuit Court of Appeals addressed the exclusivity provision of the Act and its effect on subject matter jurisdiction of federal district courts in *Wideman v. Innovative Fibers LLC*, __ F.4th ___, 2024 WL 1916759 (4th Cir. May 2, 2024). The court held that a state's worker's compensation exclusivity statute does not limit the subject matter jurisdiction of federal courts in diversity cases. Assuming this holding also applies in a federal question case with supplemental jurisdiction over state law claims, a defendant raising the exclusivity provision of the Act should raise the issue as one of failure to state a claim rather than a lack of jurisdiction. *Id.* at *4, 5 (stating "So when state law prohibits plaintiffs from suing to enforce a state-law right in any state court, federal courts sitting in diversity are bound to dismiss the suit for failure to state a claim" and the Act's "limitation only determines whether Plaintiffs have stated a claim upon which relief can be granted; it cannot strip of subject matter jurisdiction that we otherwise enjoy."). If the Court disagrees, Roberts alternatively raises this issue as a ground to dismiss for lack of jurisdiction under Rule 12(b)(1).

justification; and (5) resulting damage. *Propel PEO, Inc. v. Roach*, No. 6:19-cv-3546-KFM, 2021 WL 5918623, *11 (D.S.C. July 23, 2021) (citing *Eldeco, Inc., v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007)).

Additionally, a tortious interference with a contract claim does not protect a party to a contract from actions of the other party" to the contract. *Agosini v. Hartford Cas. Ins. Co.*, No. :15-cv-1884-TLW, 2016 WL 11519133, *6 n. 4 (D.S.C. Nov. 28, 2016) (citing *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 753 S.E.2d 840, 844 (S.C. 2012) (citations omitted)). "[C]oworkers, as agents of an employer, are not third parties, and thus, cannot be liable for tortious interference with a contract." *McLendon v. Horry Cnty. Police Dep't*, No. 4:13-CV-3403-BHH, 2016 WL 1168142 (D.S.C. Mar. 25, 2016) ("because [the plaintiff's supervisors] are agents of Plaintiff's employer, HCPD, Plaintiff cannot maintain an action against them for intentional interference with a contract"); *Farley v. Goodwill Indus. of Lower S.C., Inc.*, No. 4-15-CV-2450, 2016 WL 408949, at *16 (D.S.C. Jan. 12, 2016) report and recommendation adopted, 2016 WL 398159 (D.S.C. Feb. 2, 2016); *Wencoast Restaurants, Inc. v. Chart Capital Partners, L.P.*, No. 2:05-1650-18, 2006 WL 490101, at *3 (D.S.C. Feb. 28, 2006) (finding plaintiff could not establish an interference with contract claim against defendants who were parties to the contact, including the agents and employees of the defendants). The South Carolina Supreme Court recently confirmed that there cannot be a tortious interference claim based on the actions of a co-worker stating: potential liability [for this cause of action] extends to third parties who are *not* fellow employees of the terminated employee." *Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 87, 866 S.E.2d 337, 346 (2021) (emphasis added). Accordingly, the tortious interference claim against Roberts should be dismissed because Roberts, who was Plaintiff's co-worker, cannot be liable such a claim.

