IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CASE NO.: 2:24-cv-1682-RMG-BM

| | | |
|---|---|---|
| **Jane Doe** | ) | |
| | ) | |
| **Plaintiff,** | ) | **OPPOSITION TO DEFENDANT** |
| | ) | **JASON ROBERTS' MOTION TO DISMISS** |
| **v.** | ) | |
| | ) | |
| **Weston & Sampson Engineers, Inc.** | ) | |
| **and Jason Roberts** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### I.  INTRODUCTION

Plaintiff opposes Defendant Jason Roberts' Motion to Dismiss her claims pursuant to Federal Rule 12 (b) (6) Motion (ECF 15). Plaintiff submits that her Complaint, (ECF 1), attached as Exhibit 1, alleges facts sufficient to sustain Plaintiff's claims for relief and meets the requirements of the Rules. As all matters are sufficiently pleaded, Plaintiff requests that no cause of action be dismissed at this time.

### CASE STATUS

This case arises following Doe's employment with the Corporate Defendant, Weston & Sampson, and the events which transpired subsequently, including those involving Defendant Roberts. Defendant Weston & Sampson Engineers, Inc. employed Roberts as a Supervisor. W & S hired Plaintiff beginning in March 2022 to work at its North Charleston, SC facility. This was Plaintiff's first job after graduating college. After working for less than 2 weeks, the Defendant

1

Company allowed supervisor Defendant Roberts, who had a history of serious disciplinary issues, to arrange for the 22 year old to accompany him to a business conference where she has alleged she was sexually harassed and sexually assaulted by him. When she returned from the trip and reported the events, she experienced additional harassment, hostility and retaliation from the Defendant Company, and defamation by its agents and employees, including Roberts. See Exhibit 1, Complaint, para. 61-65, 112-117

Plaintiff filed suit after exhausting her administrative remedies with the EEOC. The Complaint alleged against the employer: hostile environment under Title VII of the Civil Rights Act of 1964, retaliation under Title VII, as well as claims for Intentional Infliction of Emotional Distress, Defamation and Defamation *per se*. See Exhibit 1, Complaint. As for Defendant Roberts, Plaintiff filed in her detailed Complaint the following causes of action against him individually: assault and battery; intentional infliction of emotional distress; interference with contract; and defamation. Defendant W & S filed a Motion to Dismiss ( ECF 7) on May 16, 2024, and Plaintiff filed her Opposition (ECF 18) on June 10, 2024, to which she attached her proposed Amended Complaint (ECF 18-4). W & S filed a Reply Brief in Response to Plaintiff's Opposition to the W & S Motion to Dismiss (ECF 20) on June 17, 2024.

In an abundance of caution, Plaintiff filed a Motion for Leave to Amend on June 12, 2024 (ECF 19). Defendant Roberts specifically did not consent, and W & S has not taken a position to date. Defendant Roberts has now filed a Motion to Dismiss pursuant to FRCP 12(b) (6)(ECF 15) filed on June 7, 2024. The Motion seeks dismissal of Plaintiff's claims of defamation, intentional infliction of emotional distress and tortious interference with contract against Roberts.

Discovery has not yet commenced in this matter. This lawsuit is not at the stage where Plaintiff has received or has access to full records relating to workers compensation, discipline, investigations, personnel files or other specific comparator information, including her own personnel files.

## II.     STANDARD OF REVIEW

Traditionally a Plaintiff must merely provide "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P.8(a)(2). The liberal pleading standards, adopted in 1938 with the Federal Rules of Civil Procedure, were designed to eliminate procedural barriers at the beginning of litigation that could prove fatal even to a meritorious claim. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 43 (1957). The dissent in *Twombly* specifically Stated that *Conley* should not be "interred…without a eulogy." *Twombly* at 577 (Stevens, J., dissenting). Plaintiff must provide the "grounds'" of her "entitle[ment] to relief", which requires more than labels and conclusions. *Bell Atlantic Corporation. v. Twombly*, 550 U.S. 544, 545, 127th S. Ct. 1955, 1959 (2007). The court must evaluate the legal sufficiency of a complaint, and determine whether the complaint on its face States plausible claims upon which relief can be granted. *See, Francis v. Giacommelli*, 588 F.3rd 186, 189 (C.A. 4 MD. 2009). The allegations need not pass a probability test as the Court must still assume the allegations are true, but the Plaintiff must offer plausible facts, "enough facts to raise a reasonable expectation that discovery will reveal evidence…" of the causes of action plead. *Twombly* at 545.

