IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jane Doe, | ) | |
| | ) | C/A No. 2:24-cv-1682-RMG-BM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Weston & Sampson Engineers, Inc., | ) | |
| and Jason Roberts, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT JASON ROBERTS' REPLY TO PLAINITFF'S RESPONSE TO ROBERTS' PARTIAL MOTION TO DISMISS**

Defendant Jason Roberts ("Defendant" or "Roberts"), by and through his undersigned attorney, files this Reply to Plaintiff's Response Opposing Roberts' Partial Motion to Dismiss ("Pl.'s Resp.," ECF No. 19).

**I.  Without any specific details, Plaintiff's claim for defamation is woefully inadequate and fails to meet the pleading requirements.**

Roberts moved to dismiss Plaintiff's defamation claim because she fails to provide sufficient details of any alleged defamatory statements.[1] In response, Plaintiff contends that she Roberts "made false and injurious misstatements about her, disseminated false information including regarding her reputation for being chaste and honest." (Pl.'s Resp. at15) (citing Compl. ¶¶ 72-77, 112-117). Further, she argues that "[h]is comments concerning the Plaintiff went directly to her veracity, honesty, chastity and fitness for work." *Id.* at 17.

---

[1] Plaintiff asserts that the fact that Plaintiff's allegations regarding sexual assault did not result in any criminal charge or conviction is irrelevant. (Pl.'s Resp. at 4 n.1). She cites to statistics about the low reporting, arrest, and conviction rate for sexual assault. *Id.* However, these statistics are irrelevant when a sexual assault has been reported and investigated, and law enforcement declines to prosecute as was the case here.

In the Proposed Amended Complaint, Plaintiff claims to have added "additional detail to clarify the defamation cause of action." Pl.'s Resp. at 19 (citing Proposed Am. Compl. ¶¶ 115-124).[2] However, because the proposed additional allegations do not cure the deficiencies raised in the Motions to Dismiss, the amendment should be denied as futile. While Plaintiff includes some additional allegations regarding the defamation claim in her Proposed Amended Complaint, she fails to add any specific details regarding the defamation claim which would satisfy the specificity required to state a defamation claim. *See* Proposed Am. Compl. ¶¶ 73-80; 115-124. In her proposed Amended Complaint, Plaintiff again broadly alleges that Roberts' stated to "his employer, co-workers, law enforcement, insurers, the business community, his social friends and family and others that any sexual conduct with Plaintiff was consensual." (Proposed Am. Compl. ¶ 119). She contends that these "statements" were defamatory per se. *Id.* ¶ 120.

"Each act of defamation is a separate tort that, in most instances, a plaintiff must specifically allege." *Doe v. McGowan*, No. 2;16-cv-00777-RMG-MGB, 2017 WL 573619,*3 (D.S.C. Jan. 5, 2017), adopted 2017 WL 571487 (Feb. 13, 2017). As such, each defamatory statement must be pled with specificity. *See Barrett v. Grand Strand Reg. Med. Center*, No. 4:23-cv-2658-RBH-TER, 2024 WL 1494706, *6 (D.S.C. Jan. 3, 2024), adopted 2024 WL 1191109 (D.S.C. Mar. 20, 2024); *Carson v. Emergency MD, LLC*, No. 6:20-cv-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020) (noting that many courts applying South Carolina law have found that a lack of specificity in a plaintiff's allegations regarding a defamation claim warrants dismissal); *Doe v. McGowan*, No. 2:16-cv-00777-RMG-MGB, 2017

---

[2] Plaintiff has filed a Motion to Amend her Complaint in light of Defendants' Motions to Dismiss. (ECF No. 19, Pl.'s Mot. to Amend). Roberts has filed a separate Response Opposing Plaintiff's Motion to Amend, but also addresses the proposed amendments herein.

2

WL 573619, at *3 (D.S.C. Jan. 5, 2017), report and recommendation adopted, 2017 WL 571487 (D.S.C. Feb. 13, 2017) (citations omitted) (dismissing defamation claim because "defendant cannot be expected to defend against an allegation that [the defendant] defamed [the] plaintiff by making a statement heard by unknown persons at an unknown place at an unknown time.").

