IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Lauren Ballard, | ) | CASE NO.: 2:24-cv-1682 RMG-KFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **SECOND AMENDED COMPLAINT** |
| | ) | |
| Weston & Sampson Engineers, Inc. and | ) | |
| Jason Roberts, individually | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW PLAINTIFF Lauren Ballard (hereinafter, "Plaintiff"), by and through undersigned counsel,

complaining of Weston & Sampson Engineers, Inc. and Jason Roberts (hereinafter collectively,

"Defendants"), and alleges and shows unto this Honorable Court as follows:

## I.        NATURE OF THE ACTION

This claim is brought by Plaintiff to challenge assault and battery, discrimination,

defamation, contractual interference, infliction of emotional distress, and retaliation committed

against the Plaintiff, by Weston and Sampson and GIS Technical Specialist Manager Jason

Roberts.

## II.        PARTIES

1.        Plaintiff is a citizen and resident of Oconee County, South Carolina.

2.        Plaintiff  is a white female who was barely 22 and a new college graduate  at the time of

the actions at issue in this case.

3.    Plaintiff was employed by Weston & Sampson in their North Charleston, South Carolina office at 3955 Faber Place Drive, Suite 300, during the time of the events at issue, and this was her first professional job after college.

4.    Weston & Samson Engineers Inc. is a national corporation organized and existing pursuant to the laws of Massachusetts with its principal place of business in the State of Massachusetts, and is an engineering firm with offices throughout the east coast of the United States employing over 750 employees.

5.    Weston & Samson Engineers Inc. transacts business in the State of South Carolina, and has an office at 3955 Faber Place Drive, Suite 300, North Charleston, South Carolina, 29405.

6.    Defendant Jason Roberts was employed by Weston and Sampson as a GIS Specialist, overseeing the GIS departments on the east coast at the time of the seminal events and was within Plaintiff's chain of command in the GIS division of the employer.

7.    Defendant Roberts is a white male over 40.

8.    Upon information and belief, Defendant Roberts presently resides in Columbia, South Carolina.

### III.    JURISDICTION AND VENUE

9.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

10.    Jurisdiction of this Court arises under 42 U.S.C. § 2000(e), *et seq*. with pendent jurisdiction over Plaintiff's state law claims.

11.     At all times relevant to the allegations of this Complaint, Defendant Weston &Sampson operated a facility in the State of South Carolina, including in North Charleston, SC, where Plaintiff was employed.

12.      Upon information and belief, at all times relevant to the allegations in this Complaint, Defendants employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year in North Charleston, State of South Carolina.

13.     Upon information and belief, Defendant Roberts resides within the state of South Carolina.

14.     This Honorable Court has jurisdiction over the subject matter hereof and parties hereto, and venue is proper in this forum.

### IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Plaintiff reported the facts and circumstances of improper requests to engage in sexual actions, unwanted touching, assault, battery, kidnapping, harassment and retaliation by a managerial employee of Weston & Sampson to the employer Human Resources,  and  timely filed an allegation of discrimination and retaliation with the Equal Employment Opportunity Commission  as dual agent, alleging the same, including that she had been discriminated against on the basis of her sex and that she was subjected to a discrimination, harassment, and hostile work environment. Plaintiff also claimed she was subjected to quid pro quo harassment and threats of retaliation.

16.     Plaintiff's charge of discrimination was filed on or about January 18, 2023.

17.    Plaintiff received from the Equal Employment Opportunity Commission notice of her right to commence an action within 90 days of receipt of the notice.

18.    The claims presented by the Plaintiff are timely as she is filing suit within 90 days of the receipt of the notice of the right to commence action and submits that she has satisfied all private administrative and judicial pre-requisites to the institution of this action.

## V.    FACTUAL ALLEGATIONS

19.    Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

20.    At all times relevant to this action, and upon information and belief, Plaintiff was employed as a GIS Analyst at the North Charleston, SC office of Defendant.

21.    Jason Roberts, Technical Specialist, was Plaintiff's supervisor.

22.    Roberts was known to the Employer based on his admitted disciplinary record as an employee who had in the past engaged in negative conduct associated with excessive drinking, and engaging in improper and unprofessional conduct toward his coworkers including females. On information and belief his inappropriate, illegal and unprofessional conduct was known and observed by co-workers and supervisors.

