IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Lauren Ballard, | ) | |
| | ) | C/A No. 2:24-cv-1682-RMG-BM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Weston & Sampson Engineers, Inc., | ) | |
| and Jason Roberts, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANT JASON ROBERTS' MEMORANDUM IN SUPPORT OF PARTIAL
MOTION TO DISMISS CLAIMS IN SECOND AMENDED COMPLAINT**

Defendant Jason Roberts ("Defendant" or "Roberts"), by and through his undersigned attorney, files this Partial Motion to Dismiss several claims alleged in Plaintiff Lauren Ballard's ("Plaintiff") Second Amended Complaint ("SAC") (ECF No. 43), pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Roberts moves to dismiss Plaintiff's claims of defamation, intentional infliction of emotional distress, and tortious interference with contract against Roberts for failure to state a claim.

**I.     FACTS**

Plaintiff brings this action alleging claims against her former employer and co-worker, Roberts, arising from Robert's allegedly inappropriate behavior towards Plaintiff during a business trip. In March 2022, Defendant Weston & Sampson Engineers, Inc. ("W&S"), hired Plaintiff as a GIS analyst for its North Charleston, South Carolina office. (ECF No. 43, SAC ¶¶

20, 27). Roberts was employed by W&S as a Technical Specialist, and Plaintiff alleges that he was Plaintiff's supervisor. (SAC ¶¶ 6, 21).[1]

On or about March 30, 2022, Plaintiff and Roberts traveled to Palm Beach, Florida, to attend a work conference along with another male coworker. *Id.* ¶¶ 31, 34-35. Plaintiff alleges that during the conference Roberts engaged in inappropriate behavior towards her and others and drank alcohol excessively. *Id.* ¶¶ 41-42. Plaintiff alleges that she felt an obligation to remove Roberts from the event and attempted to take him to his room; however, they went to the wrong room and, "[i]n her panicked state," she took Roberts to her own room where he passed out. *Id.* ¶¶ 42-45. When he awoke, she alleges that he attacked her sexually and threatened her. *Id.* ¶ 47, 50. On the second day of the conference, she alleges that he stalked and harassed her. *Id.* at ¶ 52. On their way home from the conference, the two were on the same flight to Charlotte. *Id.* at ¶ 53. Roberts had flown out of Charlotte, North Carolina, and had his vehicle while Plaintiff had a connecting flight to Charleston, South Carolina, which was cancelled. *Id.* Roberts offered to drive Plaintiff to a hotel in Charlotte where she was to have her own room. *Id.* at 53. However, Plaintiff alleges that Roberts changed this plan and forced her to stay in his hotel room where he sexually assaulted her again and prevented her from leaving. *Id.* at ¶ 55.

Plaintiff subsequently sought medical care and reported the allegedly inappropriate behavior to law enforcement and W&S. *Id.* ¶¶ 57-58.[2] Roberts contended that any physical

---

[1] While Roberts disputes many of the allegations in the SAC, including this one, the factual allegations in the SAC are set forth here as facts solely for purposes of this Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that factual allegations are to be taken as true when ruling on a motion to dismiss).

[2] Plaintiff does not allege that Roberts was ever charged with any crime. In fact, although Plaintiff after she returned home apparently reported the alleged incident to two different law enforcement agencies in Palm Beach, Florida, and Charlotte, North Carolina, both agencies thoroughly investigated the allegations and declined to bring any criminal charges.

2

contact with Plaintiff was consensual, which she denies. *Id.* ¶¶ 64. W&S terminated Roberts from his employment for excessive drinking at the conference. *Id.* ¶¶ 60, 64. Plaintiff alleges that Roberts, Roberts' ex-girlfriend ("A.M."), and A.M.'s co-workers and social media friends harassed her through social media and text messaging. *Id.* ¶¶ 58, 61, 73, 77. She alleges that A.M. has continued to harass her as recently as December 2023. *Id.* at ¶ 80.

W&S granted Plaintiff's request for a week off from work, and when she returned to work on April 18, 2022, she alleges that W&S failed to adequately address the situation and failed to take additional security measures, including leaving the office unlocked during the day when Roberts could walk in. *Id.* ¶ 63. Plaintiff also alleges that she was isolated at work and given little to no training or guidance on how to complete assignments. *Id.* ¶¶ 68-69. After working for W&S for less than two months, she took an unpaid leave of absence and subsequently she resigned from her employment. *Id.* ¶ 71. At some point, Plaintiff filed a claim for workers' compensation benefits, which was denied on June 22, 2022. *Id.* ¶ 72.

