IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CASE NO.: 2:24-cv-1682-RMG-BM

| | | |
|---|---|---|
| Lauren Ballard | ) | |
| | ) | |
| Plaintiff, | ) | OPPOSITION TO DEFENDANT |
| | ) | WESTON & SAMPSON ENGINEERS |
| | ) | INC.'S MOTION TO DISMISS |
| v. | ) | |
| | ) | |
| Weston & Sampson Engineers, Inc. | ) | |
| and Jason Roberts | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.    POSTURE OF THE CASE

Weston & Sampson Engineers, Inc. seek to dismiss Plaintiff's state law claims and

Plaintiff's Title VII claim for hostile environment. ECF 47.  Plaintiff submits that the Second

Amended Complaint, ECF 43, attached as Exhibit 1, is sufficiently pled. Plaintiff requests that

no cause of action be dismissed at this time.

Plaintiff filed suit in this Court after exhausting administrative remedies with the EEOC.

The initial Complaint alleged against the employer Weston & Sampson, was for hostile

environment under Title VII of the Civil Rights Act of 1964, retaliation under Title VII, as well

as claims for Intentional Infliction of Emotional Distress, Defamation and Defamation *per se.*

Complaint, ECF 1.  Plaintiff filed her First Amended Complaint, ECF 38, in response to the

Defendant's initial Motions to Dismiss, ECF 7.  The Second Amended Complaint, ECF 43

1

attached as Exhibit 1,  was filed in compliance with the Court's Order, ECF 41, ruling that Plaintiff must proceed without the use of a pseudonym.

The parties participated in a Rule 26 conference on August 27, 2024. However, discovery has not yet commenced in this matter. This lawsuit is not at the stage where Plaintiff has received or has access to full records relating to workers compensation, discipline, investigations, personnel files or other specific comparator information, including her own personnel files.

## II.    BACKGROUND

Plaintiff's state and federal claims against Defendant Weston & Sampson Engineers, Inc. arise from the illegal actions of the employer including retaliation, discrimination and a hostile work environment existing at Weston & Sampson.

Defendant knowingly and intentionally retained a supervisory employee with a disciplinary history of harassment and intoxication. He was not terminated when he should have been. Instead, within 12 weeks of his terminable actions, he was rewarded by the Defendant and sent with Plaintiff on a business trip where he repeated the pattern, became intoxicated and assaulted the Plaintiff. The employer is responsible for his actions and for their inaction.  They had a duty, had notice and failed to take proper actions which led to the Plaintiff's injuries. See Exhibit 1, Second Amended Complaint, ECF 43,  para.36-40.

## III.    STANDARD OF REVIEW

Traditionally a Plaintiff must merely provide "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P.8(a)(2).  The liberal pleading standards, adopted in 1938 with the Federal Rules of Civil Procedure, were designed to eliminate procedural

barriers at the beginning of litigation that could prove fatal even to a meritorious claim. "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 43 (1957).

Plaintiff must provide the "grounds'" of her "entitle[ment] to relief", which requires more than labels and conclusions. *Bell Atlantic Corporation. v. Twombly*, 550 U.S. 544, 545, 127th S. Ct. 1955, 1959 (2007). The court must evaluate the legal sufficiency of a complaint and determine whether the complaint on its face States plausible claims upon which relief can be granted. *See, Francis v. Giacommelli*, 588 F.3rd 186, 189 (C.A. 4 MD. 2009). The allegations need not pass a probability test as the Court must still assume the allegations are true, but the Plaintiff must offer plausible facts, "enough facts to raise a reasonable expectation that discovery will reveal evidence…" of the causes of action pled. *Twombly* at 545.

The Fourth Circuit has held that the pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Robinson v. AM. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). The court is not required to, "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). But to the extent facts are disputed, the court still must construe them in favor of the nonmoving party.

The Plaintiff's Second Amended Complaint, ECF 43 , Exhibit 1, alleges sufficient and plausible facts entitling her to relief on each cause of action.

## IV.    ARGUMENT

## A. <u>DISMISSAL OF ALTERNATIVE THEORIES OF RECOVERY</u>

Defendant seeks to dismiss Plaintiff's claims of Intentional Infliction of Emotional Distress and Defamation, alleging that Title VII provides an adequate statutory remedy. ECF 47-1. Page 3-6. Defendant argues that Plaintiff's state and federal claims arise from the same underlying allegations and therefor she is limited to statutory remedies. ECF 47-1 Page 5-6. Defendant alleges that under South Carolina law a Plaintiff cannot pursue a common law claim based on the same conduct for which Plaintiff is pursuing a statutory remedy. Id. at 4.

