IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
CASE NO.: 2:24-cv-1682-RMG-BM

| | | |
|---|---|---|
| Lauren Ballard | ) | |
| | ) | |
| **Plaintiff,** | ) | **OPPOSITION TO DEFENDANT** |
| | ) | **JASON ROBERTS' MOTION TO DISMISS** |
| **v.** | ) | |
| | ) | |
| **Weston & Sampson Engineers, Inc.** | ) | |
| **and Jason Roberts** | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## I.  INTRODUCTION

Plaintiff opposes Defendant Jason Roberts' Motion to Dismiss her claims pursuant to Federal Rule 12 (b) (6) Motion (ECF 46). Plaintiff submits that her Second Amended Complaint, (ECF 43), attached as Exhibit 1,  alleges facts sufficient to sustain Plaintiff's claims for relief and meets the requirements of the Rules.  As all matters are sufficiently pleaded, Plaintiff requests that no cause of action be dismissed at this time.

## CASE STATUS

This case arises following Plaintiff's employment with the Corporate Defendant, Weston & Sampson, and the events which transpired subsequently, including those involving Defendant Roberts. Defendant Jason Roberts was employed by Weston and Sampson as a Supervisory GIS Specialist, overseeing the GIS departments on the East Coast at the time of the seminal events and was within Plaintiff's chain of command in the GIS division of the employer. Second Amended

1

Complaint (SAC), Exhibit 1, ECF 43, para. 6. W & S hired Plaintiff beginning in March 2022 to work at its North Charleston, SC facility. SAC Exhibit 1, ECF 43, para. 3. This was Plaintiff's first job after graduating college. Id. at para 2. After working for less than 2 weeks, the Defendant Company allowed supervisor Defendant Roberts, who had a history of serious disciplinary issues, to arrange for the 22 year old to accompany him to a business conference where she has alleged she was sexually harassed and sexually assaulted by him. ECF 43 at para. 22, 23,27, 29-31, 36-38, 39-56. When she returned from the trip and reported the events, she experienced additional harassment, hostility and retaliation from the Defendant Company, and defamation by its agents and employees, including Roberts. See Exhibit 1, Complaint, ECF 43 para. 58-81, 114-139.

Plaintiff filed suit after exhausting her administrative remedies with the EEOC. The initial Complaint alleged against the employer: hostile environment under Title VII of the Civil Rights Act of 1964, retaliation under Title VII, as well as claims for Intentional Infliction of Emotional Distress, Defamation and Defamation *per se.* ECF 1. As for Defendant Roberts, Plaintiff filed in her detailed Complaint the following causes of action against him individually: assault and battery; intentional infliction of emotional distress; interference with contract; and defamation. Defendant Roberts filed a First Motion to Dismiss ( ECF 15) on June 7, 2024, and Plaintiff filed her Opposition (ECF 22) on June 21, 2024, to which she attached her proposed Amended Complaint (ECF 22-4). Roberts filed a Reply Brief in Response to Plaintiff's Opposition to the  Motion to Dismiss (ECF 25) on June 26, 2024.

In an abundance of caution, Plaintiff also filed a Motion for Leave to Amend on June 12, 2024  (ECF 19). Defendant Roberts specifically did not consent, and the Court gave leave to

2

Plaintiff to file an Amended Complaint pursuant to ECF 38. The Court then Ordered that the Plaintiff proceed in her own name (ECF 41, August 5, 2024) requiring Plaintiff to file the Second Amended Complaint at ECF 43. Defendant Roberts has now filed a Motion to Dismiss pursuant to FRCP 12(b) (6) (ECF 46 ). The Motion seeks dismissal of Plaintiff's claims of defamation, intentional infliction of emotional distress and tortious interference with contract against Roberts based on insufficiency of pleading.

Discovery has not yet commenced in this matter. The parties have participated in a Rule 26 conference. This lawsuit is not at the stage where Plaintiff has received or has access to full records relating to workers compensation, discipline, investigations, personnel files or other specific comparator information, including her own personnel files.

## II.     <u>STANDARD OF REVIEW</u>

Traditionally a Plaintiff must merely provide "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed.R.Civ.P.8(a)(2).  The liberal pleading standards, adopted in 1938 with the Federal Rules of Civil Procedure, were designed to eliminate procedural barriers at the beginning of litigation that could prove fatal even to a meritorious claim.  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Conley v. Gibson*, 355 U.S. 41, 43 (1957).  The dissent in *Twombly* specifically Stated that *Conley* should not be "interred…without a eulogy." *Twombly* at 577 (Stevens, J., dissenting).  Plaintiff must provide the "grounds'" of her "entitle[ment] to relief", which requires more than labels and conclusions.  *Bell Atlantic Corporation. v. Twombly*, 550 U.S.

544, 545, 127th S. Ct. 1955, 1959 (2007). The court must evaluate the legal sufficiency of a complaint, and determine whether the complaint on its face States plausible claims upon which relief can be granted. *See, Francis v. Giacommelli*, 588 F.3rd 186, 189 (C.A. 4 MD. 2009). The allegations need not pass a <u>probability</u> test as the Court must still assume the allegations are true, but the Plaintiff must offer plausible facts, "enough facts to raise a reasonable expectation that discovery will reveal evidence…" of the causes of action plead. *Twombly* at 545.