Further, another "glaring problem with [Plaintiff's] tortious interference claim is that [s]he alone made the decision to resign from [W&S]." *See Taylor v. CNA Corp.*, 782 F.Supp.2d 182, 204 (E.D. Va. 2010). Her voluntary resignation from W&S breaks the chain of causation that is necessary to show a relation between the alleged interference and the supposed termination. *See, e.g., Falzone v. Licastro*, No. 1:10cv2918, 2012 WL 711273, at *4 (N.D. Ohio Mar. 4, 2012) ("Voluntary resignation breaks the chain of causation that would have linked any alleged interference to the contract's breach.") (citation and internal alterations omitted); *Geller v. Von Hagens*, No. 8:10–cv–1688, 2010 WL 4867540, at *4 (M.D. Fla. Nov. 23, 2010) ("Defendants' point is well-taken that, having presented that his resignation was voluntary, Geller cannot now be allowed to maintain a cause of action for tortious interference with his contract."); *Brescia v. Leff*, No. 3:04cv1680, 2006 WL 3231433, at *6 (D. Conn. Nov. 7, 2006) (holding plaintiff's claim of tortious interference with contractual rights fails in part because of her voluntary resignation) (citation omitted); *Thompson v. City of Columbus*, No. C2–98–822, 2001 WL 1681129, at * 6 (S.D. Ohio Sept. 26, 2001) (holding plaintiff's tortious interference claims fails as a matter of law for because she voluntarily resigned from her employment.); *Mart v. Dr. Pepper Co.*, 923 F. Supp. 1380, 1390 (D. Kan. 1996) ("Simply put, there is no evidence that Pepsi or Terrell interfered with or induced the breach of any such contract. Plaintiff voluntarily resigned from her position.").

Furthermore, in this case, to succeed on a claim of tortious interference, Plaintiff must show that she breached a contract at the inducement of Roberts. *Eldeco*, 372 S.C. at 561, 642 S.E.2d at 732. Even accepting the allegations in the Complaint as true, there are no allegations that Roberts intentionally induced or coerced *Plaintiff* to resign or leave her employment. *See Nucor Corp. v/ Bell*, No. 2:06-cv-02972-DCN, 2008 WL 9894350, *13 (D.S.C. Mar. 14, 2008).

In *Hall*, the court considered whether a tortious interference with contractual relations claim could lie when the "contractual relations" at issue were between an employer and an at-will employee. 866 S.E.2d 337, 345. The court held that, while there is "no breach of contract when an employer fires an at-will employee[,] . . . the absence of an underlying breach does not shield a third party from liability when she intentionally and unjustifiably procures the termination of an at-will employee." 866 S.E.2d at 344 (emphasis added). Here, Plaintiff was not terminated by her employer; rather she resigned, and she has not alleged that Roberts "intentionally and unjustifiably procured" her resignation

Reviewing the allegations in the Complaint, Plaintiff alleges that "Defendant Roberts not only caused Plaintiff's (sic) to require time off, and eventually terminate her position, but actively sought to interfere with her job." (Compl. ¶ 123). This allegation does not support the requisite element that Roberts intentionally procured or coerced her into resigning from her employment. After Roberts was terminated, there were many intervening actions that caused Plaintiff's subsequent resignation. Plaintiff herself alleges that she resigned based on her allegations that W&S failed to adequately respond to her reports of Roberts' misconduct. *Id.* ¶¶ 65-70). Plaintiff alleges that W&S failed to provide assistance or counseling to her and left her to fend for herself. *Id.* ¶¶ 67, 69. Further, she alleges that she was isolated by her GIS team and given little guidance and training to complete assigned work. *Id.* ¶ 69. And that these actions are what forced her to resign. *Id.* ¶ 70.

Further, Plaintiff's allegation that Roberts threatened retaliation if she reported that Roberts had been drinking at the conference, *id.* ¶¶ 44, 50 ("he would end her employment and career"), do not support this claim as she fails to allege any facts supporting that he actually did

17

retaliate and, moreover, her employment was not terminated by W&S; she resigned.[5] Plaintiff's claim for tortious interference with a contract should be dismissed because she has failed to allege Roberts intentionally procured a contractual breach of Plaintiff's employment relationship.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant his Partial Motion to Dismiss and dismiss Plaintiff's claims of defamation, intentional infliction of emotional distress, and tortious interference with contract against Roberts.

Respectfully submitted,

s/Deborah B. Barbier
Deborah B. Barbier (#6639)
DEBORAH B. BARBIER, LLC
1811 Pickens Street
Columbia, South Carolina 29201
803-445-1032
dbb@deborahbarbier.com

June 7, 2024

Columbia, SC

---

[5] In fact, because Roberts was terminated from his employment at W&S before Plaintiff resigned, he could not have followed through on any alleged threats of retaliation to end her employment at W&S.