3

The Fourth Circuit has held that the pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Robinson v. AM. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). The court is not required to, "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). But to the extent facts are disputed, the court still must construe them in favor of the nonmoving party.[1]

The Plaintiff's Complaint, Exhibit 1, alleges sufficient and plausible facts entitling her to relief on each cause of action. As such, the Defendant's Motion to Dismiss should be denied.

### III. ARGUMENT

#### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS HAS BEEN SUFFICIENTLY PLEAD

Defendant asserts that Plaintiff has not sufficiently detailed the events of her sexual assault for the Complaint to pass muster under the Federal Rules. First Defendant finds the Complaint simply formulaic and labels the Complaint a "shotgun pleading" with insufficient clarity to allow the Defendant to craft a responsive pleading, citing an unpublished opinion, *Hill*

---

[1] Defendant Roberts notes in Footnote 2, ECF 15-1, p.2, that Plaintiff's allegations regarding sexual assault did not result in charges of a crime or a conviction. This is irrelevant. However, to the extent that the comment is warranted, statistics and research consistently show that sexual assault reporting and the prosecution thereof remains low. The Rape, Abuse, and Incest National Network (Raain.org/about-sexual-assault) estimates that for every 1,000 rapes, 310 are reported to police, 50 reports lead to an arrest, 28 cases result in a felony conviction, and 25 cases result in incarceration. This compares to higher rates at every stage for other felonies like robbery or assault.

*v. Stryker Sales Corp.* 4:13 cv 0786, 2014 WL 4198906 at 2 (DSC 2014). See ECF 15-1 at Page 11. *Stryker* was in the nature of a medical negligence matter. In that case, Judge Hendrix declined to dismiss the complaint based on the allegation that it was a "shotgun pleading" and noted in full:

> Defendant's allegation that the Plaintiff's complaint is a "shotgun pleading," the Court notes that the term "shotgun pleading" is itself a "label," and parties seeking dismissal on such a basis must do more than simply attach it to the other side's submission. A Shotgun pleading is "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *SunTrust Mortgage, Inc. v. Old Second Nat. Bank,* 2012 WL 1656667 (E.D. Va. May 10, 2012) (quoting *Lampkin-Asam v. Volusia County Sch. Bd.,* 261 F. App'x 274, 277 (11th Cir. 2008)). In such instances, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996). Plaintiffs' causes of action do incorporate prior allegations by reference, but as Defendant points out, the complaint is hardly heavy on facts. Plaintiffs' complaint does not place the Defendant in the unfair position of sorting through a slew of factual allegations trying to guess what harm is being alleged. Accordingly, the Court declines to dismiss the complaint on the basis that it is a "shotgun pleading."

Here, Plaintiff incorporated allegations by reference into the causes of action, and plead the facts in a separate section. The facts section of the Complaint (Exhibit 1) begins on page 4 and ends on page 16. The paragraphs discussing Defendant Roberts clearly identify him. The Complaint succinctly lays out Defendant Robert's job and disciplinary history, along with his behavior leading up to the allegations of sexual assault, and subsequently. Exhibit 1, Complaint, Paragraphs 29-79. The sexual assault allegations against Roberts are clearly described in Paragraphs 44-56, as well as Defendant Roberts' description of the events as consensual in Paragraph 64. The mental and physical damages arising from Defendant Roberts' actions are

5

included in several paragraphs, including 55-57, 65-68, 70, and 78-79. The post employment harassment by Roberts is described in Paragraphs 72-77. Although there are two defendants in the case, the allegations which apply to Roberts, the individual employee, versus the employer, are well identified. Plaintiff believes that a reasonable person would be able to understand the document and formulate an answer. This is not a situation where a Defendant is being placed in an unfair position by not knowing what is being alleged against him.

      To establish an intentional infliction of emotional distress claim, Plaintiff must plead that (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it." *Bass v. S.C. Dep't of Soc. Servs.,* 414 S.C. 558, 575, 780 S.E.2d 252, 260-61 (2015) (quoting *Argoe v. Three Rivers Behavioral Health, LLC,* 392 S.C. 462, 475, 710 S.E.2d 67, 74 (2011)).