Plaintiff still fails to plead the alleged defamatory statements, when they were made, and to whom they were published. Plaintiff's allegations in her Complaint and proposed Amended Complaint are similar to those in *Dombek v. Adler*, No. 2:18-cv-391-RMG, 2019 WL 459019, at *5 (D.S.C. Feb. 5, 2019), where the defendant argued that the inclusion of statements that the plaintiff stated defendant had committed a "crime of moral turpitude" and was "unfit in his profession" sufficed to make out a counterclaim for defamation per se. The court, however, disagreed and dismissed the claim finding that those statements were nothing more than a recitation of the elements of a slander per se claim; but, without other details regarding the allegedly defamatory statements, the claim lacked the specificity required to make out a claim for defamation. *Id.* Likewise, here, Plaintiff's claim lack specificity. Without alleging any details, Plaintiff only generally alleges that Roberts made a defamatory per se statement about her being unchaste or untruthful to numerous people at unknown times.[3]

Further, while Plaintiff contends that "[d]iscovery has not yet commenced" (Pl.'s Resp. at 2, 3), a plaintiff asserting a defamation claim "is not entitled to wait until after discovery before pleading his causes of action properly[.]" *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 370 (D.S.C. 2016). Plaintiff's defamation claim should be dismissed as it is not sufficiently

---

[3] "The need to specify time as part of the context is particularly critical here." *Ortiz v. Jackson*, No. 2;23-cv-01741-DCN, 2023 WL 5208007, *3 (D.S.C. Aug. 14, 2023). Plaintiff fails to include even the basic details of when the defamation occurred – such that Roberts cannot even determine if all of the alleged defamatory statements are timely or may be barred by the two-year statute of limitations. *See* S.C. Code Ann. § 15-3-550 (providing for a two-year statute of limitations for an action for libel or slander).

pled, and her proposed Amended Complaint, which she specifically filed in light of Defendants' Motions to Dismiss, does not add sufficient details to cure the deficiencies in her pleading of this claim.

## II.   Plaintiff's intentional infliction of emotional distress claim is not sufficiently pled.

To support a cause of action for intentional infliction of emotional distress ("IIED") the Plaintiff must prove: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "so severe" such that "no reasonable man could be expected to endure it." *Hansson v. Scalise Builders,* 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).

In her Complaint and her proposed Amended Complaint, in alleging her IIED claim against both Defendants, Plaintiff merely incorporates every factual allegation and cites the elements. (Compl. ¶¶ 106-110; Proposed Am. Compl. ¶¶ 109-113). She alleges that "the Defendants above named, acted *negligently*, willfully, wantonly, recklessly, grossly negligently, and intentionally, being fully aware of the severe emotional trauma that the Plaintiff would suffer as a consequence of their actions." (Compl. ¶ 107; Proposed Am. Compl. ¶ 110) (emphasis added).

In her Response Opposing Roberts' Motion to Dismiss, she sets out her allegations regarding the alleged sexual assault and the alleged "post employment harassment by Roberts." (Pl.'s Resp. at 6). However, she cites to allegations in which she alleges that other individuals harassed Plaintiff, not Roberts. (See., e. g., Compl. ¶¶ 76-80). She then specifically argues that

4

she "alleged that the sexual assaults by Defendant *lead* to severe emotional distress." *Id.* Yet, she cites to many allegations about how Defendant Employer, W&S, treated her after she reported the alleged incident, and that she was forced to resign from her job. *Id.* (citing ¶¶ 65, 66-70, 78). She argues that this is not a case where a Defendant is placed in an unfair position of not knowing what is being alleged against him. (Pl.' Resp. at 6). However, this is exactly that situation. It is not clear if Plaintiff's IIED claim is based solely upon the alleged sexual assault, i.e., she is alleging that the alleged sexual assault caused the post-employment harassment and caused her to resign from her job, which is not logical considering that the IIED claim is alleged against both Defendants. Moreover, as Roberts argues in his Motion to Dismiss, Plaintiff alleges Defendants acted both negligently and intentionally, which Plaintiff did not address in her Response or omit in her proposed Amended Complaint. (Compl. ¶ 107; Proposed Am. Compl. ¶ 110).

Moreover, Plaintiff's proposed Amended Complaint in regard to this claim simply adds an allegation that Plaintiff's claim for workers' compensation benefits was denied which does not cure her deficient pleading as set out above. *See Kerr v. Hammond Sch.*, No. 3;17-cv-3109-JFA-KFM, WL (D.S.C. Apr. 11, 2018) (concluding that proposed amendments to state law claims would be futile because "Plaintiff's proposed amendments would not bring her negligence claims within one of the limited exceptions to [the exclusivity provision]"). Finally, Plaintiff also argues that judicial estoppel applies based on the denial of her workers' compensation claim (Pl.'s Resp. at 8); however, Roberts was not a party to Plaintiff's workers' compensation proceeding and thus has not taken an inconsistent legal position in another action.

Because Plaintiff has not sufficiently alleged a IIED claim against Roberts, (and she has not cured the deficiencies in her proposed Amended Compliant), this claim should be dismissed.