23.    In December 2021 Mr. Roberts, upon information and belief, while employed at Weston & Sampson, became  inebriated at a company sponsored event, where he engaged in sexual harassment, unwanted touching and used racial epithets. Defendant, by his own admission, was counseled for his behavior but was not terminated and he continued to have managerial responsibility, was permitted to go to business events to represent the Defendant Employer and had access to confidential employee information.

24.    Weston & Sampson has policies and procedures in place which prohibit discrimination, harassment, bullying, unwanted touching and retaliation all of which are grounds for termination.

25.    Weston & Sampson, pursuant to its company literature, is dedicated to improving the quality of life of its employees and committed to treating its staff with the highest degree of professional respect; valuing differences, learning from each other, and encouraging team members to grow and achieve.

26.    Defendant's Company website states: *We provide a comfortable, safe work environment with the state-of-the-art tools and equipment. We offer competitive salaries, a generous benefits packaged, and a welcoming culture where people are recognized for their contributions.*

27.    Defendant hired Plaintiff in March 2022 to work in their North Charleston, SC office. This was Plaintiff's first professional job after attending college and graduating with a degree in engineering from Auburn University.    As part of the Defendants' employment Defendants guaranteed to Plaintiff that:

      a.   Defendant is an Equal Opportunity Employer;

      b.   Defendant publishes and maintains promissory policies and procedures that provide equal employment opportunities to all employees and applicants without regard to race, color, religion, sex, gender, genetic information, national origin, age, veteran status, disability, or any other status protected by federal or state law; and

      c.   Defendant's decisions regarding recruitment, selection, hiring, promotion, compensation, and benefits will be administered without regard to race, color, sex, creed, religion, age, national origin, physical disability, political affiliation, and in compliance with all applicable state and federal statutes and regulations.

28.    In consideration of Defendant's full-time employment offer, salary, and Defendant's express Equal Opportunity Employer policies and procedures, Plaintiff accepted a position with Defendant.

29.    As soon as she began working at Defendant Weston & Sampson, Supervisor Roberts took an unusual interest in Plaintiff which upon information and belief was based on her sex (female), which could be observed by co-workers and staff.

30.    From the time of Plaintiff's hire, Defendant Roberts contacted her by text and on the phone several times per day, including asking questions about non-work matters, delving into her personal life, hobbies and experience in other jobs.

31.    After Plaintiff had been employed only 11 days, Defendant Roberts instructed her to request that Charleston Office Manager, Bob Horner, allow her to attend an ESRI Conference in Palm Beach, Florida with Roberts and another a male co-worker, as Horner could not attend himself.

32.    Defendant Roberts told Plaintiff she would need to pay for everything herself, then be reimbursed.

33.    Neither the Employer Defendant nor the Individual Defendant provided information to Plaintiff regarding the cost of hotels, the amount of money or credit availability she needed,

reimbursement, expense account procedure, specifics on accommodations or other pertinent financial information. Financial matters were not discussed during the preparatory Zoom call and the employer did not provide any specific pertinent literature.

34. On or about March 30, 2022 Plaintiff arrived in Palm Beach, Fla. where she was to attend the conference.

35. On March 31, 2022 Plaintiff attended the conference with Defendant Roberts and the male coworker. Plaintiff took the sessions seriously, and saw herself as a representative of her employer.

36. At the conference, Defendant Roberts advised Plaintiff that he had drank too much at the Company Christmas party, resulting in discipline and his near termination for using racial slurs.

37. Despite his drunken behavior, the Defendant employer still selected Defendant Roberts to attend the conference without supervision, and with the knowledge that socializing with alcohol would occur.

38. As such, Defendant employee was a known bad actor to Weston & Sampson, but still retained his management position and responsibilities, including to have access to employee records and access the employee personal and private information.

39. During the conference Defendant Roberts drank alcohol excessively and started to try and make dates with some of the women seated around him. Upon information and belief, the male coworker observed this behavior, but left Roberts with Plaintiff and went to his room to work.