In her Second Amended Complaint, Plaintiff alleges four state law claims against Roberts: (1) civil assault and battery; (2) intentional infliction of emotional distress ("IIED"); (3) defamation and defamation per se; and (4) tortious interference with contract. (SAC ¶¶ 83-97; 109-139). Plaintiff additionally alleges two federal causes of action against W&S: (1) Title VII hostile environment harassment claim; and (2) Title VII retaliation claim, and two state law claims: (1) intentional infliction of emotional distress; and (2) defamation, including defamation per se. *Id.* at ¶¶ 88-129.

II.     **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    ARGUMENT

As set forth below, Plaintiff's claims for defamation, intentional infliction of emotional distress, and tortious interference with a contract against Roberts should be dismissed for failure to state a claim. The defamation and intentional infliction of emotional distress allegations lack the requisite specificity and, as for the tortious interference with a contract claim, Plaintiff fails to set forth any allegations to establish Roberts' intentional procurement of a contractual breach of Plaintiff's employment relationship.

Both Defendants previously moved to dismiss these claims, and the Court granted Plaintiff an opportunity to amend her complaint to address Defendants' grounds for their Motions to Dismiss. (ECF No. 34). Plaintiff subsequently filed her First Amended Complaint. (ECF No. 38). However, thereafter the Court denied Plaintiff's Motion to Proceed Anonymously and ordered her to file an Amended Complaint identifying herself. (ECF No. 41 at 20). Plaintiff then filed her Second Amended Complaint, which was amended only to include her name. (ECF No. 43). Plaintiff's Second Amended Complaint still contains the deficiencies raised by Defendants in their Motions to Dismiss, the Court should now dismiss these claims with prejudice.

### A. The Court should dismiss Plaintiff's defamation claim against Roberts because she fails to plead this claim with the requisite specificity.

Plaintiff's defamation claim should be dismissed because she does not allege with any specificity what false statements were made about her, to whom, and when. "To establish a defamation claim, a plaintiff must prove: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable regardless of harm or the publication of the statement caused special harm." *West v. Morehead*, 396 S.C. 1, 7, 720 S.E.2d 495, 498 (Ct. App. 2011). Additionally, for defamation claims that are not actionable per se, a plaintiff must plead "special damages [which] are tangible losses or injury to the plaintiff's property, business, occupation or profession, capable of being assessed monetarily, . . ." *Fountain v. First Reliance Bank*, 730 S.E.2d 305, 309 (S.C. 2012). Special damages do not include hurt feelings, embarrassment, humiliation, or emotional distress. *Wardlaw v. Peck*, 282 S.C. 199, 205–06, 318 S.E.2d 270, 274–75 (Ct. App. 1984).

To demonstrate publication to a third party, a plaintiff must provide specific facts that include "the time, place, content and listener of the alleged defamatory matter." *Campbell v. Int'l Paper Co.*, 2013 WL 1874850, at *3 (D.S.C. May 3, 2013) (quoting *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 1999 WL 89125, at *3 (4th Cir. Feb. 23, 1999) (unpublished table opinion). Moreover, "[e]ach act of defamation is a separate tort that, in most instances, a plaintiff must specifically allege." *Doe v. McGowan*, No. 2:16-cv-00777-RMG-MGB, 2017 WL 573619, at *3 (D.S.C. Jan. 5, 2017), adopted, 2017 WL 571487 (D.S.C. Feb. 13, 2017).