<u>Use of Alternative Theories</u>

With regard to Defendant's claims of redundancy of facts or the use of alternative theories, it is permissible for Plaintiff to advance multiple alternative theories of recovery. See FRCP Rule 8(d)(2) and (3) allowing for the pleading of alternative theories of recovery. *See generally*, *Red Cardinal Fifteen, Inc. v. Chang,* 954 F. Supp. 1111 (DCSC 1995). *See also Williams-Garrett v. Murphy*, 106 F. Supp. 2d 834 (DCSC 2000) which notes that, "a party is entitled to plead alternative theories of relief, but simply may not recover for both. *Save Charleston Foundation v. Murray*, 286 S.C. 170, 333 S.E.2d 60, 64 (SC App.1985). "Parties may plead alternative theories of liability, indeed as many theories as the facts will fit." *Polar Communications Corp. v. Oncor Communications, Inc.*, 927 F.Supp. 894, 896 (D.Md. 1996). However, the plaintiff can only recover once for his damages resulting from the defendant's failure to pay wages as required by law. *See Mould v. NJG Food Service, Inc*, 37 F.Supp.3d 762 (D.Md. 2014), note 1.

4

The South Carolina Supreme Court outlined both the Federal and State rules on the issue in *Skydive Myrtle Beach v. Horry County*, 426 S.C. 175, 826 SE 2d 585 (SC 2019), stating that "pursuit of multiple theories of recovery is permitted by the Federal Rules Of Civil Procedure and pursuant to South Carolina law. We find it is entirely appropriate for Skydive to allege that some of an individual's actions were within the scope of their official duties, and some were not, or even to plead alternative theories of liability depending on whether an individual's actions were within the scope of their duties. *See* Rule 8(a), SCRCP ("Relief in the alternative or of several different types may be demanded.")." 426 S.C. 175, 187-188.  The Court went on to discuss that pleading alternative theories of recovery where it was uncertain of  an employee acted within the scope of his employment is common. Relevant to Plaintiff's case herein the Court in *Skydiv*e cited  *Dickert v. Metro. Life Ins. Co.,* 311 S.C. 218, 220, 428 S.E.2d 700, 701 (1993), which allowed simultaneous causes of action against co-worker and employer based on the same conduct. *Id.  Skydive* also cited *United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1273-74 (11th Cir. 2009), which noted that "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims. Thus, [the] complaint is not subject to dismissal simply because it alleges that both [the employer and employee] committed the tortious conduct,). 426 S.C. at 188.

Should Defendant be successful in dismissing or obtaining summary judgment on one of Plaintiff's claims, including statutory claims under Title VII, no other remedy may be available

to the Plaintiff other than other common law claims. Causes of action should not be dismissed because they are based on the same conduct or arise from common operative facts.

### Intentional Infliction of Emotional Distress and Defamation Claims

Defendant seeks to dismiss Plaintiff's IIED claim and Defamation claims although properly pled pursuant to the strictures of Federal Rule 12(b)(6) and if read in the light most favorable to the Plaintiff, do not warrant dismissal. Defendant seeks to dismiss Plaintiff's claims alleging that the cause of action is predicated on the same conduct as her Title VII claims but fails to cite any definitive Supreme Court or Fourth Circuit precedent on the precise issue.

Title VII claims "do not preempt common law torts of a highly personal nature, such as defamation, even if both claims arise from the same set of facts." *Charlot v. Donley*, No. 3:11-579-MBS-SVH, 2012 U.S. Dist. LEXIS 111620, at *13 (D.S.C. Aug. 9, 2012). Title VII itself states at 42 USC § 2000e-7 ,"Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

The *Charlot* case, although not published, thoroughly examines the issue of whether causes of action of a highly personal nature that are unrelated to discrimination but that arise out of a similar set of facts as the discrimination are barred.  In that case the Court found that Plaintiff's Title VII claims did not preempt her defamation claims- which sought to remedy her

6

reputation –although they rose from the same set of facts, noting that damage to reputation was a highly personal harm distinct from the harm that her Title VII claim seeks to address.

*Charlo*t cites the 9th Circuit case of *Brock v. United States*, 64 F.3d 1421, 1423 (9th Cir. 1995), holding that a state battery claim arising from a sexual assault was not preempted by a Title VII discrimination claim, even if the claim arose from the same facts. "Title VII is not the exclusive remedy for federal employees who suffer `highly personal' wrongs, such as defamation, harassing phone calls, and physical abuse. . . . When the harms suffered involve something more than discrimination, the victim can bring a separate claim." *Charlot* cites numerous other decisions ruling that state claims were not barred and found "common law tort claims to coexist with Title VII federal employment discrimination claims when the tort claims are "highly personal" offenses that go beyond the meaning of discrimination." *Charlot v. Donley* at pg.3. See e.g. *Kibbe v. Potter*, 196 F. Supp. 2d 48, 69 (D. Mass. 2002), assault and intentional infliction of emotion distress were highly personal causes of action that are not preempted by Title VII; *Boyd v. O'Neil,* 273 F. Supp. 2d 92 (D.D.C. 2003) finding that Title VII redresses employment discrimination not personal injuries and permitting both is not akin to double recovery ; *Beatty v. Thomas,* No. 2:05-71, 2005 WL 1667745, at *7 (E.D. Va. June 13, 2005) finding defamation were not preempted by Title VII because they were not solely claims of employment discrimination; *Baird v. Haith,* 724 F. Supp. 367, 373 (D. Md. 1988) finding no preemption for causes of action arising from the same set of facts, that are distinct from discrimination); *Schoolcraft v. Wabtec Passenger Transit, No.* 7:11-0294-TMC, 2011 WL

5909943, at *2 (D.S.C. Nov. 28, 2011),  discussing that where an anti-discrimination suit

provides an exclusive remedy, a plaintiff may still proceed with state law tort claims.