The Fourth Circuit has held that the pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Robinson v. AM. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009). The court is not required to, "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006). But to the extent facts are disputed, the court still must construe them in favor of the nonmoving party.[1]

---

[1] Defendant notes in Ftn 2, ECF 46-1, p.2, that Plaintiff's allegations regarding sexual assault did not result in charges of a crime and that "thorough investigations" were conducted by law enforcement. When moving to dismiss under FRCP 12(b)(6), the general rule is that a court may not consider documents that are extrinsic to the complaint. Discovery has not commenced and as such Plaintiff craves notice of the extrinsic documents and information regarding the nature, extent and quality of the investigations referred to and requests that the same not be considered by the Court. However, to the extent that the comment is warranted, statistics and research consistently show that sexual assault reporting and the prosecution thereof remains low. The Rape, Abuse, and Incest National Network (Raain.org/about-sexual-assault) estimates that for every 1,000 rapes, 310 are reported to police, 50 reports lead to an arrest, 28 cases result in a felony conviction, and 25 cases result in incarceration. This compares to higher rates at every stage for other felonies like robbery or assault.

Plaintiff asserts that her Second Amended Complaint, ECF 43, Exhibit 1, alleges sufficient and plausible facts entitling her to relief on each cause of action. As such, the Defendant's Motion to Dismiss should be denied.

### III.    ARGUMENT

### A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS HAS BEEN SUFFICIENTLY PLEAD

Defendant asserts at page 12 Section C of his Motion to Dismiss, ECF 46-1, that despite amendment, Plaintiff has not sufficiently detailed the events of her sexual assault for the Complaint to pass muster under the Federal Rules. First Defendant finds the Complaint simply formulaic and labels the Complaint a "shotgun pleading" with insufficient clarity to allow the Defendant to craft a responsive pleading, citing an unpublished opinion, *Hill v. Stryker Sales Corp.* 4:13 cv 0786, 2014 WL 4198906 at 2 (DSC 2014). See ECF 46-1 at Page 12. *Stryker* was in the nature of a medical negligence matter. In that case, Judge Hendrix declined to dismiss the complaint based on the allegation that it was a "shotgun pleading" and noted in full:

> Defendant's allegation that the Plaintiff's complaint is a "shotgun pleading," the Court notes that the term "shotgun pleading" is itself a "label," and parties seeking dismissal on such a basis must do more than simply attach it to the other side's submission. A Shotgun pleading is "[a] complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *SunTrust Mortgage, Inc. v. Old Second Nat. Bank,* 2012 WL 1656667 (E.D. Va. May 10, 2012) (quoting *Lampkin-Asam v. Volusia County Sch. Bd.,* 261 F. App'x 274, 277 (11th Cir. 2008)). In such instances, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Florida Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996). Plaintiffs' causes of action do incorporate prior allegations by reference, but as Defendant points out, the complaint is hardly heavy on facts. Plaintiffs' complaint does not place the Defendant in the unfair position of sorting

5

through a slew of factual allegations trying to guess what harm is being
alleged. Accordingly, the Court declines to dismiss the complaint on the
basis that it is a "shotgun pleading."

Here, Plaintiff incorporated allegations by reference into the causes of action and plead

the facts in a separate section. The facts of the Second Amended Complaint ECF 43 (Exhibit 1)

begin in detail on page 3 and end on page 13, with further are allegations within the cause of

action at paragraphs 109-119.

Although there are two defendants in the case, the allegations which apply to Roberts, the

individual employee, versus the employer, are well identified. Plaintiff believes that a reasonable

person would be able to understand the document and formulate an answer. This is not a

situation where a Defendant is being placed in an unfair position by not knowing what is being

alleged against him. The paragraphs discussing Defendant Roberts clearly identify him as either

"Defendant Roberts" "Roberts" or "Supervisor Roberts." For example, ECF 43 at para. 29-31

reads as follows:

29. As soon as she began working at Defendant Weston & Sampson, **Supervisor
Roberts** took an unusual interest in Plaintiff which upon information and belief was based on her
sex (female), which could be observed by co-workers and staff.

30. From the time of Plaintiff's hire, **Defendant Roberts** contacted her by text and on the
phone several times per day, including asking questions about non-work matters, delving into her
personal life, hobbies and experience in other jobs.

31. After Plaintiff had been employed only 11 days, **Defendant Roberts** instructed her to
request that Charleston Office Manager, Bob Horner, allow her to attend an ESRI Conference in
Palm Beach, Florida with **Roberts** and another a male co-worker, as Horner could not attend
himself.

The Complaint succinctly lays out Defendant Robert's job and disciplinary history. Exh 1 SAC ECF 43 para 6, 22, 23,27, 29-31, 36-38. The Complaint describes Defendant's behavior which is the basis for the outrage cause of action including action leading up to the allegations of sexual assault, and his subsequent behaviors including post-employment harassment. Exh. 1, SAC ECF 43, para. 22,23, 27, 29-31, 36-38, 39-56, 65, 73-80. The sexual assault allegations against Roberts are clearly described in Paragraphs 39-56, as well as Defendant Roberts' description of the events as consensual in Paragraph 64. The Complaint also described the actions' mental and physical effects on the Plaintiff as well as the damages arising from Defendant Roberts' actions, including at para. 45, 51, 56-57, 66, 67, 69, 71, 81 and 82. These paragraphs include descriptions of Plaintiff's panic, physical injury, state of shock, fear of being shot, fear of death, fear of co-workers, feelings of isolation, depression and anxiety, loss of physical and emotional health, humiliation, embarrassment and indignity. Id.