      Plaintiff alleged the sexual assaults by Defendant that lead to severe emotional distress. See, Exh. 1, Complaint, para. 44-57, 65-70, 78-9 and 107. The South Carolina Court of Appeals held "that an intent to harm will be inferred as a matter of law when a person sexually assaults, harasses, or otherwise engages in sexual misconduct towards an adult." *State Farm Fire & Cas. Co. v. Barrett,* 530 S.E.2d 132, 136 (S.C. Ct. App. 2000). Plaintiff alleged that the conduct was extreme, outrageous, exceeded the bounds of decency, and was atrocious and intolerable in a

6

civilized community. Exhibit 1, Complaint, Para. 108.  Plaintiff alleged that Defendant's actions caused her emotional distress, and that it was so severe no reasonable person should have to endure the same. Exhibit 1, Complaint, para. 107-109, and 56-57,65-70, 78-9 and 107. Specifically, the emotional distress plead includes fear of death (para. 49); nervous and panicky (para. 44); in fear of her life (para. 48-49); in a state of shock (para. 57); terrified of being killed (para. 64); fear (para. 65); nightmares and PTSD (para.66); isolated and scared (para. 67); fear, depression, anxiety (para. 68); humiliation, embarrassment, indignity (para. 79).

As the grounds for the claim of IIED are fairly and clearly set forth, Plaintiff requests that her Complaint not be dismissed on the grounds of insufficiency.

### B.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS  and  WORKERS COMPENSATION EXCLUSIVITY MATTERS

Defendant Roberts seeks to dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress/Outrage by stating the same is blocked under the exclusive remedy theory. Defendant asserts that Worker's Compensation is the exclusive remedy for an employee who sustains an injury arising from their employment. ECF 15-1 page 12-14 .

Not plead in the Complaint, Exhibit 1, but included in the proposed amended Complaint, Exhibit 4, and Motion for Leave to Amend, Exhibit 5, Plaintiff did attempt to file for Workers' Compensation benefits. See Exhibit 2, Redacted SC Workers' Compensation Commission claim. The employer of both Plaintiff and Defendant Roberts, Weston & Sampson, through its agents, took the position that the events underlying this matter were not covered by the Act. See Exhibit

3, Workers' Compensation claim denial letter. That letter to Plaintiff, dated June 22, 2022, states that her case was not compensable under the "Work Comp" laws of South Carolina. "There is no compensable injury, arising from an accident in the course and scope of employment". *Id*. Upon information and belief, this decision was reached with the input of the Defendant Weston & Sampson and Defendant Roberts. This would include Defendant Roberts' claims that any sexual contact with Plaintiff was consensual. See Exhibit 1, Complaint Para. 64 and 71.

The Defendant appears to be taking alternative positions that the facts underlying the Complaint are covered, as well as not covered, by the Workers' Compensation Act. Plaintiff does not have access to her workers compensation files or investigations. Without further discovery of the position Defendant Roberts is taking, it is unfair to dismiss Plaintiff's claim. If there are actions that Defendant will later claim were either inside or outside the scope of the Plaintiff's employment, or were consented to by the Plaintiff (i.e. sexual interactions), Plaintiff deserves to be able to discover the same and to amend her Complaint or take other appropriate actions relating to pleading her case.

South Carolina also recognizes the doctrine of judicial estoppel. *See Haynes Federal Credit Union v. Bailey,* 327 S.C. 242 (1997). The doctrine of judicial estoppel precludes a party from adopting a position in conflict with one previously taken in the same or related litigation. *See Quinn v. Sharon Corp.,* 343 S.C. 411, 414, 540 S.E. 2d 474, 476 (2000). A party cannot assert one set of facts in litigation and then change those facts in subsequent litigation "when the initial version no longer suits him". *Haynes,* 327 S.C. at 252. Applicable to the circumstances

here, judicial estoppel may be properly applied to prevent a party from asserting a legal position regarding their circumstances, including the employment relationship with another when that position contradicts the legal position they previously asserted regarding their employment status. *See Allen v. Zurich Ins., Co.,* 667 F.2d 1162 (4th Cir. 1982). This is because the purpose of the doctrine is to protect the integrity of the judicial process and the courts. *Quinn,* 343 SC. at 414, 540 S.E. 2d at 475. Judicial estoppel is an equitable concept and the application of the doctrine is discretionary. *Hawkins v. Bruno Yacht Sales, Inc.* 353 S.C. 31 (2003).