**III.     Plaintiff fails to sufficiently allege a tortious interference with a contract claim.**

Under South Carolina law, the elements of a cause of action for tortious interference with contract are: (1) the existence of the contract; (2) the other party's knowledge of the contract; (3) the other party's intentional procurement of a breach of the contract; (4) the absence of justification; and (5) resulting damage. *Propel PEO, Inc. v. Roach*, No. 6:19-cv-3546-KFM, 2021 WL 5918623, *11 (D.S.C. July 23, 2021) (citing *Eldeco, Inc., v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007)). Plaintiff was not terminated by her employer; rather she resigned, and she has not alleged that Roberts "intentionally and unjustifiably procured" her resignation.

Plaintiff argues that Roberts post-employment actions interfered with her work leaving her with no option but to resign. (Pl.'s Resp. at 14) (citing to 71-79). These paragraphs she cites allege:

> 71.     Since the incident, Defendant Roberts has disseminated misinformation regarding Jane Doe including that the actions were consensual and has attacked her reputation for chastity.
>
> 72.     In the course of his employment with the Defendant Employer, Defendant Roberts was permitted to have access to personal information regarding the Plaintiff. This would potentially include information regarding her name, address, phone, vehicle, passwords, social security number, date of birth, residences, family details, and personal health data.
>
> 73.     During and after his employment, Defendant Roberts used this information to harass Jane Doe and shared her personal information with the mother of one of his children, A.M.
>
> 74.     After Defendant Roberts was terminated from Defendant Employer, A.M. repeatedly accused Jane Doe of being unchaste, and harassed and threatened Plaintiff.
>
> 75.     The harassment took the form of LinkedIn messaging, Facebook, text messaging, and other forms of social media from Defendant Roberts, A.M. and two of A.M.'s co-workers and social media "friends" S.D. and B.A.

    76.    S.D. and B.A, tried contacting/requesting Plaintiff "to be my friend" on Facebook after she blocked A.M. on all social media.

    77.    Plaintiff continues to be harassed and threatened by Defendant Roberts and A.M. Plaintiff most recently in December 2023 she received 38 phone calls and voicemail messages from A.M. regarding her interaction with Defendant Roberts while employed at Weston & Sampson.

    78.    The actions of the Defendant employer and Defendant supervisor, a known bad actor who was not terminated despite engaging in prior terminable and dangerous behavior, lead to physical harm, the loss of a career for Jane Doe, and loss of physical and emotional health.

    79.    As a direct and proximate result of Defendants' actions, Plaintiff suffered irreparable injuries, including economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

(Compl. ¶¶ 71-79).

Plaintiff attempts to distinguish the cases cited by Roberts for the proposition that because she voluntarily resigned, she cannot allege a tortious interference with a contract claim by arguing those cases were at the summary judgment stage and address questions of fact.[4] The statement of law is the same, and there is no question of fact here– Plaintiff voluntarily resigned. Her allegations do not even support her tenuous argument that she could have continued her employment at W&S but for the "the situation created by Roberts," which interfered with her relationship with W&S, her ability to work with a team, represent the employer, and to learn and perform the job. Plaintiff continued to work for W&S for over almost six (6) months after Roberts was terminated. (ECF No. 23 at 1) ("Plaintiff was employed with W&S from March 15,

---

[4] Plaintiff also argues that Roberts fails to note that in *Nucor*, the tortious interference claim was not dismissed at the motion to dismiss stage. *Nucor*, however, is distinguishable because the plaintiff's claim for tortious interference with a contract was not dismissed at the motion to dismiss stage because the court determined that whether that claim was preempted by the South Carolian Torts Claim Act was dependent on whether certain information was determined to be trade secrets. The defendant's motion to dismiss in *Nucor* was not based on the failure to sufficiently allege a claim.

2022 to September 30, 2022."). She does not allege that Roberts continued some sort of campaign at her employer to have her terminated or to make her resign. Instead, she alleges that she was harassed on social media; however, some of the harassment occurred after she resigned in December 2023 and was the action of other individuals. Plaintiff is missing any factual allegations which would support the element that Roberts intentionally procured the breach of her employment contract.

      For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant his Partial Motion to Dismiss and dismiss Plaintiff's claims of defamation, intentional infliction of emotional distress, and tortious interference with contract against Roberts and deny Plaintiff leave to file the Proposed Amended Complaint as it is futile.

      Respectfully submitted,

s/Deborah B. Barbier
Deborah B. Barbier (#6639)
DEBORAH B. BARBIER, LLC
1811 Pickens Street
Columbia, South Carolina 29201
803-445-1032
dbb@deborahbarbier.com

June 26, 2024