40. Defendant Roberts, on the evening of the March 31, 2022, repeated that he could not have another incident like the Christmas Party, but became loud and abusive. Plaintiff was not

inebriated and drank very little, attempting to network at the event. She attempted to avoid Defendant.

41.    Roberts began make unwanted advances to Plaintiff and referred to her as "his girl" and "babe". He continued to actively solicit other females, and was calling colleagues by a racial slur "N-----".

42.    Plaintiff was embarrassed and felt an obligation to remove Defendant Roberts from the event because they represented the Defendant Company.

43.    Plaintiff attempted to take Roberts to his room,  but he could not identify the proper  hotel room number, and they went to the wrong room.

44.    Roberts threatened to retaliate against Plaintiff if she told anyone about his drinking stating he would end her employment and career. Plaintiff became nervous and panicky.

45.    In her panicked state, Plaintiff took Roberts to her own room, where he passed out.

46.    Defendant Roberts is larger and stronger than Plaintiff.

47.    When Defendant awoke, Defendant attacked Plaintiff sexually and without her consent. Defendant was told to stop multiple times and to leave, but he persisted.

48.    Defendant Roberts strangled Plaintiff, threatened her life and bit her forcibly.

49.    Plaintiff believed if she resisted, she would die. Plaintiff was not on birth control.

50.    Defendant Roberts again threatened Plaintiff that she must not tell anyone, and that her safety, honor, job and career depended on her silence.

51.    The second day of the conference followed.  Plaintiff had no access to funds or credit to change her flights. She was injured and in a state of shock at this time and she planned on leaving and getting home to her family as soon as she could.

52.    Defendant Roberts was observed by Plaintiff  consuming alcohol on the second day of the conference. He engaged in stalking and harassing behavior toward Plaintiff, including following Plaintiff.

53.    Defendant Roberts and Plaintiff were on the same flight home but due to bad weather, Plaintiff missed her connection to Charleston. As the were no flights available Defendant Roberts stated he had his truck in the parking lot and promised he would just drive Plaintiff from the airport to a hotel where she would have her own room.

54.    Once at the airport parking lot at his truck, Defendant Robert forced Plaintiff to drive by threatening Plaintiff with his gun that was in his truck. He said that she should not do anything stupid while driving '…or else'. Recalling previous conversations threatening her safety, Defendant's tales of hunting as a hobby and his statement of how he enjoys killing things, Plaintiff was terrified and felt she had no choice.

55.    Although Plaintiff had been promised her own room, upon arrival at the hotel Roberts changed the plan. While still in possession of his firearm. Roberts forced her to stay in his room, where he sexually assaulted Plaintiff and prevented her from leaving, including monitoring her closely if she went to the bathroom. Force included the use of physical injury, physical restraint as well as threats of physical retaliation and reputational harm.

56.    As a result of these events Plaintiff was left injured, in shock, and unable to think clearly or concentrate on anything other than trying to get home where she would be safe.

57.    Subsequently, Plaintiff sought medical attention and submitted to an examination where pictures where taken and a thorough examination was performed.

58.    Plaintiff reported the Defendant's actions to law enforcement and to her employer.

59.    On information and belief Defendant Robert's actions were observed and should have been reported by colleagues or co-workers to the extent that they saw or experienced his alcohol consumption, behavior, racial slurs, sexual harassment and other unprofessional behavior.

60.    After telling the employer what happened, Plaintiff requested a week off from work which was granted by the Defendant employer.

61.     Plaintiff returned to work on April 18, 2022 and attempted to obtain assistance and accommodation related to mental and physical effects of the incidents from Human Resources at Defendant Weston & Sampson.

62.    Based on the Defendant Employer's representations and literature, Plaintiff thought she would receive some form of assistance. The attitude of the employer was that she forget the incidents and move on.

63.    Although Defendant Roberts had threatened the Plaintiff, the Defendant employer did not take any additional security measures; the office was unlocked during the day, and the individual Defendant could have walked in at any minute.