"Many courts applying South Carolina law have found that a lack of specificity in a plaintiff's allegations regarding a defamation claim warrants dismissal." *Carson v. Emergency MD, LLC*, No. 6:20-cv-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020). *Id.* (citing *Dombek v. Adler*, No. 2:18-cv-391-RMG, 2019 WL 459019, at *2 (D.S.C. Feb. 5, 2019) (unpublished) (granting motion to dismiss claim for defamation per se because claimant alleged "nothing more than a recitation of the[ ] elements" and merely stated that " 'on multiple occasions,' including in email dated '19 September 2015' plaintiffs 'published unprivileged statements alleging that [the claimant] engaged in crimes of moral turpitude and acted in a manner unfit for [the claimant's] lawsuit business or profession.' "); *see also Barrett v. Grand Strand Reg. Med. Center*, No. 4:23-cv-2658-RBH-TER, 2024 WL 1494706, *6 (D.S.C. Jan. 3, 2024), adopted 2024 WL 1191109 (D.S.C. Mar. 20, 2024); *McNeil v. S.C. Dep't of Corr.*, 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (upholding dismissal of defamation claim, in part, because plaintiff "did not set forth with any specificity what the alleged false statements were"); *Jackson v. Denmark Tech. Coll.*, No. 1:17-03431-MGL, 2018 WL 3729743, at *5-6 (D.S.C. Aug. 6, 2018) (unpublished) (partially granting motion to dismiss because plaintiff failed to properly plead publication element of defamation per se claim where she did not allege to whom she was

defamed)); *McGowan*, 2017 WL 573619, at *3 (dismissing defamation claim because "defendant cannot be expected to defend against an allegation that [the defendant] defamed [the] plaintiff by making a statement heard by unknown persons at an unknown place at an unknown time."); *Doe v. Cannon*, No. 2:16-cv-00530-RMG, 2017 WL 591121, at *1 (D.S.C. Feb. 14, 2017) (dismissing defamation claim because the plaintiff's allegations fail to "state with specificity the time, place, medium, and listener of the alleged defamatory statements").[3]

Reviewing the allegations, Plaintiff fails to plead her defamation claims with the requisite specificity. (SAC ¶¶ 73-80, 117-119, 121-123). Plaintiff makes broad allegations that "upon information and belief," false statements were "published to the employer, other employees of the Defendant employer, others within the business and police communities, insurers and to Defendant Roberts' paramour, social friends and to other persons, not specifically stated herein" and "to family and others" *Id.* ¶¶ 121, 122. She alleges that statements regarded her "honesty, chastity, consent to sexual interactions with Roberts and engagement in other inappropriate conduct at the conference" and that they were made without privilege. *Id.* ¶¶ 118, 119. She alleges that these statements were made by "Defendants" after the business conference "in April 2022, May 2022, June 2022, and continued to be disseminated through December 2023." *Id.* ¶ 117.

Plaintiff's allegations, however, lack the required details. As noted above, to demonstrate publication to a third party, a plaintiff must provide **specific** facts that include "the time, place, content and listener of the alleged defamatory matter." *Campbell*, 2013 WL 1874850, at *3; *see also Davis*, 2021 WL 3410790, at *16 (finding that the plaintiff had failed to provide sufficient

---

[3] Even when asserting defamation per se claims, a plaintiff is still required to sufficiently establish the other prongs of her defamation claim—including that the remark or remarks were published and not subject to qualified privilege. *See Davis v. New Penn Fin. LLC,* No. 6:18-3342-TMC-KDW, 2021 WL 3410790 *19 (D.S.C. May 25, 2021).

detail regarding the allegedly defamatory statements, including what was said and when they were made, that would allow the court to evaluate them for defamatory content).

Plaintiff's allegations in her Second Amended Complaint are similar to those in *Dombek v. Adler*, where the defendant argued that the inclusion of statements that the plaintiff stated defendant had committed a "crime of moral turpitude" and was "unfit in his profession" sufficed to make out a counterclaim for defamation per se. 2019 WL 459019, at *5. The court, however, disagreed and dismissed the claim finding that those statements were nothing more than a recitation of the elements of a slander per se claim and that without other details, the claim lacked the specificity required to make out a claim for defamation. *Id.* Likewise, here, Plaintiff's claim lacks specificity. Without alleging any details, Plaintiff only generally alleges that Roberts made some defamatory per se statements about her "honesty, chastity, consent to sexual interactions with Roberts and engagement in other inappropriate conduct at the conference" to numerous people at unknown times over the course of almost two years.[4] Plaintiff fails to include any specific facts as to the time, place, content, and listener. The lack of specificity in Plaintiff's allegations regarding her defamation claim "warrants dismissal." *Carson,* 2020 WL 5077655, at *5. Because Plaintiff's allegations fail to provide any of the requisite details, her defamation claim should be dismissed.

Further, although Plaintiff alleges that statements were made to law enforcement, Roberts' employer, and insurers, Plaintiff fails to allege any facts that support her allegations that these statements were made without privilege. Any statements that Roberts made to W&S and its insurers during the internal investigation are qualifiedly privileged, *West v. Morehead*, 396 S.C.