Plaintiff's claims for discrimination and the remedy available Title VII, differ from her

emotional distress and defamation claims. Plaintiff's defamation claims relate to dissemination

by the employer and its agents of false information related to the sexual encounter at issue and

the events that occurred during and following the business trip. The claim is based on damage to

Plaintiff's reputation for chastity and damage to her reputation. See e.g. ECF 43, paragraphs 114-

129, 65, 72-80. Plaintiff's intentional infliction of emotion distress claims relate to acute and

severe distress that no reasonable person could endure not only arising from events which could

be covered by Title VII but also relate to personal devastating emotional injury from intentional

vile conduct,  harassment and threats arising from the employer's conduct that may fall outside

of the strict confines of Title VII. See e.g. ECF 43, 109-113, 67-80.

Plaintiff submits that both emotional distress and defamation claims are personal claims

addressing damages and facts that fall outside of discrimination, are intensely personal and

provide different remedies and in the case of outrage can provide relief when no other claim is

available for the Plaintiff against that Defendant. *Ford v. Hutson*, 276 S.C. 157 (SC1981); *Todd*

*v. South Carolina Farm Bureau Mut. Ins. Co.,* 283 S.C. 155, 175, 321 S.E.2d 602, 613 (Ct. App.

1984), quashed on other grounds, 287 S.C. 190, 336 S.E.2d 472 (1985), in which the Court held:

"[t]he tort of outrage was designed not as a replacement for the existing tort actions. Rather, it

was conceived as a remedy for tortious conduct where no remedy previously existed."

8

The tort of defamation allows recovery for injury to reputation as the result of the defendant's communications to others of a false message about the plaintiff. *Holtzscheiter v. Thomson Newspapers, Inc*., 506 S.E.2d 497, 501 (S.C. 1998). Under South Carolina law, to state a cause of action for defamation, a plaintiff must show the existence of some message that (1) is defamatory, (2) is published with actual or implied malice, (3) is false, (4) is published by the defendant, (5) concerned the plaintiff, and (6) resulted in legally presumed or in special damages. *Parker v. Evening Post Pub. Co.,* 452 S.E.2d 640, 644 (S.C. Ct. App. 1994), cert. denied, 516 U.S. 1172 (1996). In *Fleming v. Rose*, 338 S.C. 524, 526 S.E.2d 732 (Ct.App.2000), explains that defamation allows recovery for injury to reputation as the result of communications of a false message. S*winton Creek Nursery v. Edisto Farm Credit,* 334 S.C. 469, 514 S.E.2d 126 (1999). The focus of defamation is not on the hurt to the defamed party's feelings, but on the injury to his reputation. See *Wardlaw v. Peck,* 282 S.C. 199, 318 S.E.2d 270 (Ct.App.1984). Defamation need not be accomplished in a direct manner. *Eubanks v. Smith*, 292 S.C. 57, 354 S.E.2d 898 (1987); *Tyler v. Macks Store*s, 275 139*139 S.C. 456, 272 S.E.2d 633 (1980). A mere insinuation is actionable as a positive assertion if it is false and malicious and its meaning is plain. *Eubanks*, supra; T*yler*, supra.

The torts above are completely different from the matters covered by Plaintiff's Title VII claims which deal with (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer." *Roberts v. Glenn Indus. Grp., Inc.*, 998

9

F.3d 111, 117 (4th Cir. 2021) (citing *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)).  Damage to reputation and  outrage as also distinct from the retaliation matter, which covers (i) that Plaintiff engaged in protect activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity.  *Ziskie v. Mineta,* 547 F.3d 220, 229 (4th Cir. 2008).

In support of the Motion to Dismiss, Defendant cites *Dockins v. Ingles Markets*, 306 SC 496 (1992) where in the court decided that Plaintiff's state claim for retaliatory termination in violation of public policy was preempted by the FLSA, which has a provision prohibiting retaliation against employees seeking proper pay. Plaintiff has not filed a claim in this case under the FLSA.

Also relied upon at length by the Defendant is *Menton,* an unpublished Title VII case, which also dismissed a termination in violation of public policy claim as being a claim which is only available in absence of a statutory remedy. ECF 47-1 page 5-6. *Mack v. House of Hope of the Pee Dee*, cited by the Defendant, also unpublished, appears to be a Report and Recommendation on a summary judgment matter arising from a workers compensation retaliation issue. In that case, the state claims were not dismissed until a full examination of the facts was performed. *New v. Belk,* also cited by Defendant, deals with the dismissal of a breach of contract claim as duplicative of an FMLA claim, issues not at play in this litigation. Finally, *Nettles v. Techplant Corp.* 704 F.Supp. 95,100 (D.S.C. 1988) cited by Defendant, is not a similar case. In  that matter, Plaintiff's fourth cause of action was general negligence cause of action. "Clearly, the terms of the FLSA govern the ability of plaintiff to recover overtime wages.