To establish an intentional infliction of emotional distress claim, Plaintiff must plead that (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so "extreme and outrageous" so as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community;" (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" such that "no reasonable man could be expected to endure it." *Bass v. S.C. Dep't of Soc. Servs.,* 414 S.C. 558, 575, 780 S.E.2d 252, 260-61 (2015) (quoting *Argoe v. Three Rivers Behavioral Health, LLC,* 392 S.C. 462, 475, 710 S.E.2d 67, 74 (2011)).

Plaintiff alleged the sexual assaults, harassment, threats and other behaviors by Defendant that lead to severe emotional distress. See, Exh. 1, ECF 43 SAC para. 39-56, 65-80 and 109-113. The South Carolina Court of Appeals held "that an intent to harm will be inferred as a matter of law when a person sexually assaults, harasses, or otherwise engages in sexual misconduct towards an adult." *State Farm Fire & Cas. Co. v. Barrett,* 530 S.E.2d 132, 136 (S.C. Ct. App. 2000).

Plaintiff alleged that the conduct was extreme, outrageous, exceeded the bounds of decency, and was atrocious and intolerable in a civilized community. Exhibit 1, Complaint, Para. 111. Plaintiff alleged that Defendant's actions caused her emotional distress, and that it was so severe no reasonable person should have to endure the same. Exhibit 1, SAC ECF 43, para. 109-113. Emotional distress is outlined again in the SAC at para. 40-45,48-9, 51,54, 55, 61, 66,67,69,71,75,80-82. Specifically, the emotional distress plead includes fear of death (para. 49); nervous and panicky (para. 44-45); in fear of her life (para. 48-50); in a state of shock (para. 51, 56); terrified of being killed (para. 67); nightmares and PTSD (para.67); isolated and scared (para. 69); fear, depression, anxiety (para. 69); humiliation, embarrassment, indignity (para. 82).

As the grounds for the claim of IIED are fairly and clearly set forth, Plaintiff requests that her Complaint not be dismissed on the grounds of insufficiency.

## B.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS  and WORKERS COMPENSATION EXCLUSIVITY MATTERS

Defendant Roberts seeks to dismiss Plaintiff's claim for Intentional Infliction of Emotional Distress/Outrage by stating the same is blocked under the exclusive remedy theory.

8

Defendant asserts that Worker's Compensation is the exclusive remedy for an employee who sustains an injury arising from their employment. ECF 46-1 Section B, page 9-11. Defendant also suggests that Plaintiff failed to plead intent as it relates to Defendant Robert's actions alleging that absent intent the employee has immunity and cannot be held personally liable. Id. at page 10.

The Plaintiff alleges in the Complaint actions by the Defendant that occurred during and after her employment with Weston and Sampson, as well as during and after Roberts employment therewith. See SAC, ECF 43 and compare para. 39-56 with 65-80. Plaintiff did attempt to file for Workers Compensation benefits. Plaintiff states in the Complaint, ECF 43, para. 72:

> 72. Plaintiff sought workers compensation benefits, but the same were denied on June 22, 2022 by the Defendant Weston & Sampson's insurer, on the basis that it was not a compensable case under the Worker's Compensation Laws of the State of South Carolina and there was no compensable injury arising from an accident or injury in the scope of employment. Upon information and belief the denial was based on dissemination of information that the events that occurred on the business trip were either outside the scope of employment or consensual-which information would have been received from the employer Weston & Sampson. Any statements that Plaintiff was engaged in a voluntary sexual or intimate relationship with the individual Defendant were untrue and made without privilege.

9

See also, Exhibit 2, Redacted SC Workers' Compensation Commission claim. Weston & Sampson, through its agents, took the position that the events underlying this matter were not covered by the Act. See Exhibit 3, Workers' Compensation claim denial letter, which is a June 22, 2022 letter to Plaintiff stating that her case was not compensable under the "Work Comp" laws of South Carolina. "There is no compensable injury, arising from an accident in the course and scope of employment". Upon information and belief this decision was reached with the input of the Defendant Weston & Sampson. This presumably would include input from Defendant Roberts who claims that any sexual contact with Plaintiff was consensual. See Exhibit 1, SAC ECF 43 Para. 64, 65.

Plaintiff does not have access to her workers compensation files or investigations. Without further discovery of the position Defendant Roberts is taking, it is unfair to dismiss Plaintiff's claim. If there are actions that Defendant will later claim were either inside or outside the scope of the Plaintiff's employment, or were consented to by the Plaintiff (i.e. sexual interactions), intentional or accidental, Plaintiff deserves to be able to discover the same and to amend her Complaint or take other appropriate actions relating to pleading her case.

Relevant to Robert's position, South Carolina also recognizes the doctrine of judicial estoppel. *See Haynes Federal Credit Union v. Bailey,* 327 S.C. 242 (1997). The doctrine of judicial estoppel precludes a party from adopting a position in conflict with one previously taken in the same or related litigation. *See Quinn v. Sharon Corp.,* 343 S.C. 411, 414, 540 S.E. 2d 474,476 (2000). A party cannot assert one set of facts in litigation and then change those facts in

subsequent litigation "when the initial version no longer suits him". *Haynes,* 327 S.C. at 252.
Applicable to the circumstances here, judicial estoppel may be properly applied to prevent a
party from asserting a legal position regarding their circumstances, including the employment
relationship with another when that position contradicts the legal position, they previously
asserted regarding their employment status. *See Allen v. Zurich Ins., Co.,* 667 F.2d 1162 (4th Cir.
1982). This is because the purpose of the doctrine is to protect the integrity of the judicial
process and the courts. *Quinn,* 343 SC. at 414, 540 S.E. 2d at 475. Judicial estoppel is an
equitable concept and the application of the doctrine is discretionary. *Hawkins v. Bruno Yacht
Sales, Inc.* 353 S.C. 31 (2003).