The Fourth Circuit and federal courts also apply this principle. The Fourth Circuit discussed estoppel in detail in *Allen v. Zurich Insurance, Co.,* 667 F.2d 1162 (4th Cir. 1982) and stated that "in certain circumstances a party may properly be precluded as a matter of law from adopting a legal position in conflict with one earlier taken in the same or related litigation. *Id* at 1166.

Regarding Defendant Roberts claims that Plaintiff's IIED claim is barred by workers compensation exclusivity, a workplace injury is not covered by the South Carolina Workers Compensation Act unless there is (1) an injury, either physical or mental, (2) created by accident, and (3) arising out of employment. *Dickert v. Metropolitan Life Ins*. Co. 306 S.C 311, 411 S.E.2d 672, *Dickert Metropolitan Life Ins. Co*., 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993). Cases where the injury is caused by an accident are within the jurisdiction of the South Carolina Workers' Compensation Commission.

S.C.Code Ann. §42-1-540 bars all common law actions against an employer for "accidental" personal injury. See also *Cook v. Mack's Transfer & Storage*, 291 S.C. 84, 352 S.E. 2d 296, 298 (S.C. App. 1986) cert. denied, 292 S.C. 230, 355 S.E. 2d 861 (S.C. 1987) (stating that the exclusivity provision of the Act "bars all actions against an employer where a personal injury to an employee comes within the Act... [making] the Act the exclusive means of settling all such claims"). Exceptions to the Act include subcontractor incidents, intentional injury, slander/injury to reputation and specific occupational exclusions. *Cason v. Duke Energy*, 560 SE2d 892, 893, n.2 (SC 2002). In addition, the Act's exclusivity provision does not bar suits for which the Act provides no remedy. See, *Futia v. Palmetto Behavioral Health*, 317 F.Supp.2nd 638 (SCDC 2004); see also, *Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993).

When an injury is inflicted by an employer who acts with a specific intent to injure, the resulting injuries are exempted from the exclusive remedy of worker' compensation coverage. *Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993). Defendant Roberts agrees and also cites the *Peay* case in his brief, stating that the act does not cover injuries inflicted with specific intent, and further clarifies that the same standard applies to injury intentionally inflicted by a coworker. See Roberts Motion to Dismiss, ECF 15-1, page 13. The South Carolina Court of Appeals held "that an intent to harm will be inferred as a matter of law when a person sexually assaults, harasses, or otherwise engages in sexual misconduct towards an adult." *State Farm Fire & Cas. Co. v. Barrett,* 530 S.E.2d 132, 136 (S.C. Ct. App. 2000). Here, the Plaintiff alleged that she was subjected to specific physical and psychological abuse including "sexual

10

misconduct" by the Defendant with intentional egregious actions taking place on a work trip. See Exhibit 1, Complaint, para 42-50; 52, 54-57. As such Plaintiff's cause of action sufficiently pleads intentional actions and should not be dismissed.

An additional exception exists where intentional abusive conduct is committed by an owner or high-level manager of the corporation, he can be considered an alter ego of the employer. An employee is not precluded from suing his employer at common law if the employer or an "alter-ego" of the employer commits an intentional tort against the employee because "the intentional and outrageous nature of the act removes it from the realm of an 'accidental' injury." *Stewart v. McLellan's Stores*, 194 S.C. 50, 9S.E.2d35 (1940). An alter ego of a corporation is defined as a dominant corporate owner or officer of a corporation. *Dickert v. Metropolitan Life Ins. Co.*, supra.; *See also, Andrews v. Peters*, 55 N.C. App. 124, 284 S.E.2d 748 (1981); *disc. rev. denied* 305 N.C. 395, 290 S.E.2d 364 (1982). The asserting party must prove the exception, that the employee is an alter-ego, and that the acts of the employee are so serious and aggravating as to evidence a willful intent to injure.

*Stewart v. McClellan's Stores Co., et al,* 194 S.C. 50, 9 S.E. 2d 35 (S.C. 1940), is the seminal case on this topic. In *Stewart,* our State Supreme Court discussed at length the exclusivity provision of the Act and the applicability if they are committed by managers. In Stewart, a manager of a store assaulted and battered an employee, and "with considerable force and violence" and thus was considered the alter ego of the Employer. In this case, the Plaintiff has plead that the assault and acts at issue were committed by management. See Exhibit 1,

11

Complaint, para 21, 29, 31, 42-50; 52, 54-57, 72. As to whether the individual supervisor in this case is an alter ego, this is a fact to be determined, and is a complex question, as Weston & Sampson is employee owned. See Weston and Sampson's Motion to Dismiss, ECF 7-1, page 1.