64.    Defendant Roberts was terminated, upon information and belief, for excessive drinking at the conference.

65.    Upon information and belief Roberts claimed and continues to claim and disseminate statements that Plaintiff's account of the events are untrue and any physical contact with Plaintiff was consensual -which Plaintiff denies.

66.    Plaintiff felt she had to pretend at work that she was not the victim of a sexual assault, and threats by a supervisor only two and a half weeks after starting her job. Defendant Employer caused Plaintiff to feel she had to pretend nothing happened on the work trip, and that

she was not afraid of the Individual Defendant, including of him coming and retaliating against her, up to and including using a fire arm at work.

67.    As the Individual Defendant had threatened her with a gun, Plaintiff had nightmares involving him  coming into the office and shooting her. Plaintiff also began to have symptoms of PTSD and a fear of her male co-workers.

68.    The Defendant Employer declined to address the issues which Plaintiff reported regarding her supervisor, including providing assistance to her, or provide other employees and coworkers with appropriate response training or education, leaving Plaintiff isolated, scared and to fend for herself. Neither Plaintiff nor staff were involved in or received communication from the employer  in the nature of counseling, investigations, education, training, referrals or other.

69.    After the incident Plaintiff was isolated by her GIS team. The  Employer's isolation and the deficiencies noted above, caused additional fear, depression and anxiety for Plaintiff.

70.    Defendant Employer left Plaintiff alone to work on her assignments, with little or no training or guidance of how to complete the work assigned to the employer's specification. Plaintiff worked with GIS professionals who had 15-20 years of experience who did not provide training or assistance when asked.

71.     Plaintiff was forced to leave her dream job after working for the employer for less than 2 months on an unpaid leave of absence and eventually forced to resign.

72.    Plaintiff sought workers compensation benefits, but the same were denied on June 22, 2022 by the Defendant Weston & Sampson's insurer, on the basis that it was not a compensable case under the Worker's Compensation Laws of the State of South Carolina and there was no compensable injury arising from an accident or injury in the scope of employment. Upon information and belief the denial was based on dissemination of information that the events that

occurred on the business trip were either outside the scope of employment or consensual-which information would have been received from the employer Weston & Sampson. Any statements that Plaintiff was engaged in a voluntary sexual or intimate relationship with the individual Defendant were untrue and made without privilege.

73.    Following the incident, Defendant Roberts has disseminated misinformation regarding Plaintiff including that the actions were consensual, that she is untruthful and has attacked her reputation for chastity.

74.    In the course of his employment with the Defendant Employer, Defendant Roberts was permitted to have access to personal information regarding the Plaintiff. This would potentially include information regarding her name, address, phone, vehicle, passwords, social security number, date of birth, residences, family details, and personal health data.

75.    During and after his employment, Defendant Roberts used this information to harass Plaintiff and shared her personal information with the mother of one of his children, A.M..

76.    The harassment took the form of  LinkedIn messaging, Facebook, text messaging, and other forms of social media from Defendant Roberts, A.M.  and two of A.M.'s co-workers and social media "friends"  S.D. and B.A..

77.    S.D. and B.A, tried contacting/requesting Plaintiff "to be my friend" on Facebook after she blocked A.M. on all social media.

78.    Before and after Defendant Roberts was terminated from Defendant Employer,  A.M. accused Plaintiff of being unchaste, and harassed and threatened Plaintiff. Upon information and belief Roberts made untrue statements to A.M. leading her to accuse Plaintiff of having an intimate physical relationship while on the business trip.

79.    The allegations that Plaintiff was unchaste or involved in a sexual manner with Defendant Roberts were perpetrated by Roberts disseminating untruths about his encounter with Plaintiff on the business trip, including to A.M., his employer, insurers and law enforcement.

80.    Plaintiff continues to be harassed and threatened by Defendant Roberts and A.M. Plaintiff most recently in December 2023 she received  38 phone calls and voicemail messages from A.M. regarding sexual interaction with Defendant Roberts again based on his propagation of untruths regarding Plaintiff's interactions with Roberts during the business trip, which occurred while employed at Weston & Sampson.

81.    The actions of the Defendant employer and Defendant supervisor, a known bad actor who was not terminated despite engaging in prior terminable and dangerous behavior, lead to physical harm, the loss of a career for Plaintiff, and loss of physical and emotional health.