---

[4]Furthermore, a plaintiff asserting a defamation claim "is not entitled to wait until after discovery before pleading his causes of action properly[.]" *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 370 (D.S.C. 2016).

1, 7, 720 S.E.2d 495, 499 (Ct. App. 2011), and any statements made to law enforcement officers in any subsequent investigation are also absolutely privileged, *Crowell v. Herring*, 392 S.E.2d 464, 467 (S.C. Ct. App. 1990). Finally, Plaintiff has failed to sufficiently plead special damages to support any defamation claim which is not alleged to be a defamation per se claim. Based on the foregoing, Plaintiff's defamation claim should be dismissed.

### B. Plaintiff's IIED claim fails because Plaintiff fails to plead that Roberts acted with a deliberate or specific intent to injure her so as to escape the exclusivity provision of the Workers' Compensation Act.

In her Second Amended Complaint, Plaintiff alleges that she has suffered damages arising out of and in the course of her employment with Defendant W&S. *See, e.g.,* SAC. ¶¶ 72, 74-75, 127. Plaintiff's claim therefore falls within the exclusivity provision of the South Carolina Workers' Compensation Act ("Act"). *See* S.C. Code Ann. § 42-1-540 (providing that in the event of an injury, all other rights and remedies of such employees are excluded).

The Act contains an exclusivity provision which "precludes an employee from maintaining a tort action against an employer where the employee sustains a work-related injury." *Todd v. Fed. Express Corp.*, No. 4:09-1501-TLW-TER, 2010 WL 1294070, at *1 (D.S.C. Mar. 29, 2010) (citation omitted). "South Carolina has expressly acknowledged, at least twice, that the immunity under the Act 'is conferred not only on the direct employer but also on co-employees.' " *Crutchfield v. Pfizer, Inc.*, 2103 WL 2897023, *5 (D.S.C. June 13, 2013) (citing *Posey v. Proper Mold & Engineering, Inc.*, 378 S.C. 210, 661 S.E.2d 395, 403 (S.C. Ct. App. 2008) and *Edens v. Bellini*, 359 S.C. 433, 597 S.E.2d 863, 868 (S.C. Ct. App. 2004)).

"[T]he only exceptions to the Act's exclusivity provisions are: (1) where the injury results from the act of a subcontractor who is not the injured person's direct employer; (2) where the injury is not accidental but rather results from the intentional act of the *employer or its alter*

9

*ego*; (3) where the tort is slander and the injury is to reputation; or (4) where the Act specifically excludes certain occupations." *Whicker v. Sci. Applications Int'l. Corp.*, No. 2:11-3193-SB-BHH, 2012 WL 4983864, at *2 (D.S.C. Sept. 20, 2012) (emphasis added) (citing *Cason v. Duke Energy Corp.*, 560 S.E.2d 891, 893 (S.C. 2002)). A co-employee who negligently injures another employee while in the scope of employment is immune under the Act and cannot be held personally liable. *Dickert v. Metropolitan Life Ins. Co.*, 311 S.C. 218, 428 S.E.2d 700, 702 (1993) (citing *Nolan v. Daley*, 73 S.E.2d 449 (S.C. 1952)). This immunity is not extended to a co-employee who commits an intentional tortious act upon another employee. *Id*.

However, "'intentional' conduct has been defined as strictly as possible to include only injuries inflicted with 'deliberate or specific intent,' rather than those acts taken with mere indifference to substantially certain consequences but not causing some injury, expressly desired." *Repasky v. Pfizer*, No. 2:12-cv-3331-RMG, 2013 WL 3946230, *4 (D.S.C. July 31, 2013) (citing *Peay v. United States Silica Co.*, 313 S.C. 91, 437 S.E.2d 64, 65 (S.C. 1993)). "In other words, to escape the exclusivity demands of the Act, a plaintiff must aver intentional conduct that amounts to something more than a reckless awareness of potential injury to the plaintiff." *Id. See also Sibert v. Raycom Media., Inc.*, No. 3:17-cv-1544-CMC, 2017 WL 3721238, *10 (D.S.C. Aug. 29, 2017) (holding that "in addition to the requirement to allege facts inferring [a co-employee] acted with a **deliberate or specific intent to injure him**—in order to avoid the Workers' Compensation Act exclusivity provision—Plaintiff must also allege sufficient facts to make out the other elements of a claim for IIED against [the co-employee] that is plausible on its face.").