Furthermore, the damages sought in this action are identical to those sought in the third cause of action. If plaintiff is eventually determined to be exempt from the provisions of the FLSA, he certainly cannot circumvent the exemption merely by proving negligence on the part of defendants." *Id.* The case before the Court is not an FLSA case.

Given the foregoing Plaintiff asserts that her claims should not be dismissed based on duplication of remedy.

### B.  PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

Plaintiff's Complaint alleges a hostile work environment. See Exhibit 43, ECF 1, para. 99-108. The employer does not allege that Plaintiff failed to state that claim in its Motion. "To establish a *prima facie* case of sexual harassment based on a hostile work environment, a plaintiff must prove (1) unwelcome conduct; (2) based on the plaintiff's sex; (3) sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) that is imputable to the employer." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) (citing *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).  Plaintiff is not required to plead a prima facie case to survive a 12(b)(6), much less prove her entire case in the pleading. See e.g., *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Cooper v. United Parcel Serv., Inc.*, No. 08–1583, 2008 WL 4809153, at *2 (E.D.La. Nov. 3, 2008) (noting that in *Twombly*, the Supreme Court, "explicitly reaffirmed its holding in *Swierkiewicz* when it noted that the Court does 'not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its

face.' ") "The prima facie case under *McDonnell Douglas* ... is an evidentiary standard, not a

pleading requirement." *Swierkiewcz*, 534 U.S. at 510, 122 S.Ct. 992.

The Employer states that it has evidence of a potential affirmative defense, claiming that

it promptly investigated and took remedial action. See Memorandum on Motion to Dismiss, ECF

47-1 page 6-7.  Plaintiff denies the same in the Complaint at Exhibit 1, ECF 43, para. 22-26, 39,

59, 54, 64, 103-104. Employer claims that there was a prompt remedial action once Defendant

had notice of the Individual Defendant's improper acts. Plaintiff alleged Defendant had prior

notice of improper and potentially dangerous conduct by the supervisor at issue, at least as of

December 2021, and also was on notice at the conference when the individual defendants actions

were observed by another employee before it was reported by Plaintiff,  **yet in each case the**

**Defendant employer failed to act**. See Exhibit, 1 Complaint ECF 43,  para. 22-26, 39, 59, 64,

74, 99-108. Defendant's eventual action (termination of the offending supervisor) in Spring of

2022, was too little too late.  In Exhibit 1, Complaint ECF 43 Plaintiff alleges:

22. Roberts was known to the Employer based on his admitted disciplinary record as an

employee who had in the past engaged in negative conduct associated with excessive

drinking, and engaging in improper and unprofessional conduct toward his coworkers

including females. On information and belief his inappropriate, illegal and unprofessional

conduct was known and observed by co-workers and supervisors.

23. In December 2021 Mr. Roberts, upon information and belief, while employed at

Weston & Sampson, became inebriated at a company sponsored event, where he engaged

in sexual harassment, unwanted touching and used racial epithets. Defendant, by his own admission, was counseled for his behavior but was not terminated and he continued to have managerial responsibility, was permitted to go to business events to represent the Defendant Employer and had access to confidential employee information. Employer and had access to confidential employee information."

24 "Weston & Sampson has policies and procedures in place which prohibit discrimination, harassment, bullying, unwanted touching and retaliation all of which are grounds for termination."

In support of its Motion to Dismiss, Defendant argues that the mere alleged existence of a meritorious defense entitles the Employer to dismissal, and cites *Brockington v. Boykins,* 637 F.3d 503,506 (4th Cir. 2011). *Brockington* was an interlocutory appeal of a *denial of a motion to dismiss* based on a defense of qualified immunity. The lower court denied the motion to dismiss, and the Fourth Circuit affirmed. Qualified immunity is a highly controversial and unique defense for which a system of quick disposal of clearly non-meritorious cases to the benefit of law enforcement has been developed. *Brockington* explains:

> "We review de novo the decision of the lower court to deny motion to dismiss pursuant to Federal Rule 12(b)(6), recognizing that dismissal is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to "state a claim to relief that is plausible on its face." *Bell Alt. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Jenkins v. Med-ford*, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal

13

nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem,* 85 F.3d 178, 181(4th Cir. 1996). One such defense is that of qualified immunity. *Jenkins,* 119 F.3d at 1159.``

This case is not a qualified immunity case. As with most employment cases, this case is factually complex and requires more than the articulation of a potential defense to be dismissed at this stage, especially as the Employer does not argue that Plaintiff failed to state a claim. In addition, Defendant has not presented a similar employment case for comparison. Defendant cites several summary judgment cases and one jury verdict case discussing the elements of prima facia case and an employer's defenses to claims of sexual assault, discrimination and hostile environment.[1] Defendant's brief, however, craves citation to cases where a motion to dismiss was granted under Rule 12(b)(6) based on the pleading of an alleged fact dependent (and what will be a hotly disputed) affirmative defense.