The Fourth Circuit and federal courts also apply this principle. The Fourth Circuit
discussed estoppel in detail in *Allen v. Zurich Insurance, Co.,* 667 F.2d 1162 (4th Cir. 1982) and
stated that "in certain circumstances a party may properly be precluded as a matter of law from
adopting a legal position in conflict with one earlier taken in the same or related litigation. *Id* at
1166. If Roberts asserted that his acts were outside the scope of the workers' compensation act or
provided information to his employer inconsistent with his current allegation that he is immune
due to the application of workers compensation laws, he should be estopped from perpetuating
the inconsistency. At this stage in the case, without discovery, Plaintiff cannot know Roberts'
position or the extent of the information he provided to the employer or the insurer further

In Robert's Motion to Dismiss, Defendant asserts that Plaintiff's intentional tort and
negligence claims (other than defamation) are barred by the Worker's Compensation Act. A

workplace injury is not covered by the South Carolina Workers Compensation Act unless there is (1) an injury, either physical or mental, (2) created by accident, and (3) arising out of employment. *Dickert v. Metropolitan Life Ins*. Co. 306 S.C 311, 411 S.E.2d 672, *Dickert Metropolitan Life Ins. Co*., 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993). Cases where the injury is caused by an accident are within the jurisdiction of the South Carolina Workers' Compensation Commission.

Regarding Defendant Roberts claims that Plaintiff's IIED claim is barred by workers compensation exclusivity, a workplace injury is not covered by the South Carolina Workers Compensation Act unless there is (1) an injury, either physical or mental, (2) created by accident, and (3) arising out of employment. *Dickert v. Metropolitan Life Ins*. Co. 306 S.C 311, 411 S.E.2d 672, *Dickert Metropolitan Life Ins. Co*., 311 S.C. 218, 428 S.E.2d 700 (S.C. 1993). Cases where the injury is caused by an accident are within the jurisdiction of the South Carolina Workers' Compensation Commission.

S.C.Code Ann. §42-1-540 bars all common law actions against an employer for "accidental" personal injury. See also *Cook v. Mack's Transfer & Storage*, 291 S.C. 84, 352 S.E. 2d 296, 298 (S.C. App. 1986) cert. denied, 292 S.C. 230, 355 S.E. 2d 861 (S.C. 1987) (stating that the exclusivity provision of the Act "bars all actions against an employer where a personal injury to an employee comes within the Act... [making] the Act the exclusive means of settling all such claims").  Exceptions to the Act include subcontractor incidents, intentional injury, slander/injury to reputation and specific occupational exclusions. *Cason v. Duke Energy*, 560

SE2d 892, 893, n.2 (SC 2002).  In addition, the Act's exclusivity provision does not bar suits for which the Act provides no remedy. See, *Futia v. Palmetto Behavioral Health*, 317 F.Supp.2nd 638 (SCDC 2004); see also, *Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993).

When an injury is inflicted by an employer who acts with a specific intent to injure, the resulting injuries are exempted from the exclusive remedy of worker' compensation coverage. *Peay v. U.S. Silica Company* 313 S.C. 91, 437 S.E.2d 64 (1993). Defendant Roberts agrees and also cites the *Peay* case in his brief, stating that the act does not cover injuries inflicted with specific intent, and further clarifies that the same standard applies to injury intentionally inflicted by a coworker. See Roberts Motion to Dismiss, ECF 46-1, page 10. Regarding intent, the South Carolina Court of Appeals held "that an intent to harm will be inferred as a matter of law when a person sexually assaults, harasses, or otherwise engages in sexual misconduct towards an adult." *State Farm Fire & Cas. Co. v. Barrett,* 530 S.E.2d 132, 136 (S.C. Ct. App. 2000). Here, the Plaintiff alleged that she was subjected to specific physical and psychological abuse including "sexual misconduct"  by the Defendant with intentional egregious actions taking place on a work trip. See Exhibit 1, ECF 43 SAC, para 39-56. Para 84 states; "While working for the Defendant Employer Defendant Roberts did intentionally without consent touch, restrain, threaten and sexually assault Plaintiff, and initiate other inappropriate physical contact without the consent of Plaintiff." See also Exhibit 1, SAC @ para. 110. Plaintiff also alleged significant post employment harassment by Roberts, in para. 75-7, 80, which is also part of the intentional infliction claim ( See para 109):

13

75. During and after his employment, Defendant Roberts used this information to harass Plaintiff and shared her personal information with the mother of one of his children, A.M..

76. The harassment took the form of LinkedIn messaging, Facebook, text messaging, and other forms of social media from Defendant Roberts, A.M. and two of A.M.'s co-workers and social media "friends" S.D. and B.A..

77. S.D. and B.A, tried contacting/requesting Plaintiff "to be my friend" on Facebook after she blocked A.M. on all social media.

78. Before and after Defendant Roberts was terminated from Defendant Employer, A.M. accused Plaintiff of being unchaste, and harassed and threatened Plaintiff. Upon information and belief Roberts made untrue statements to A.M. leading her to accuse Plaintiff of having an intimate physical relationship while on the business trip.

79. The allegations that Plaintiff was unchaste or involved in a sexual manner with Defendant Roberts were perpetrated by Roberts disseminating untruths about his encounter with Plaintiff on the business trip, including to A.M., his employer, insurers and law enforcement.