Given the foregoing, Plaintiff prays that the cause of action for intentional infliction of emotional distress against Roberts is not barred by the exclusivity of the Workers' Compensation statute and should not be dismissed at this time.

## C. PLAINTIFF'S INTERFERENCE WITH CONTRACT CAUSE OF ACTION

Plaintiff asserts in her Complaint that Roberts interfered with her employment relationship with Weston & Sampson. See Exh. 1, Complaint, Para. 119-127. Defendant Roberts seeks to dismiss Plaintiff's claims of tortious interference based on alleged voluntary resignation and because Defendant was a co-worker. The elements of an action for tortious interference with an employment contract as set forth in *DeBerry v. McCain*, 275 S.C. 569, 274 S.E. (2d) 293 (1981), are as follows: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) absence of justification; and (5) damages resulting therefrom.

As a defense to Plaintiff's tortious interference claim, Defendant Roberts asserts that interference claims against coworkers are blanketly prohibited. To the contrary, Judge Ralph King Anderson, in his SC JI CIVIL § 33-6 South Carolina Requests to Charge -Tortious Interference with Contract states that: "Generally, a corporate officer or employee is not liable

12

for tortiously interfering with a corporate contract because he is considered a party to the contract, as long as he is acting to serve the corporate interests, or unless his activity involves individual separate tortious acts. However, a corporate officer or employee may be liable for tortiously interfering with a corporate contract if he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests." This principle is outlined in detail in *Lyne v. Price*, No. W2000-00870-COA-R3-CV, (Tenn. Ct. App. June 27, 2002), which although it is an out of state case, explains the principle in a similar manner to Judge Anderson:

> A corporate director, officer or employee may be held liable for interference with such a contract if "he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests." *Id*. at 333 (quoting Thomas G. Fisher, Annotation, *Liability of Corporate Direct, Officer or Employee for Tortious Interference with Corporation's Contract with Another,* 72 A.L.R. 4th 492 (1989)). However, where there is intentional interference with an employment contract, there is frequently "some element of ill will"; consequently, where the director, officer or employee is generally acting in furtherance of the corporate interest, "the addition of a spite motive usually is not regarded as sufficient to result in liability." *Id*. at 333 (quoting W. Page Keeton, *Prosser Keeton on the Law of Torts* § 130, pp. 1009-10 (5th ed. 1984)). He may be held liable if "the reason underlying his interference is purely a malevolent one, and a desire to do harm to the plaintiff for its own sake." *Id*. *Lyne v. Price,* No. W2000-00870-COA-R3-CV, (Tenn. Ct. App. June 27, 2002).

Defendant cites *Hall v. UBS Financial,* a case addressing employment at will in the context of an interference cause of action. 435 SC 75, 866 SE2d 337 (2021). *Hall* was filed by an alleged sexual harasser against a reporting co-worker, and contains dicta regarding suits by co-workers. *Hall* does not discuss the exceptions to the co-worker defense, and in fact would stand for the proposition that in a sexual assault case the issues surrounding are fact intensive and

13

would as such make a case such as this inappropriate for early dismissal : "First, Reid claims she was a party to Hall's at-will employment agreement with UBS and therefore cannot be held liable for inducing UBS to fire Hall…. Resolution of [this issue] depends upon an evaluation of facts to be developed as the case progresses." *Id at 87.*

As pleaded in Complaint, Exhibit 1, Plaintiff alleged that Defendant Roberts assaulted her; para. 47-48, 55, 81; threatened her job, para. 44, 50, 55; threatened to ruin her reputation 50, 71,94,104,115-116; threatened her with physical harm 54- 55, and made untrue statements to the employer, para. 64, 12-113,116. She further alleged that Defendant's post employment actions interfered with her work, Para. 71-79 which left Plaintiff with no choice but to exit her employment relationship. Para. 70. Post employment actions include ongoing threats of physical, psychological and reputational and career harm after he was fired. Para 71-79. None of these actions were in furtherance of the employer's business as engineers or any other corporate interests. Given that fact, Plaintiff's claim should not be dismissed based on the co-worker defense.