82.    As a direct and proximate result of Defendants' actions, Plaintiff suffered irreparable injuries, including economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries in an amount to be determined by the trier of fact.

## VI.    FOR A FIRST CAUSE OF ACTION
### As to Defendant Roberts
### (Civil Assault and Battery)

83.    Plaintiff reasserts and re-alleges those allegations contained in Paragraphs 1 through 74 as though set forth herein verbatim.

84.    While working for the Defendant Employer Defendant Roberts did intentionally without consent touch, restrain, threaten and sexually assault Plaintiff, and initiate other inappropriate physical contact without the consent of Plaintiff.

13

85.     The above-described actions of Defendant Roberts constituted an unlawful assault and battery upon the person of the Plaintiff.

86.     The Plaintiff did not consent to or authorize in any way the above-described actions of Defendant Roberts.

87.     As a direct and proximate result of Defendant Roberts's reckless, unlawful and unauthorized assault and battery upon the person of the Plaintiff, the Plaintiff has suffered, and will continue to suffer, from emotional distress, humiliation, fear, depression, anxiety and mental anguish, all for which she is entitled to an award of actual and punitive damages in an amount to be determined by a jury at the trial of this action.

### VII.    FOR A SECOND CAUSE OF ACTION
**As to Defendant Weston & Sampson**
**(Employer Retaliation- Title VII of the Civil Rights Act of 1964)**

88.     Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

89.     Plaintiff reported sexual assault, sexual harassment, quid pro quo and hostile environment, as well as retaliation at the hands of her supervisors to the Employer Defendant in compliance with Defendant's policies and procedures.

90.     Plaintiff's reports were made in good faith and constituted a protected activity under Title VII of Civil Rights Act of 1964 (42 U.S.C. §2000(e) *et seq*.).

91.     Shortly after making said reports, the Defendant retaliated against Plaintiff, in violation of 42 U.S.C. § 2000(e)(3) as stated above..

92.     But for Plaintiff's reports of discrimination based on her sex, she would not have been the subject of negative employment actions and said reports were a determining factor in the retaliation and constructive discharge of Plaintiff. But for Plaintiff's reports of discrimination, she would not have been retaliated against by being ignored, isolated and frozen out.

93.     Defendant willfully, wantonly, and recklessly discriminated against the Plaintiff for engaging in a protected activity.

94.     Defendant's conduct was retaliatory in nature and was done in violation of Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000(e) *et seq*.).

95.     In failing to protect Plaintiff from retaliation, Defendant acted with malice or reckless indifference to the federally protected rights set forth in Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000(e) *et seq.*).

96.     Defendant violated Title VII of Civil Rights Act of 1964, as amended (42 U.S.C. §2000(e) *et seq.*), and the Equal Employment Opportunity Act by allowing retaliation to exist in Plaintiff's workplace.

97.     As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered damages in the form of future wages, income and benefits, expenses associated with finding other work, and has suffered severe psychological harm, emotional distress, anxiety, depression, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, humiliation, loss to professional standing, character and reputation, physical and personal injuries, and further seeks attorney's fees and costs and prejudgment interest.

98.     Defendants' actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for the federally protected rights of the Plaintiff, entitling Plaintiff to punitive damages.

### VIII.   FOR A THIRD CAUSE OF ACTION
### As to Defendant Weston & Sampson
### (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.)

99.     Plaintiff hereby repeats and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

100.     The actions of Manager Defendant Roberts, set forth above, constitute discriminatory, objectionable and sexual harassing behavior in violation of Title VII.

101.     Defendants willfully, wantonly and recklessly subjected Plaintift to discrimination, harassment, a hostile environment and discrimination due to her sex.

102.     The actions and work atmosphere described above constitute discrimination and hostile environment under Title VII as a reasonable person would find the circumstances to be intolerable and no reasonable person should be subjected thereto.

103.     Defendant employer knew or should have known that Defendant Roberts, given his disciplinary history and prior action should not have been retained much less sent unsupervised to an out of town convention with a young, inexperienced, female new hire, which he arranged to have attend the event over more senior personnel with the knowledge of management and HR.