Here, Plaintiff alleges that "the Defendants above named, acted negligently, willfully, wantonly, recklessly, grossly negligently, and intentionally, being fully aware of the severe

emotional trauma that the Plaintiff would suffer as a consequence of their actions." SAC ¶ 110.[5] However, Plaintiff does not allege that Roberts deliberately acted with the specific intent or for the express purpose of causing Plaintiff severe emotional distress. *See Repasky*, No. 2:12-cv-3331-RMG, 2013 WL 3946230, *5 (dismissing claims against co-employees where "[t]here are no allegations that these defendants deliberately treated plaintiff in these ways for the express purpose of causing her emotional distress, as South Carolina requires."). "That [a defendant's] conduct might have ultimately caused distress or even that they might have been indifferent to the substantial likelihood that their conduct might cause distress is not legally sufficient." *Id. See also Sibert*, 2018 WL 3132411, at *10 (noting that the intentional injury exception is narrowly construed, and does not include "accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct . . . short of a conscious and deliberate intent directed to the purpose of inflicting an injury"); *Washington v. Hilton Hotels Corp.*, No. CIV A 207-2694-CWH, 2008 WL 747792, at *7 (D.S.C. Mar. 17, 2008) (noting the strict scope of the intentional injury exception, such that even the following examples fall short of actual intention: knowingly ordering employees to perform an extremely dangerous job, willfully violating a safety statute, failing to protect employees from crime, and refusing to respond to an employee's medical needs and restrictions). Without any allegations to support that Roberts acted with the purpose of inflicting injury, Plaintiff's claim for IIED against Roberts is barred by the Act's exclusivity provision.[6] Accordingly, the Court should dismiss this claim.

---

[5] Plaintiff pleads this claim collectively as to the Defendants, which Roberts addresses below as a separate ground for dismissal.

[6] Recently the Fourth Circuit Court of Appeals addressed the exclusivity provision of the Act and its effect on subject matter jurisdiction of federal district courts in *Wideman v. Innovative Fibers LLC*, ___ F.4th ___, 2024 WL 1916759 (4th Cir. May 2, 2024). The court held that a state's

### C. The Court should also dismiss Plaintiff's IIED claim against Roberts as she has failed to sufficiently plead this claim.

Plaintiff alleges a claim for IIED against "all Defendants." (SAC at 17). She alleges that "the Defendants above named, acted *negligently*, willfully, wantonly, recklessly, grossly negligently, and intentionally, being fully aware of the severe emotional trauma that the Plaintiff would suffer as a consequence of their actions." *Id.* ¶ 110 (emphasis added).

To recover for IIED, a plaintiff must establish: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it." *Argoe v. Three Rivers Behav. Health, L.L.C.*, 392 S.C. 462, 475, 710 S.E.2d 67, 74 (2011); *Hansson v. Scalise Builders of S.C.*, 374 S.C. 352, 356, 650 S.E.2d 68, 70 (2007).

Here, Plaintiff merely recites the elements of a claim for intentional infliction of emotional distress. (SAC ¶¶ 110-112). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

---

worker's compensation exclusivity statute does not limit the subject matter jurisdiction of federal courts in diversity cases. Assuming this holding also applies in a federal question case with supplemental jurisdiction over state law claims, a defendant raising the exclusivity provision of the Act should raise the issue as one of failure to state a claim rather than a lack of jurisdiction. *Id.* at *4, 5 (stating "when state law prohibits plaintiffs from suing to enforce a state-law right in any state court, federal courts sitting in diversity are bound to dismiss the suit for failure to state a claim" and the Act's "limitation only determines whether Plaintiffs have stated a claim upon which relief can be granted; it cannot strip of subject matter jurisdiction that we otherwise enjoy."). If the Court disagrees, Roberts alternatively raises this issue as a ground to dismiss for lack of jurisdiction under Rule 12(b)(1).