Plaintiff submits that at the appropriate time in the litigation, under *Burlington Industries, Inc. v. Ellereth*, the defense will fail. Defendant Weston & Sampson was on notice of negative conduct of their employee prior to the report by Plaintiff and failed to act. Defendant has not presented grounds for dismissal but has identified a question of fact which is at the heart of the

---

[1] *Mack v. Detyens Shipyards,* unpublished, 2017 U.S. Dist. LEXIS 196591 (DSC Nov. 30, 2017) was a motion for summary judgment matter; *Vance v. Ball State*, 570 U. S. 421, 133 S. Ct. 2434, 2439, 186 L. Ed. 2nd 565 (2013) summary judgment matter; *DeClue v. Central Illinois Light Co.,* 233 F.3rd 434, 437 (7th Cir. 2000) summary judgment matter; *Burlington Industries, Inc. v. Ellereth*, 524 U.S. 742 (1998) summary judgment matter; *Spicer v. Virginia Department of Corrections*, 66 F.3rd 705,710 (4th Cir. 1995) post jury verdict.

14

litigation, i.e. whether termination of the employee only after the worst happened was "prompt and effective".

Finally, it would be premature for this Court to conclude to certainty that Plaintiff's claims fail as a matter of law. See *McCray v. Maryland Department of Transportation, Maryland Transit Administration*, 741 F.3d 480, 484 (4th Cir 2014);  *Erickson v. Pardus*, 127 SC 2197 (2007). A ruling on the substantive merits of Plaintiff's Complaint at this stage, absent the opportunity to gather and submit evidence as contemplated by the Federal Rules, is premature. The cause of action should not be dismissed "before discovery has unearthed relevant facts and evidence." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992.

### C.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS and  WORKERS COMPENSATION EXCLUSIVITY MATTERS

Defendant seeks to dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress/Outrage and any other intentional tort or negligence claim pled in the Complaint, stating the same are blocked under the exclusive remedy theory. Defendant asserts that Worker's Compensation is the exclusive remedy against an employer for an employee who sustains an injury arising from their employment. ECF 47-1 page 7. Defendant does not claim that Plaintiff fails to set forth facts sufficient to state the claim, the Motion to Dismiss is based on jurisdictional arguments. See ECF 47-1 page 7-10.

The employer makes an affirmative statement that Plaintiff's claims arose from her employment. Plaintiff did attempt to file for Workers Compensation benefits. Plaintiff states in the Complaint, ECF 43:

> 72. Plaintiff sought workers compensation benefits, but the same were denied on June 22, 2022 by the Defendant Weston & Sampson's insurer, on the basis that it was not a compensable case under the Worker's Compensation Laws of the State of South Carolina and there was no compensable injury arising from an accident or injury in the scope of employment. Upon information and belief the denial was based on dissemination of information that the events that occurred on the business trip were either outside the scope of employment or consensual-which information would have been received from the employer Weston & Sampson. Any statements that Plaintiff was engaged in a voluntary sexual or intimate relationship with the individual Defendant were untrue and made without privilege.

See also, Exhibit 2, Redacted SC Workers' Compensation Commission claim. Weston & Sampson, through its agents, took the position that the events underlying this matter were not covered by the Act. See Exhibit 3, Workers' Compensation claim denial letter, which is a June 22, 2022 letter to Plaintiff stating that her case was not compensable under the "Work Comp" laws of South Carolina. "There is no compensable injury, arising from an accident in the course and scope of employment". Upon information and belief this decision was reached with the input of the Defendant Weston & Sampson.

Weston & Sampson takes alternative positions that the facts underlying the Complaint are covered, as well as not covered, by the Workers' Compensation Act. Plaintiff does not yet have access to Defendant's workers compensation files or investigations. Without further discovery of the position Defendant is taking, it is unfair to dismiss Plaintiff's claim. If there are actions that Defendant will later claim were either inside or outside the scope of the Plaintiff's employment, or were consented to by the Plaintiff (i.e. sexual interactions), Plaintiff deserves to be able to discover the same and to amend her Complaint accordingly, as there may be other causes of action which would be applicable. To the extent that alternative pleading is permitted, should Defendant be given liberal leave to plead in the alternative, Plaintiff should be permitted the same courtesy.

Although Ballard was advised her claims are outside of the purview of Workers' Compensation, Defendant asserts that Plaintiff's intentional tort and negligence claims (other than defamation) are barred by the Worker's Compensation Act. A workplace injury is not covered by the South Carolina Workers Compensation Act unless there is (1) an injury, either physical or mental, (2) created by accident, and (3) arising out of employment. *Dickert v. Metropolitan Life Ins*. Co. 306 S.C 311, 411 S.E.2d 672, *Dickert Metropolitan Life Ins. Co*., 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993). Cases where the injury is caused by an accident are within the jurisdiction of the South Carolina Workers' Compensation Commission.

S.C.Code Ann. §42-1-540 bars all common law actions against an employer for "accidental" personal injury. See also *Cook v. Mack's Transfer & Storage*, 291 S.C. 84, 352 S.E.