80. Plaintiff continues to be harassed and threatened by Defendant Roberts and A.M. Plaintiff most recently in December 2023 she received 38 phone calls and voicemail messages from A.M. regarding sexual interaction with Defendant Roberts again based on his propagation of untruths regarding Plaintiff's interactions with Roberts during the business trip, which occurred while employed at Weston & Sampson.

As such Plaintiff's cause of action sufficiently pleads intentional actions and should not

be dismissed.

An additional exception exists where intentional abusive conduct is committed by an

owner or high-level manager of the corporation, he can be considered an alter ego of the

employer.  An employee is not precluded from suing his employer at common law if the

employer or an "alter-ego" of the employer commits an intentional tort against the employee

because "the intentional and outrageous nature of the act removes it from the realm of an

'accidental' injury." *Stewart v. McLellan's Stores*, 194 S.C. 50, 9S.E.2d35 (1940). An alter ego

14

of a corporation is defined as a dominant corporate owner or officer of a corporation. *Dickert v. Metropolitan Life Ins. Co.*, supra.; *See also, Andrews v. Peters*, 55 N.C. App. 124, 284 S.E.2d 748 (1981); *disc. rev. denied* 305 N.C. 395, 290 S.E.2d 364 (1982). The asserting party must prove the exception, that the employee is an alter-ego, and that the acts of the employee are so serious and aggravating as to evidence a willful intent to injure.

*Stewart v. McClellan's Stores Co., et al,* 194 S.C. 50, 9 S.E. 2d 35 (S.C. 1940), is the seminal case on this topic.  In *Stewart,* our State Supreme Court discussed at length the exclusivity provision of the Act and the applicability of workers compensation if the actions complained of are committed by managers.   In *Stewart,* a manager of a store assaulted and battered an employee, and "with considerable force and violence" and thus was considered the alter ego of the Employer. Here, the Plaintiff alleged that she was subjected to specific physical and psychological abuse by a supervisory employee on a work trip. See Exhibit 1, SAC ECF 43, para 41-56.

As to whether Roberts  in this case is an alter ego, this is a fact to be determined, and is a complex question, as Weston & Sampson is employee owned. The issue of the level of supervision and ownership of  supervisor Roberts is disputed and brings to bear facts outside of the Complaint. Defendant Weston and Sampson admits that the company is employee owned. ECF 47-1 page 1. They also admit Roberts is a supervisor. ECF 47-1 page 9.  As to whether the individual supervisor in this case is an alter ego, this is a fact to be determined. As the question of an intentional act and the alter ego issues are ones for a trier of fact, Plaintiff's claims should

15

not be dismissed upon a Motion pursuant to Rule 12(b)(6). *Reeves v. Carolina Foundry & Machine Works*, 194 S.C. 403, 9 SE 2nd 919 (1940).   *Zeigler v. S.C.L.E.D.,* 250 at 329, 157 SE 2d at 599. *See also, Youmens v. Coastal Petroleum Co.,* 333 SC 195 (S.C. App 1998).

Given the foregoing, Plaintiff prays that the cause of action for intentional infliction of emotional distress against Roberts is not barred by the exclusivity of the Workers' Compensation statute and should not be dismissed at this time.

## C. PLAINTIFF'S INTERFERENCE CLAIMS

Plaintiff asserts in her Complaint that Roberts interfered with her employment relationship with Weston & Sampson. See Exh. 1, SAC ECF 43, Para. 130-139. Defendant Roberts seeks to dismiss Plaintiff's claims of tortious interference based on alleged voluntary resignation and because Defendant was a co-worker. The elements of an action for tortious interference with an employment contract as set forth in  *DeBerry v. McCain*, 275 S.C. 569, 274 S.E. (2d) 293 (1981), are as follows: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) absence of justification; and (5) damages resulting therefrom.

As a defense to Plaintiff's tortious interference claim, Defendant Roberts asserts that interference claims against coworkers are blanketly prohibited. To the contrary, Judge Ralph King Anderson, in his SC JI CIVIL § 33-6 <u>South Carolina Requests to Charge -Tortious Interference with Contract</u> states that: "Generally, a corporate officer or employee is not liable for tortiously interfering with a corporate contract because he is considered a party to the

contract, as long as he is acting to serve the corporate interests, or unless his activity involves individual separate tortious acts. However, a corporate officer or employee may be liable for tortiously interfering with a corporate contract if he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests." This principle is outlined in detail in *Lyne v. Price*, No. W2000-00870-COA-R3-CV, (Tenn. Ct. App. June 27, 2002), which although it is an out of state case, explains the principle in a similar manner to Judge Anderson:

> A corporate director, officer or employee may be held liable for interference with such a contract if "he is acting outside the scope of his authority, acting with malice, or acting to serve his own interests." *Id* . at 333 (quoting Thomas G. Fisher, Annotation, *Liability of Corporate Direct, Officer or Employee for Tortious Interference with Corporation's Contract with Another,* 72 A.L.R. 4th 492 (1989)). However, where there is intentional interference with an employment contract, there is frequently "some element of ill will"; consequently, where the director, officer or employee is generally acting in furtherance of the corporate interest, "the addition of a spite motive usually is not regarded as sufficient to result in liability." *Id* . at 333 (quoting W. Page Keeton, *Prosser Keeton on the Law of Torts* § 130, pp. 1009-10 (5th ed. 1984)). He may be held liable if "the reason underlying his interference is purely a malevolent one, and a desire to do harm to the plaintiff for its own sake." *Id* . *Lyne v. Price,* No. W2000-00870-COA-R3-CV, (Tenn. Ct. App. June 27, 2002).