Defendant Roberts alleges that he did not intentionally procure a breach of the employment relationship but claims that Plaintiff voluntarily exited employment. Defendant does not allege that employment at will bars the claim. See Motion to Dismiss, ECF 15-1, page 15-16; citing *Hall v. UBS Financial.* Plaintiff asserted in the Complaint that the actions of the Defendant and their impact on her employment lead to her having no choice but to leave Weston & Sampson. Exh 1, Complaint, para 64-70. Plaintiff alleges Defendant assaulted her and

14

threatened her, and intentionally carried out his plan to interfere with her employment when she reported him. Plaintiff has alleged that she could no longer perform her job at Weston and Sampson because of the Defendant's conduct. If Plaintiff could have continued to work there, she would have but the situation crafted by Roberts interfered with her relationship with the employer, her reputation, her ability to work with the team, her ability to represent the employer and to learn and perform the job. Without his actions she still might be working there. He caused her to leave the job due to intolerable circumstances. She did not do so of her own volition.

Defendant cites numerous summary judgment cases to support the dismissal of the case including cases where the Plaintiff left employment. These cases address questions of fact at the summary judgment stage rather than the motion to dismiss stage. Defendant cites the 2008 decision in *Nucor Corp. v. Bell*, but fails to note that at the motion to dismiss stage, the claims for tortious interference were not dismissed. See *Nucor v Bell*  482 F. Supp. 2d 714 (D.S.C. 2007). Plaintiff submits that she has outlined a plausible cause of action at this stage, as required by the rules, and as such her claim should not be dismissed.

**D.      PLAINTIFF'S CLAIM FOR DEFAMATION HAS BEEN PROPERLY PLED**

Plaintiff alleged that her former supervisor made false and injurious misstatements about her, disseminated false information including regarding her reputation for being chaste and honest. See Exhibit 1, Complaint, para 72-77, 112-117. Nevertheless, Defendant Roberts seeks dismissal of this claim. Motion to Dismiss, ECF 15-1, page 4-10. Defendant Weston & Sampson

15

made a similar Motion to Dismiss (ECF 7) to which Plaintiff responded (ECF 18) and attached her proposed Amended Complaint (ECF 18.4) regarding which a Motion for Leave to Amend is pending ( ECF 19).

*Parrish v. Allison*, 276 SC 308, 320-321, 656 SE2d 382 (S.C. Ct. App. 2008), reviews South Carolina law on the tort of defamation, and allows a plaintiff to recover for injury to reputation as the result of the communications to others of a false message about the plaintiff. *Holtzscheiter v. Thomson Newspapers, Inc*., 332 S.C. 502, 508, 506 S.E.2d 497, 502 (1998); *Marray v. Holnam, Inc*., 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct.App.2001). Defamatory communications take two forms: libel and slander. *Holtzscheiter*, 332 S.C. at 508, 506 S.E.2d at 502. To recover plaintiff must establish (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged communication; (3) fault on the defendant's part in publishing the statement; and (4) either actionability of the statement irrespective of special harm or the existence of special harm to the plaintiff caused by the publication. See *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002), *Parrish v. Allison*, 276 SC 308,656 SE2d 382 (S.C. Ct.App. 2008).

An allegedly defamatory statement can either be "actionable per se" or "not actionable per se*." Holtzscheiter,* 506 S.E.2d at 510. All libel is actionable per se, but slander is only actionable per se if it relates to one of the following five categories: (1) the commission of a crime of moral turpitude; (2) the contraction of a "loathsome disease"; (3) adultery; (4) lack of chastity; and (5)"unfitness in one's business or profession." *Id*.at 501. As stated in *Yost v. City of*

*Charleston* and *King v. Charleston County School District*, 664 F. Supp. 2d 571 (DSC 2009) a principal may be held liable for defamatory statements made by an agent acting within the scope of his authority or apparent authority.

      Here, Plaintiff alleged that Defendant Supervisor Roberts disseminated misinformation about sexual contact (i.e.: chastity or lack thereof) and about the events that occurred during and after the business trip and told Plaintiff he would hurt her and ruin her reputation if she told anyone. Exh.1, Complaint, Para 44,50. His comments concerning the Plaintiff went directly to her veracity, honesty, chastity and fitness for work. The defamatory message is obvious on its face. *White v. Wilkerson*, 328 SC 179, 183 (1997). That message, told to the employer, insurer, law enforcement, family, his paramour and others, was that Doe, a brand new young female employee with no experience, friends or support system, got sent on a business trip with him and voluntarily engaged in sexual interactions. This narrative had the desired effect of labeling her as a "loose woman" , a liar, unreliable, and unworthy of employment at a minimum.