104.     Roberts actions were foreseeable and put in motion by the Defendant Employer.

105.     The conduct as alleged herein violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. as Defendant Weston & Sampson has, among

16

other things, permitted the Plaintiff to be, sexually harassed, subjected to unwanted

touching, and discriminated against based on sex, including by creating and maintaining

a sexually hostile work environment.

106.    Defendant's acts and omissions alleged herein constitute discrimination against

the female Plaintiff with respect to the terms, conditions and/or privileges of employment

because of her sex, in violation of 42 U.S.C. §§2000e, et seq.

107.    As a direct and proximate result of the Defendants actions Plaintiff has suffered

and continues to suffer from physical  and emotional pain and suffering, mental anguish,

humiliation, loss of enjoyment of life, damage to reputation, monetary loss and other past

and future losses.

108.    Wherefore Plaintiff seeks and award of actual and punitive damages, costs and

attorneys fees in such amounts as are just and proper.

### IX.    FOR A FOURTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress against all Defendants )**

109.    Plaintiff hereby realleges and incorporates each and every allegation, to the extent not

inconsistent, contained in the as fully as if set forth herein verbatim.

110.    Plaintiff is informed and believes that the Defendants above named, acted negligently,

willfully, wantonly, recklessly, grossly negligently, and intentionally, being fully aware of the

severe emotional trauma that the Plaintiff would suffer as a consequence of their

actions.  The Defendants caused such acts to be done against the Plaintiff thereby causing

the Plaintiff suffer emotional distress and outrage.

111.     Plaintiff is informed and believes that Defendants undertook conduct that was so extreme and outrageous as to exceed all possible bounds of decency, with such conduct being regarded in a normal society as atrocious and intolerable in the civilized community.

112.     That as a direct and proximate result of the outrageous actions taken by the individual Defendant and by and through the agents, servants, officers and/or employees of the Defendants, Plaintiff suffered acute and severe emotional distress that no reasonable person could be expected to endure.

113.     Plaintiff is informed and believes that all of the above named Defendants are jointly and severally liable and that she is entitled to judgment against said Defendants jointly and severally for actual and punitive damages.

## X.     FOR A FIFTH CAUSE OF ACTION
### As to all Defendants (Defamation and Defamation Per Se)

114.     The Plaintiff realleges each and every allegation contained in paragraphs preceding as if set forth again verbatim.

115.     That, on information and belief, Defendant Roberts, in his individual capacity and as a manager, agent and employee of the Defendant Employer, made or caused to be made, sent or caused to be sent, delivered or caused to be delivered, false, defamatory and injurious statements regarding the Plaintiff, as set forth above.

116.     The employer Weston & Sampson, through Roberts and other agents or employees on information and belief also disseminated false information, regarding Plaintiff within the Company and to its agents and insurers within and outside the Company.

117.    The false and injurious statements by the Defendants were made after the events described business conference which was attended by Roberts and Plaintiff, and included in April 2022, May 2022, June 2022, and continued to be disseminated through December 2023.

118.    The untrue statements regarded  Plaintiff's honesty, chastity, consent to sexual interactions with Roberts and engagement in other inappropriate conduct at the conference.

119.    Plaintiff asserts that she has told the truth and denies that she engaged in consensual sexual relations or had an intimate relationship with  Roberts and any statements made by the Defendants to that end are untrue, defamatory and made without privilege.

120.    As a supervisor Defendant Roberts was not only Plaintiff's superior but was a longer term employee, was the senior representative at the conference where the events giving rise to the false statements occurred, and he had more experience, contacts and standing in the industry than Plaintiff, who was a recent graduate.

121.    Said statements, attacking Plaintiff's truthfulness, veracity and chastity, and fitness for employment were upon information and belief, published to the employer, other employees of the Defendant employer, others within the business and police communities, insurers and to Defendant Roberts' paramour, social friends and to other persons, not specifically stated herein.

122.    Defendant Roberts, upon information and belief, falsely represented to the Defendant employer, co-workers, law enforcement, insurers, the business community, his social friends and family and others that any sexual conduct with Plaintiff was consensual. This constituted a false statement that Plaintiff engaged in a voluntary sexual encounter with him on a business outing and that she lied about it.