555. The court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor must the court "accept as true unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts. Inc. v. J.D. Assocs., LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

Further, Plaintiff alleges Defendants acted "negligently" and "intentionally." (SAC ¶ 110). Thus, to the extent, that she is relying on negligent actions, this claim should be dismissed. Finally, another issue with this claim is that it is unclear exactly what factual allegations Plaintiff is relying on to support this claim. She merely "realleges and incorporates each and every allegation," *id.* ¶ 109, and does not refer to any specific conduct when alleging this claim. Moreover, she does not distinguish between the Defendants when alleging this claim. "A shotgun pleading is '[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading.'" *Hill v. Stryker Sales Corp.*, No. 4:13-cv-0786-BHH, 2014 WL 4198906, at *2 (D.S.C. Aug. 20, 2014) (citations omitted). Sometimes such a complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). With this type of pleading "to one degree or another, . . . defendants [are not afforded] adequate notice of the claims against them and the grounds upon which each claim rests" thereby impeding a meaningful response. *Id.* It is not clear if Plaintiff's IIED claim is based solely upon the alleged sexual assault, i.e., she is alleging that the alleged sexual assault caused the post-employment harassment and caused her to resign from her job, which is not logical considering that the IIED claim is alleged against both Defendants. For these reasons, Roberts moves to dismiss Plaintiff's claim for intentional infliction of emotional distress.

### D. The Court should dismiss Plaintiff's tortious interference with contract claim as she has not alleged any facts to support an allegations that Roberts intentionally procured her resignation.

Because there are no allegations that Roberts intended to cause or actually caused the termination of Plaintiff's job at W&S, Plaintiff fails to plead a tortious interference with contract claim. Further, Plaintiff's claim fails because Plaintiff voluntarily resigned.

Under South Carolina law, the elements of a cause of action for tortious interference with contract are: (1) the existence of the contract; (2) the other party's knowledge of the contract; (3) the other party's intentional procurement of a breach of the contract; (4) the absence of justification; and (5) resulting damage. *Propel PEO, Inc. v. Roach*, No. 6:19-cv-3546-KFM, 2021 WL 5918623, *11 (D.S.C. July 23, 2021) (citing *Eldeco, Inc., v. Charleston Cty. Sch. Dist.*, 372 S.C. 470, 480, 642 S.E.2d 726, 731 (2007)).

Additionally, a tortious interference with a contract claims does not protect a party to a contract from actions of the other party" to the contract. *Agosini v. Hartford Cas. Ins. Co.*, No. :15-cv-1884-TLW, 2016 WL 11519133, *6 n. 4 (D.S.C. Nov. 28, 2016) (citing *Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC*, 753 S.E.2d 840, 844 (S.C. 2012) (citations omitted)). "[C]oworkers, as agents of an employer, are not third parties, and thus, cannot be liable for tortious interference with a contract." *McLendon v. Horry Cnty. Police Dep't*, No. 4:13-CV-3403-BHH, 2016 WL 1168142 (D.S.C. Mar. 25, 2016) ("because [the plaintiff's supervisors] are agents of Plaintiff's employer, HCPD, Plaintiff cannot maintain an action against them for intentional interference with a contract"); *Farley v. Goodwill Indus. of Lower S.C., Inc.*, No. 4-15-CV-2450, 2016 WL 408949, at *16 (D.S.C. Jan. 12, 2016) report and recommendation adopted, 2016 WL 398159 (D.S.C. Feb. 2, 2016); *Wencoast Restaurants, Inc. v. Chart Capital*

*Partners, L.P.*, No. 2:05-1650-18, 2006 WL 490101, at *3 (D.S.C. Feb. 28, 2006) (finding plaintiff could not establish an interference with contract claim against defendants who were parties to the contact, including the agents and employees of the defendants). The South Carolina Supreme Court recently confirmed that there cannot be a tortious interference claim based on the actions of a co-worker stating: potential liability [for this cause of action] extends to third parties who are *not* fellow employees of the terminated employee." *Hall v. UBS Fin. Servs. Inc.*, 435 S.C. 75, 87, 866 S.E.2d 337, 346 (2021) (emphasis added). Accordingly, the tortious interference claim against Roberts should be dismissed because Roberts, who was Plaintiff's co-worker, cannot be liable for such a claim.