17

2d 296, 298 (S.C. App. 1986) cert. denied, 292 S.C. 230, 355 S.E. 2d 861 (S.C. 1987) (stating

that the exclusivity provision of the Act "bars all actions against an employer where a personal

injury to an employee comes within the Act... [making] the Act the exclusive means of settling

all such claims"). Exceptions to the Act include subcontractor incidents, intentional injury,

slander/injury to reputation and specific occupational exclusions. *Cason v. Duke Energy*, 560

SE2d 892, 893, n.2 (SC 2002). In addition, the Act's exclusivity provision does not bar suits for

which the Act provides no remedy. See, *Futia v. Palmetto Behavioral Health*, 317 F.Supp.2nd

638 (SCDC 2004); see also, *Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993).

When an injury is inflicted by an employer who acts with a specific intent to injure, the

resulting injuries are exempted from the exclusive remedy of worker' compensation coverage.

*Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993), *Stewart v. McLellan's Stores*,

194 S.C. 50, 9S.E.2d35 (1940). The Plaintiff alleged that she was subjected to specific physical

and psychological abuse by a supervisory employee and that the employer knew or should have

known, with specific egregious actions taking place on a work trip. See Exhibit 1, ECF 43, para

41-56. When intentional abusive conduct is committed by an owner or high-level manager of the

corporation, he can be considered an alter ego of the employer. *Stewart*, 194 S.C. 50, 9 S.E.2d 35

(1940). An employee is not precluded from suing his employer at common law if the employer

or an "alter-ego" of the employer commits an intentional tort against the employee because "the

intentional and outrageous nature of the act removes it from the realm of an 'accidental' injury."

*Stewart v. McLellan's Stores*, 194 S.C. 50, 9S.E.2d35 (1940). An alter ego of corporation is

defined as a dominant corporate owner or officer of a corporation. *Dickert v. Metropolitan Life Ins. Co.*, supra.; *See also, Andrews v. Peters*, 55 N.C. App. 124, 284 S.E.2d 748 (1981); *disc. rev. denied* 305 N.C. 395, 290 S.E.2d 364 (1982). The asserting party must prove the exception, that the employee is an alter-ego, and that the acts of the employee are so serious and aggravating as to evidence a willful intent to injure.

*Stewart v. McClellan's Stores Co., et al,* 194 S.C. 50, 9 S.E. 2d 35 (S.C. 1940), is the seminal case on this topic.  In *Stewart*, our State Supreme Court discussed at length the exclusivity provision of the Act and the applicability if actions are committed by managers.   In *Stewart,* a manager of a store assaulted and battered an employee, and "with considerable force and violence" and thus was considered the alter ego of the Employer. In this case the Plaintiff has pled that the assault and acts at issue were committed by management. See Exhibit 1, ECF 43, para 15, 21, 23, 29, 36-57, 72.

The issue of the level of supervision and ownership of the supervisor at issue is disputed and brings to bear facts outside of the Complaint. Defendants admit that the company is employee owned. ECF 47-1 page 1. They also admit Roberts is a supervisor. ECF 47-1 page 9. As to whether the individual supervisor in this case is an alter ego, this is a fact to be determined, and is a complex question, as Weston & Sampson is employee owned. See Motion to Dismiss, ECF 47-1, page 1. As the question of an intentional act and the alter ego issues are ones for a trier of fact, Plaintiff's claims should not be dismissed upon a Motion pursuant to Rule 12(b)(6). *Reeves v. Carolina Foundry & Machine Works*, 194 S.C. 403, 9 SE 2nd 919 (1940).   *Zeigler v.*

19

*S.C.L.E.D.,* 250 at 329, 157 SE 2d at 599. *See also, Youmens v. Coastal Petroleum Co.,* 333 SC 195 (S.C. App 1998). [2]

### D.  **DEFAMATION HAS BEEN PROPERLY PLED**

Plaintiff alleged that her former supervisor, as agent of the employer and as an individual, made false and injurious misstatements about her, disseminated false information including regarding her reputation for being chaste and honest. See Exhibit 1, ECF 43, para 41, 65, 72-73, 78-80, 114-129. Nevertheless, Defendant Weston and Sampson seeks dismissal of this claim. Plaintiff does not have to prove her case at this stage but has to allege sufficient facts to put the defendant on notice, as to the essential facts related to the defamation. Plaintiff's Complaint details the time frame that Defendant Roberts, her supervisor, told his employer, law enforcement, insurers, his paramour A.M. and two of A.M.'s co-workers and social media "friends" S.D. and B.A. that Plaintiff consented to the sex acts described in the Compliant. The statements were false, made without privilege and amount to defamation based on lack of

---

[2]      With regard to other acts of negligence, *Loges v. Mack Trucks*, Inc., 308 S.C. 134, 417 S.E.2d 538 (S.C. 1992) permits an employee to maintain a common law action for negligent supervision against an employer for a co-employee's alleged slander. The court determined that a slander action did not constitute a personal injury claim and thus was barred by the Act's exclusivity provision "**since the gravamen of a slander action is injury to one's reputation.**" Plaintiff here pleads libel and slander.  See Exhibit 1, ECF 43, para  65, 72-80, 110, 122-129. Although Defendant does not seek to dismiss the claims for Intentional Infliction of Emotional Distress or Outrage against the individual defendant it is noteworthy that  *Southern Holdings v. Horry County, South Carolina*, 02-1859, 2007 WL 89611 at *8-9 (DSC Mar. 2007), allowed a claim against the defendant individual employee in their individual capacity where defendant was alleged to have acted outside the scope of his employment through his actions.

chastity. The Complaint also alleges that, in addition to the statements made by Roberts as an agent of the employer, the employer repeated these statements at a minimum to their insurer as it relates to the workers compensation matter.