Defendant cites *Hall v. UBS Financial,* a case addressing employment at will in the context of an interference cause of action. 435 SC 75, 866 SE2d 337 (2021). *Hall* was filed by an alleged sexual harasser against a reporting co-worker, and contains dicta regarding suits by co-workers. *Hall* does not discuss the exceptions to the co-worker defense, and in fact would stand for the proposition that in a sexual assault case the issues surrounding are fact intensive and would as such make a case such as this inappropriate for early dismissal : "First, Reid claims she

17

was a party to Hall's at-will employment agreement with UBS and therefore cannot be held liable for inducing UBS to fire Hall…. Resolution of [this issue] depends upon an evaluation of facts to be developed as the case progresses." *Id at 87.*

As pleaded in SAC, ECF 43, Exhibit 1, Plaintiff alleged that Defendant Roberts assaulted her (para. 39-56); threatened her job (para. 44, 50); threatened to ruin her reputation (para. 50, 54, 55); threatened her with physical harm (para. 48, 54- 55); and made untrue statements to the employer (para. 65, 73, 73, 79, 115-129). She further alleged that Defendant's post employment actions interfered with her work (para. 74-80, 135) which left Plaintiff with no choice but to exit her employment relationship (Para. 71,137). Post employment actions include ongoing threats of physical, psychological and reputational and career harm after he was fired. Exhibit 1 SAC, ECF 43, Para. 65-80. None of these actions were in furtherance of the employer's business as engineers or any other corporate interests. Given that fact, Plaintiff's claim should not be dismissed based on the co-worker defense.

Defendant Roberts alleges that he did not intentionally procure a breach of the employment relationship but claims that Plaintiff voluntarily exited employment. Defendant does not allege that employment at will bars the claim. See Motion to Dismiss, ECF 46-1, page 14-15; citing *Hall v. UBS Financial.* Plaintiff asserted in the Complaint that the actions of the Defendant and their impact on her employment lead to her having no choice but to leave Weston & Sampson. Exh 1, SAC ECF 43, para 71,137. Plaintiff alleges Defendant assaulted her and threatened her, and intentionally carried out his plan to interfere with her employment when she

18

reported him. Exhibit 1 SAC, ECF 43, Para. 65-80. Plaintiff has alleged that she could no longer perform her job at Weston and Sampson because of the Defendant's conduct. If Plaintiff could have continued to work there, she would have but the situation crafted by Roberts interfered with her relationship with the employer, her reputation, her ability to work with the team, her ability to represent the employer and to learn and perform the job. Without his actions she still might be working there. He caused her to leave the job due to intolerable circumstances. She did not do so of her own volition. The allegations in the Complaint clearly meet the standard of providing "enough facts to state a claim to relief that is plausible on its face." *Robinson v. AM. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) and to the extent facts are disputed, the court still must construe them in favor of the nonmoving party.

Defendant cites numerous **summary judgmen**t cases to support the dismissal of the case including cases where the Plaintiff left employment. These cases address questions of fact at the summary judgment stage rather than the motion to dismiss stage. Defendant cites the 2008 decision in *Nucor Corp. v. Bell*, but fails to note that at the motion to dismiss stage, the claims for tortious interference were not dismissed. See *Nucor v Bell* 482 F. Supp. 2d 714 (D.S.C. 2007).

Again Plaintiff submits that she has outlined a plausible cause of action at this stage, as required by the rules, and as such her claim should not be dismissed at this time and should be reexamined at the Summary Judgment stage, as with the cases cited by the Defendant.

**D.    PLAINTIFF'S CLAIM FOR DEFAMATION HAS BEEN PROPERLY PLED**

Plaintiff alleged that her former supervisor made false and injurious misstatements about her, disseminated false information including regarding her reputation for being chaste and honest. See Exhibit 1, SAC ECF 43, para 41,65,72,73, 78,79,80, 114-129. Nevertheless, Defendant Roberts seeks dismissal of this claim. Motion to Dismiss, ECF 46-1, page 5-9. Plaintiff's Complaint details the time frame that Defendant Roberts, her supervisor told his employer, law enforcement, insurers, his paramour and two of A.M.'s co-workers and social media "friends" S.D. and B.A. that Plaintiff consented to the sex acts described in the Compliant. The statements were false, made without privilege and amount to defamation based on lack of chastity.

Plaintiff's cause of action for defamation states:

114. **The Plaintiff realleges each and every allegation contained in paragraphs preceding as if set forth again verbatim.**

115. That, on information and belief, Defendant Roberts, in his individual capacity and as a manager, agent and employee of the Defendant Employer, made or caused to be made, sent or caused to be sent, delivered or caused to be delivered, false, defamatory and injurious statements regarding the Plaintiff, as set forth above.

116. The employer Weston & Sampson, through Roberts and other agents or employees on information and belief also disseminated false information, regarding Plaintiff within the Company and to its agents and insurers within and outside the Company.

117. The false and injurious statements by the Defendants were made after the events described business conference, which was attended by Roberts and Plaintiff, and included in April 2022, May 2022, June 2022, and continued to be disseminated through December 2023.

118. The untrue statements regarded Plaintiff's honesty, chastity, consent to sexual interactions with Roberts and engagement in other inappropriate conduct at the conference.