      Defendant claims that the facts plead, specifically dealing with understanding of the content and to whom they were communicated and that even when read in conjunction with others in the Complaint, are not enough to sustain a claim of defamation and leave him unable to defend the claim. *Iqbal* does suggest that Plaintiff must plead context-specific material. The Fourth Circuit in *Nemet Chevrolet, Ltd. v. Consumeraffairs com, Inc*., 591 F. 3d 250(4th Cir. 2009) explains that the "context-specific" test does not require "detailed factual allegations." *Iqbal.* at 1949-50 (quotations omitted). The complaint must, however, plead enough facts to

17

allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Iqbal* . at 1950.

The Complaint when read in its totality, alleges that Plaintiff was sexually assaulted by Roberts (Exhibit 1, Complaint, including paragraphs 47, 48, 49, 55), and that he later made false statements to the employer, and upon information and belief to investigators, family members, social acquaintances and others that any sexual contact, touching or other actions with Doe, if they happened, were consensual (*Id*. at paragraphs 64, 71, 73-75, 77, 112-113). Roberts' false statements that Ms. Doe agreed to the conduct and that it may not have even occurred (*Id.* at paragraphs 64, 71, 74-75, 77) were made without any protective legal privilege by Roberts to his employer and others.[2] (*Id.* at paragraph 114). His statements to the employer were accepted by the employer (*Id.* at paragraphs 64-65, 67-69) as he was, on information and belief, terminated for alcohol consumption and not his other behaviors. (*Id*. at paragraph 64). In the Complaint, beginning as early as Paragraph 41, Plaintiff discusses the defamatory and retaliatory behavior of her supervisor. See Exhibit 1, Complaint, Para. 41, 42, 44, 50, 52, 63-64, 71-79, which sets forth allegations that she was falsely accused of lack of veracity and chastity and that those allegations were disseminated without privilege. Roberts is specifically named as the author of the

---

[2] The defense of privilege requires a fact intensive enquiry and is not appropriately decided on a motion to dismiss. See, *Murray v. Holnam, Inc.*, 542 SE 2d 743 (SC Ct App 2001) The defense is also qualified by a requirement of good faith, which Plaintiff would dispute. Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. *Conwell v. Spur Oil Co.,* 240 S.C. 170, 125 S.E.2d 270 (1962).

defamation. See Exhibit 1, Complaint, Para. 111-117. As noted in the Proposed Amended Complaint, Plaintiff was denied workers' compensation, presumably based on Roberts' input. Exhibit 2 and 3, also see Exhibit 4, filed Proposed Amended Complaint, para 72. The Proposed Amended Complaint also adds additional detail to clarify the defamation cause of action. See Exhibit 4, paragraphs 115-124.

The dissemination of false information that Plaintiff agreed to be assaulted, choked, restrained, strangled, bitten, sexually and inappropriately touched (See, Exhibit 1 at Paragraphs 47-49, 55) sufficiently outlines a claim of defamation and an attack on Doe's veracity and chastity and ability to perform her job. Roberts' claims of consent to sexual exploitation that occurred 12 days after hire on her first business trip with someone she just met *(Id.*at Paragraphs 2,7,27,31) certainly negatively affected her career and tenure at Weston and Sampson. How could her reputation not be damaged? The defamatory message is obvious on its face. *White v. Wilkerson*, 328 SC 179, 183 (1997). As such, Plaintiff requests that her claim of defamation not be dismissed.

Should the Court feel that the Complaint is insufficient, Plaintiff attached a proposed amended Complaint that seeks to clarify the defamation claim which was filed with an appropriate Motion for Leave to Amend. See, Exhibits 4 and 5.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff requests that the Defendant's Motion to Dismiss be denied.

        Respectfully Submitted,

        *s/Jennifer Munter Stark*
        Jennifer Munter Stark, Esq. FID #9364
        Jennifer Munter Stark, Esquire, LLC
        210 Wingo Way #300
        Mt. Pleasant, SC 29464
        (843) 972-0004, (843) 972-0006 (f)
        jmunterstarklaw@gmail.com
        ATTORNEY FOR PLAINTIFF

Mt. Pleasant, SC
June 21, 2024