123.    The Defendant employer upon information and belief repeated and disseminated the untruths perpetuated by Roberts, its agent and employee, including to its insurers and throughout the Company without privilege.

124.    Plaintiff denies the conduct was consensual and statements that she consented to any such conduct are false and constitute a direct attack on her chastity, reputation for chastity, fitness for employment and reputation for honesty.

125.    Defendant Roberts, individually and as an agent of the Defendant Employer had no legal privilege to publish said statements to any third party. Similarly Defendant Employer had no legal right or privilege to disseminate false information to any third party.

126.    That as a direct and proximate result of the libelous and defamatory statements made by Defendant individually and as an agent, servant, officer and, employee of the Defendant Employer, and by the Defendant Employer,  Plaintiff was and continues to: be greatly humiliated, embarrassed, and distressed; have difficulty in her daily life; have her business affairs interrupted; be unable to attend her ordinary affairs due to her mental state; be compelled to expend money for legal and medical representation; suffer considerable shock, mental stress, worry; to be held up to public ridicule, scorn, and contempt; and her professional reputation in the industry has been severely injured;  and be otherwise damaged, suffering actual, special and consequential damages.

127.    Defendant Roberts  made  these  defamatory  statements  including in  the course of his employment as a supervisor concerning the Plaintiff intentionally or  with  reckless  disregard for Plaintiff's reputation  as an upstanding,  honorable  and respected member of her community and citizen of the State of South Carolina and as a chaste woman.

128.    The employer, through agents and employees made these defamatory statements concerning the Plaintiff intentionally or with reckless disregard for Plaintiff's reputation as an upstanding, honorable and respected member of her community and citizen of the State of South Carolina and as and honest and chaste woman.

129.    Plaintiff is informed and believes that she is entitled to judgment against the above named Defendants, jointly and severally, for actual and consequential damages in an amount to be determined by the trier of fact.

### XI.    FOR A SIXTH CAUSE OF ACTION
### As to Defendant Roberts (Tortious Interference with Contract)

130.    Plaintiff hereby restates each and every statement contained in the preceding paragraphs as if fully set forth herein.

131.    Defendant Roberts through the actions above interfered with Plaintiff's career with Weston & Sampson and the engineering community.

132.    Defendant negligently, recklessly and intentionally interfered with Plaintiff's position at Weston & Sampson and her engineering career by the actions described above.

133.    Prior to Plaintiff's attendance at the Florida conference, she was a good and confident new employee, being trained to be successful at GIS.

134.    Plaintiff was considered well qualified, and had positive feedback from co-workers and supervisors in her position prior to the actions described.

135.    Defendant Roberts not only caused Plaintiff's to require time off, and eventually terminate her position, but actively sought to interfere with her job.

136.    Defendant Roberts knew or should have known his actions toward Plaintiff were wrongful.

137.    But for the actions and interference of the Defendant, Plaintiff would have continued her employment with Weston and Sampson.

138.    The same amounts to a tortious interference with contractual relations for which the Defendant is liable.

139.    Damages include lost wages, lost earning capacity, lost benefits, reputational loss, and emotional pain and suffering, costs, attorney's fees and other damages permitted by law   and this Court.

WHEREFORE, having fully complained of Defendants, Plaintiff respectfully prays for judgment in her favor, and against Defendants, on all causes of action; for an award of actual, consequential, resulting, nominal, compensatory, and punitive damages in an amount to be determined by the trier of fact; for an award of pre and post-judgment interest, attorneys' fees and costs, and such other and further relief as the Court deems just and proper.

FURTHER, PLAINTIFF DEMANDS A TRIAL BY JURY.

Respectfully submitted,

*s/Jennifer Munter Stark*
Jennifer Munter Stark, Esq. FID 9634
Jennifer Munter Stark, Esquire, LLC
210 Wingo Way #300
Mt. Pleasant SC 29464
843-972-0004, 843-972-0006 (f)
jmunterstarklaw@gmail.com


Mt. Pleasant SC
August 12, 2024