Furthermore, to succeed on a claim of tortious interference, Plaintiff must show that the employment contract was breached at the inducement of Roberts. *Eldeco*, 372 S.C. at 561, 642 S.E.2d at 732. She has not alleged that Roberts "intentionally and unjustifiably procured" her resignation. Rather, she alleges that Roberts "interfered" with her "career" and "position" at W&S and that he "not only caused Plaintiff's (sic) to require time off, and eventually terminate her position, but actively sought to interfere with her job." (SAC ¶ 135). However, allegations that Roberts interfered with Plaintiff's job do not support the requisite element that Roberts intentionally procured or coerced her into resigning from her employment. Nor does Plaintiff allege any facts to support that Roberts "actively sought to interfere with her job."

Plaintiff's allegation that Roberts threatened retaliation if she reported that Roberts had been drinking at the conference, *id.* ¶¶ 44, 50 ("he would end her employment and career"), do not support this claim as she fails to allege any facts supporting that he actually did retaliate and,

15

moreover, her employment was not terminated by W&S; she resigned.[7] Plaintiff continued to work for W&S for many months after Roberts was terminated. She does not allege that Roberts continued some sort of campaign directed to W&S to have her terminated or to make her resign. Plaintiff's claim is missing any factual allegations which would support the element that Roberts' intentionally procured the breach of her employment contract. Even accepting the allegations in the Second Amended Complaint as true, there are no allegations that Roberts intentionally induced or coerced *Plaintiff* to resign or leave her employment. *See Nucor Corp. v. Bell*, No. 2:06-cv-02972-DCN, 2008 WL 9894350, *13 (D.S.C. Mar. 14, 2008).

Moreover, after Roberts was terminated, as Plaintiff alleges, there were many intervening actions that caused Plaintiff's subsequent resignation. Plaintiff alleges that she "was isolated by her GIS team," SAC ¶ 69; given "little or no training or guidance of how to complete the work assigned to the employer's specification," *id.* ¶ 70; and that she "worked with GIS professional who had 15-20 years of experience who did not provide training or assistance when asked," *id.* Plaintiff's inability to complete her assignments is what forced Plaintiff to resign.

Finally, another "glaring problem with [Plaintiff's] tortious interference claim is that [s]he alone made the decision to resign from [W&S]." *See Taylor v. CNA Corp.*, 782 F.Supp.2d 182, 204 (E.D. Va. 2010). Her voluntary resignation from W&S breaks the chain of causation that is necessary to show a relation between the alleged interference and the supposed termination. *See, e.g., Falzone v. Licastro*, No. 1:10cv2918, 2012 WL 711273, at *4 (N.D. Ohio Mar. 4, 2012) ("Voluntary resignation breaks the chain of causation that would have linked any alleged interference to the contract's breach.") (citation and internal alterations omitted); *Geller*

---

[7]In fact, because Roberts was terminated from his employment at W&S before Plaintiff resigned, he could not have followed through on any alleged threats of retaliation to end her employment at W&S.

*v. Von Hagens*, No. 8:10–cv–1688, 2010 WL 4867540, at *4 (M.D. Fla. Nov. 23, 2010) ("Defendants' point is well-taken that, having presented that his resignation was voluntary, Geller cannot now be allowed to maintain a cause of action for tortious interference with his contract."); *Brescia v. Leff*, No. 3:04cv1680, 2006 WL 3231433, at *6 (D. Conn. Nov. 7, 2006) (holding plaintiff's claim of tortious interference with contractual rights fails in part because of her voluntary resignation) (citation omitted); *Thompson v. City of Columbus*, No. C2–98–822, 2001 WL 1681129, at * 6 (S.D. Ohio Sept. 26, 2001) (holding plaintiff's tortious interference claims fails as a matter of law for because she voluntarily resigned from her employment.); *Mart v. Dr. Pepper Co.*, 923 F. Supp. 1380, 1390 (D. Kan. 1996) ("Simply put, there is no evidence that Pepsi or Terrell interfered with or induced the breach of any such contract. Plaintiff voluntarily resigned from her position.").

Because Plaintiff has not alleged any facts to support her claim that Roberts intentionally procured her resignation, her claim for tortious interference with a contract should be dismissed.

### IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant his Partial Motion to Dismiss and dismiss with prejudice Plaintiff's claims of defamation, intentional infliction of emotional distress, and tortious interference with contract against Roberts.

Respectfully submitted,

s/Deborah B. Barbier
Deborah B. Barbier (#6639)
DEBORAH B. BARBIER, LLC
1811 Pickens Street
Columbia, South Carolina 29201
803-445-1032
dbb@deborahbarbier.com

August 26, 2024