Plaintiff's cause of action for defamation states:

114. The Plaintiff realleges each and every allegation contained in paragraphs preceding as if set forth again verbatim.

115. That, on information and belief, Defendant Roberts, in his individual capacity and as a manager, agent and employee of the Defendant Employer, made or caused to be made, sent or caused to be sent, delivered or caused to be delivered, false, defamatory and injurious statements regarding the Plaintiff, as set forth above.

116. The employer Weston & Sampson, through Roberts and other agents or employees on information and belief also disseminated false information, regarding Plaintiff within the Company and to its agents and insurers within and outside the Company.

117. The false and injurious statements by the Defendants were made after the events described business conference which was attended by Roberts and Plaintiff, and included in April 2022, May 2022, June 2022, and continued to be disseminated through December 2023.

118. The untrue statements regarded Plaintiff's honesty, chastity, consent to sexual interactions with Roberts and engagement in other inappropriate conduct at the conference.

119. Plaintiff asserts that she has told the truth and denies that she engaged in consensual sexual relations or had an intimate relationship with Roberts and any statements made by the Defendants to that end are untrue, defamatory and made without privilege.

120. As a supervisor Defendant Roberts was not only Plaintiff's superior but was a longer term employee, was the senior representative at the conference where the events giving rise to the false statements occurred, and he had more experience, contacts and standing in the industry than Plaintiff, who was a recent graduate.

121. Said statements, attacking Plaintiff's truthfulness, veracity and chastity, and fitness for employment were upon information and belief, published to the employer, other employees

of the Defendant employer, others within the business and police communities, insurers and to Defendant Roberts' paramour, social friends and to other persons, not specifically stated herein.

122. Defendant Roberts, upon information and belief, falsely represented to the Defendant employer, co-workers, law enforcement, insurers, the business community, his social friends and family and others that any sexual conduct with Plaintiff was consensual. This constituted a false statement that Plaintiff engaged in a voluntary sexual encounter with him on a business outing and that she lied about it.

123. The Defendant employer upon information and belief repeated and disseminated the untruths perpetuated by Roberts, its agent and employee, including to its insurers and throughout the Company without privilege.

124. Plaintiff denies the conduct was consensual and statements that she consented to any such conduct are false and constitute a direct attack on her chastity, reputation for chastity, fitness for employment and reputation for honesty.

125. Defendant Roberts, individually and as an agent of the Defendant Employer had no legal privilege to publish said statements to any third party. Similarly Defendant Employer had no legal right or privilege to disseminate false information to any third party.

126. That as a direct and proximate result of the libelous and defamatory statements made by Defendant individually and as an agent, servant, officer and, employee of the Defendant Employer, and by the Defendant Employer, Plaintiff was and continues to: be greatly humiliated, embarrassed, and distressed; have difficulty in her daily life; have her business affairs interrupted; be unable to attend her ordinary affairs due to her mental state; be compelled to expend money for legal and medical representation; suffer considerable shock, mental stress, worry; to be held up to public ridicule, scorn, and contempt; and her professional reputation in the industry has been severely injured; and be otherwise damaged, suffering actual, special and consequential damages.

127. Defendant Roberts made these defamatory statements including in the course of his employment as a supervisor concerning the Plaintiff intentionally or with reckless disregard for Plaintiff's reputation as an upstanding, honorable and respected member of her community and citizen of the State of South Carolina and as a chaste woman.

128. The employer, through agents and employees made these defamatory statements concerning the Plaintiff intentionally or with reckless disregard for Plaintiff's reputation as an

upstanding, honorable and respected member of her community and citizen of the State of South Carolina and as and honest and chaste woman.

129. Plaintiff is informed and believes that she is entitled to judgment against the above named Defendants, jointly and severally, for actual and consequential damages in an amount to be determined by the trier of fact.

*Parrish v. Allison*, 276 SC 308, 320-321, 656 SE2d 382 (S.C. Ct. App. 2008), reviews South Carolina law on the tort of defamation and allows a plaintiff to recover for injury to reputation as the result of the communications to others of a false message about the plaintiff. *Holtzscheiter v. Thomson Newspapers, Inc*., 332 S.C. 502, 508, 506 S.E.2d 497, 502 (1998); *Marray v. Holnam, Inc*., 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct.App.2001). Defamatory communications take two forms: libel and slander. *Holtzscheiter*, 332 S.C. at 508, 506 S.E.2d at 502. To recover plaintiff must establish (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged communication; (3) fault on the defendant's part in publishing the statement; and (4) either actionability of the statement irrespective of special harm or the existence of special harm to the plaintiff caused by the publication. See *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002), *Parrish v. Allison*, 276 SC 308,656 SE2d 382 (S.C. Ct.App. 2008).