119. Plaintiff asserts that she has told the truth and denies that she engaged in consensual sexual relations or had an intimate relationship with Roberts and any statements made by the Defendants to that end are untrue, defamatory and made without privilege.

120. As a supervisor Defendant Roberts was not only Plaintiff's superior but was a longer term employee, was the senior representative at the conference where the events giving rise to the false statements occurred, and he had more experience, contacts and standing in the industry than Plaintiff, who was a recent graduate.

121. Said statements, attacking Plaintiff's truthfulness, veracity and chastity, and fitness for employment were upon information and belief, published to the employer, other employees of the Defendant employer, others within the business and police communities, insurers and to Defendant Roberts' paramour, social friends and to other persons, not specifically stated herein.

122. Defendant Roberts, upon information and belief, falsely represented to the Defendant employer, co-workers, law enforcement, insurers, the business community, his social friends and family and others that any sexual conduct with Plaintiff was consensual. This constituted a false statement that Plaintiff engaged in a voluntary sexual encounter with him on a business outing and that she lied about it.

123. The Defendant employer upon information and belief repeated and disseminated the untruths perpetuated by Roberts, its agent and employee, including to its insurers and throughout the Company without privilege.

124. Plaintiff denies the conduct was consensual and statements that she consented to any such conduct are false and constitute a direct attack on her chastity, reputation for chastity, fitness for employment and reputation for honesty.

125. Defendant Roberts, individually and as an agent of the Defendant Employer had no legal privilege to publish said statements to any third party. Similarly Defendant Employer had no legal right or privilege to disseminate false information to any third party.

126. That as a direct and proximate result of the libelous and defamatory statements made by Defendant individually and as an agent, servant, officer and, employee of the Defendant Employer, and by the Defendant Employer, Plaintiff was and continues to: be greatly humiliated, embarrassed, and distressed; have difficulty in her daily life; have her business affairs

interrupted; be unable to attend her ordinary affairs due to her mental state; be compelled to expend money for legal and medical representation; suffer considerable shock, mental stress, worry; to be held up to public ridicule, scorn, and contempt; and her professional reputation in the industry has been severely injured; and be otherwise damaged, suffering actual, special, and consequential damages.

127. Defendant Roberts made these defamatory statements including in the course of his employment as a supervisor concerning the Plaintiff intentionally or with reckless disregard for Plaintiff's reputation as an upstanding, honorable and respected member of her community and citizen of the State of South Carolina and as a chaste woman.

128. The employer, through agents and employees made these defamatory statements concerning the Plaintiff intentionally or with reckless disregard for Plaintiff's reputation as an upstanding, honorable and respected member of her community and citizen of the State of South Carolina and as and honest and chaste woman.

129. Plaintiff is informed and believes that she is entitled to judgment against the above named Defendants, jointly and severally, for actual and consequential damages in an amount to be determined by the trier of fact.

*Parrish v. Allison*, 276 SC 308, 320-321, 656 SE2d 382 (S.C. Ct. App. 2008), reviews

South Carolina law on the tort of defamation, and allows a plaintiff to recover for injury to

reputation as the result of the communications to others of a false message about the plaintiff.

*Holtzscheiter v. Thomson Newspapers, Inc*., 332 S.C. 502, 508, 506 S.E.2d 497, 502 (1998);

*Marray v. Holnam, Inc*., 344 S.C. 129, 138, 542 S.E.2d 743, 748 (Ct.App.2001). Defamatory

communications take two forms: libel and slander. *Holtzscheiter*, 332 S.C. at 508, 506 S.E.2d at

502. To recover plaintiff must establish (1) a false and defamatory statement by the defendant

concerning the plaintiff; (2) an unprivileged communication; (3) fault on the defendant's part in

publishing the statement; and (4) either actionability of the statement irrespective of special harm

or the existence of special harm to the plaintiff caused by the publication. See *Fleming v. Rose*,

22

350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002), *Parrish v. Allison*, 276 SC 308,656 SE2d 382 (S.C. Ct.App. 2008).

An allegedly defamatory statement can either be "actionable per se" or "not actionable per se*." Holtzscheiter,* 506 S.E.2d at 510. All libel is actionable per se, but slander is only actionable per se if it relates to one of the following five categories: (1) the commission of a crime of moral turpitude; (2) the contraction of a "loathsome disease"; (3) adultery; (4) lack of chastity; and (5)"unfitness in one's business or profession." *Id*.at 501.  As stated in *Yost v. City of Charleston* and *King v. Charleston County School District*, 664 F. Supp. 2d 571 (DSC 2009) a principal may be held liable for defamatory statements made by an agent acting within the scope of his authority or apparent authority.

Here, Plaintiff alleged that Defendant Supervisor Roberts disseminated misinformation about sexual contact (i.e.: chastity or lack thereof) and about the events that occurred during and after the business trip and told Plaintiff he would hurt her and ruin her reputation if she told anyone. Exh.1, SAC ECF 43. Para 44, 48,50, 54, 55, and 65,72,73, 79. Roberts' comments concerning the Plaintiff went directly to her veracity, honesty, chastity and fitness for work.  The defamatory message is obvious on its face. *White v. Wilkerson*, 328 SC 179, 183 (1997). That message, told to the employer, insurer, law enforcement, family, his paramour and others, was that Plaintiff,  a brand new young female employee with no experience, friends or support system, got sent on a business trip with him and voluntarily engaged in sexual interactions. This narrative had the desired effect of labeling her as a "loose woman" , a liar, unreliable, and

unworthy of employment at a minimum. Plaintiff also alleges at para. 75-80 that Roberts

disseminated false information to A.M. having the result of A.M. accusing Plaintiff of having an

affair with Roberts:

> 75. During and after his employment, Defendant Roberts used this information to harass Plaintiff and shared her personal information with the mother of one of his children, A.M..