An allegedly defamatory statement can either be "actionable per se" or "not actionable per se*." Holtzscheiter,* 506 S.E.2d at 510. All libel is actionable per se, but slander is only actionable per se if it relates to one of the following five categories: (1) the commission of a crime of moral turpitude; (2) the contraction of a "loathsome disease"; (3) adultery; (4) lack of chastity; and (5) "unfitness in one's business or profession." *Id*.at 501. As stated in *Yost v. City*

23

*of Charleston* and *King v. Charleston County School District*, 664 F. Supp.2d 571 (DSC 2009) a principal may be held liable for defamatory statements made by an agent acting within the scope of his authority or apparent authority.

Here, Plaintiff alleged that Supervisor Roberts disseminated misinformation about her sexual activities (i.e. chastity or lack thereof)  and about the events that occurred in the course of employment. His comments concerning the Plaintiff's veracity, honesty, chastity and fitness for work were sufficiently based on the Plaintiff's employment to avoid dismissal of her claim against the employer.  A defamation claim may be maintained against an employer rather than the agent of the employer where the defamation is based on one's employment. *King v. Charleston County School District*, 664 F.Supp.2d 571, 586-7 (DSC 2009). That the Plaintiff alleges that the defamation is based on the employment is all that is required for stating a claim against the employer. *Vogt v. Greenmarine Holding, LLC*, 318 FSupp2d 136, 144, n.6.(SDNY 2004). The defamatory message is obvious on its face. *White v. Wilkerson*, 328 SC 179, 183 (1997).

Defendant claims that the facts plead, specifically dealing with lack of chastity, even when read in conjunction with others in the Complaint, are not enough to sustain a claim of defamation. *Iqbal* does suggest that Plaintiff must plead context specific material. The Fourth Circuit in *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F. 3d 250(4th Cir. 2009) explains that the "context-specific" test does not require "detailed factual allegations." *Iqbal* . at 1949-50 (quotations omitted). The complaint must, however, plead enough facts to allow a court,

24

drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Iqbal* . at 1950.

The Complaint when read in its totality alleges that Plaintiff was sexually assaulted by her Supervisor, in the course of employment , and that he later made false statements to the employer, and upon information and belief to investigators, family members, social acquaintances and others that any sexual contact, touching or other actions that, if it happened, were consensual . See Exhibit 1, ECF 43, para 41, 65, 72, 73, 78-80, 114-129   Roberts' false statements that Ms. Doe agreed to the conduct and that it may not have even occurred were made without any protective legal privilege by Roberts to his employer and others. (*Id.* at paragraph 72,119,123,125). His statements to the employer were accepted by the employer (*Id*. at paragraphs 64, 65, 67, 68, 69, 72) as he was, on information and belief, terminated for alcohol consumption and not his other behaviors. (Id. at paragraph 64).

In the Amended Complaint, beginning as early as paragraph 41, Plaintiff discusses the defamatory and retaliatory behavior of her supervisor. Referring to the events at the conference in the presence of colleagues in March 2022; 41. *Roberts began make unwanted advances to Plaintiff and referred to her as "his girl" and "babe". He continued to actively solicit other females, and was calling colleagues by a racial slur "N-----".* See Exhibit 1, Complaint, ECF 43. The Complaint further includes information in Paragraphs, 44, 50, 54, 63-65, 72-80, which sets forth allegations that she was falsely accused of lack of veracity and chastity and that those allegations were disseminated without privilege. Paragraphs  72, 119, 122, 123, 125.  Supervisor

Roberts is specifically named as the author of the defamation. See Exhibit 1, Complaint, ECF 1, Para. 114-129.

The dissemination of false information that Plaintiff agreed to be assaulted, choked, restrained, strangled, bitten, sexually and inappropriately touched (See, Exhibit 1 at paragraphs 47-50, 55-56, 65-66, 73, 75-80) sufficiently outlines a claim of defamation and an attack on Doe's veracity, chastity and ability to perform her job. Roberts claims of consent to sexual exploitation that occurred 12 days after hire, on her first business trip with someone she just met (Id.at paragraphs 2,7,27,31) certainly negatively affected her career and tenure at Weston & Sampson. How could her reputation not be damaged? The defamatory message is obvious on its face. *White v. Wilkerson*, 328 SC 179, 183 (1997). As such Plaintiff requests that her claim of defamation not be dismissed.

Respectfully Submitted,

*s/Jennifer Munter Stark*
Jennifer Munter Stark, Esq. FID #9364
Jennifer Munter Stark, Esquire, LLC
210 Wingo Way #300
Mt. Pleasant, SC 29464
(843) 972-0004, (843) 972-0006 (f)
jmunterstarklaw@gmail.com
ATTORNEY FOR PLAINTIFF

September 9, 2024
Mt. Pleasant SC