> 76. The harassment took the form of LinkedIn messaging, Facebook, text messaging, and other forms of social media from Defendant Roberts, A.M. and two of A.M.'s co-workers and social media "friends" S.D. and B.A..

> 77. S.D. and B.A, tried contacting/requesting Plaintiff "to be my friend" on Facebook after she blocked A.M. on all social media.

> 78. Before and after Defendant Roberts was terminated from Defendant Employer, A.M. accused Plaintiff of being unchaste, and harassed and threatened Plaintiff. Upon information and belief Roberts made untrue statements to A.M. leading her to accuse Plaintiff of having an intimate physical relationship while on the business trip.

> 79. The allegations that Plaintiff was unchaste or involved in a sexual manner with Defendant Roberts were perpetrated by Roberts disseminating untruths about his encounter with Plaintiff on the business trip, including to A.M., his employer, insurers and law enforcement.

> 80. Plaintiff continues to be harassed and threatened by Defendant Roberts and A.M. Plaintiff most recently in December 2023 she received 38 phone calls and voicemail messages from A.M. regarding sexual interaction with Defendant Roberts again based on his propagation of untruths regarding Plaintiff's interactions with Roberts during the business trip, which occurred while employed at Weston & Sampson.

Defendant claims that the facts plead, even when read in conjunction with others in the

Complaint, are not enough to sustain a claim of defamation and leave him unable to defend the

claim. *Iqbal* does suggest that Plaintiff must plead context-specific material. The Fourth Circuit

in *Nemet Chevrolet, Ltd. v. Consumeraffairs com, Inc*., 591 F. 3d 250(4th Cir. 2009) explains

that the "context-specific" test does not require "detailed factual allegations." *Iqbal.* at 1949-50 (quotations omitted). The complaint must, however, plead enough facts to allow a court, drawing on "judicial experience and common sense," to infer "more than the mere possibility of misconduct." *Iqbal* . at 1950.

The Complaint when read in its totality, alleges that Plaintiff was sexually assaulted by Roberts (Exhibit 1,SAC ECF 43 including paragraphs 39-56), and that Roberts later made false statements to the employer, and upon information and belief to investigators, family members, social acquaintances and others that any sexual contact, touching or other actions with Plaintiff, if they happened, were consensual. See Exhibit 1, SAC ECF 43, para 41, 64, 65, 72, 73, 78-80, 114-129. Roberts' false statements that Plaintiff agreed to the conduct and that it may not have even occurred (*Id.* at paragraphs 64, 65, 71-75, 77, 122, 124) were made without any protective legal privilege by Roberts to his employer and others.[2] (*Id.* at paragraph 72, 119, 123, 125). His statements to the employer were accepted by the employer (Id. at paragraphs 64, 65, 72, 73) as he was, on information and belief, terminated for alcohol consumption and not his other behaviors. (Id. at paragraph 64). As early as March 2022 started his defamatory actions against Plaintiff and they proceeded well in to 2023. As stated in the Second Amended Complaint

---

[2] The defense of privilege requires a fact intensive enquiry and is not appropriately decided on a motion to dismiss. See, *Murray v. Holnam, Inc.*, 542 SE 2d 743 (SC Ct App 2001) The defense is also qualified by a requirement of good faith, which Plaintiff would dispute. Communications between officers and employees of a corporation are qualifiedly privileged if made in good faith and in the usual course of business. *Conwell v. Spur Oil Co.,* 240 S.C. 170, 125 S.E.2d 270 (1962).

41. Roberts began make unwanted advances to Plaintiff and referred to her as "his girl" and "babe". He continued to actively solicit other females, and was calling colleagues by a racial slur "N-----". See Exhibit 1, SAC, ECF 43.

Roberts then claimed Plaintiff had voluntary sexual contact with him, and claimed she was not telling the truth about the attack, she was accused of lack of veracity and chastity and that those allegations were disseminated without privilege. Paragraphs 72, 119, 122, 123, 125.

The dissemination of false information that Plaintiff agreed to be assaulted, choked, restrained, strangled, bitten, sexually and inappropriately touched (See, Exhibit 1, SAC ECF 43 at paragraphs 47-50, 55-56, 65-66, 73, 75-80) sufficiently outlines a claim of defamation and an attack on Doe's veracity, chastity and ability to perform her job. Roberts claims of consent to sexual exploitation that occurred 12 days after hire, on her first business trip with someone she just met (Id.at paragraphs 2,7,27,31) certainly negatively affected Plaintiff's career and tenure at Weston & Sampson. How could her reputation not be damaged? The defamatory message is obvious on its face. *White v. Wilkerson,* 328 SC 179, 183 (1997). As such Plaintiff requests that her claim of defamation not be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff requests that the Defendant's Motion to Dismiss be denied.

Respectfully Submitted,

*s/Jennifer Munter Stark*
Jennifer Munter Stark, Esq. FID #9364

26

Jennifer Munter Stark, Esquire, LLC
210 Wingo Way #300
Mt. Pleasant, SC 29464
(843) 972-0004, (843) 972-0006 (f)
jmunterstarklaw@gmail.com
ATTORNEY FOR PLAINTIFF

Mt. Pleasant, SC
September 9, 2024