IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Lauren Ballard, | ) | |
| | ) | C/A No. 2:24-cv-1682-RMG-BM |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Weston & Sampson Engineers, Inc., | ) | |
| and Jason Roberts, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT JASON ROBERTS' REPLY TO PLAINITFF'S RESPONSE TO ROBERTS' PARTIAL MOTION TO DISMISS**

Defendant Jason Roberts ("Defendant" or "Roberts"), by and through his undersigned attorney, files this Reply to Plaintiff's Response Opposing Roberts' Partial Motion to Dismiss ("Pl.'s Resp.," ECF No. 49).

**I.    Plaintiff fails to allege her defamation claim with the required specificity.**

Roberts moves to dismiss Plaintiff Lauren Ballard's defamation claim because she fails to provide sufficient details of any alleged defamatory statements. In response, Plaintiff contends that her Second Amended Complaint ("SAC") "details the time frame" that Roberts told his "employer, law enforcement, insurers, his paramour and two of A.M.'s co-workers and social media 'friends' S.D and B.A." that Plaintiff consented to the sex acts described in the Complaint." (Pl.'s Resp. at 20-21)(citing SAC ¶¶ 114-129). Further, she argues that "[h]is comments concerning the Plaintiff went directly to her veracity, honesty, chastity and fitness for work." (Pl.'s Resp. at 23).

Plaintiff actually generally alleges that, upon information and belief, Roberts published defamatory statements "to the employer, other employees of the Defendant employer, others

within the business and police communities, insurers and to Defendant Roberts' paramour, social friends and to other persons, not specifically stated herein," SAC ¶ 121, from April 2022 through December 2023, *id.* at 117.

Plaintiff argues these allegations are sufficient and that the "context-specific" test in *Ashcroft v. Iqbal,* 556 U.S. 662 (2009), does not require "detailed factual allegations." (Pl's Resp. at 24-25) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250 (2009). However, Roberts completely ignores the numerous cases from this district which have unequivocally held that a defamation claim must be specifically plead. *See, e.g., Barrett v. Grand Strand Reg. Med. Center*, No. 4:23-cv-2658-RBH-TER, 2024 WL 1494706, *6 (D.S.C. Jan. 3, 2024), adopted 2024 WL 1191109 (D.S.C. Mar. 20, 2024); *Carson v. Emergency MD, LLC*, No. 6:20-cv-1946-HMH, 2020 WL 5077655, at *5 (D.S.C. Aug. 25, 2020) (noting that many courts applying South Carolina law have found that a lack of specificity in a plaintiff's allegations regarding a defamation claim warrants dismissal); *Dombek v. Adler*, No. 2:18-cv-391-RMG, 2019 WL 459019, at *5 (D.S.C. Feb. 5, 2019) (holding that without details regarding the allegedly defamatory statements, the claim lacked the specificity required to make out a claim for defamation); *Doe v. McGowan*, No. 2:16-cv-00777-RMG-MGB, 2017 WL 573619, at *3 (D.S.C. Jan. 5, 2017), report and recommendation adopted, 2017 WL 571487 (D.S.C. Feb. 13, 2017) (citations omitted) (dismissing defamation claim because "defendant cannot be expected to defend against an allegation that [the defendant] defamed [the] plaintiff by making a statement heard by unknown persons at an unknown place at an unknown time.").[1]

Finally, while Plaintiff contends that "[d]iscovery has not yet commenced" (Pl.'s Resp. at

---

[1] Additionally, as argued in his motion to dismiss, the communication of allegedly libelous statements is between only employees of a single employer, no publication of the libelous statement has occurred, and the plaintiff cannot satisfy one of the required elements. *Dale v. Red Hat, Inc.*, No. 5:18-CV-262-BO, 2018 WL 6172516, *3 (E.D.N.C. Nov. 26, 2018).

4), a plaintiff asserting a defamation claim "is not entitled to wait until after discovery before pleading his causes of action properly[.]" *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 370 (D.S.C. 2016). Plaintiff's defamation claim should be dismissed with prejudice as it is still not sufficiently pled in her SAC.

**II.     Plaintiff's intentional infliction of emotional distress ("IIED") claim is not sufficiently pled.**

Roberts moves to dismiss Plaintiffs' IIED claim because Plaintiff has failed to sufficiently pled this claim. In her Response, Plaintiff initially argues that Roberts asserts that she "has not sufficiently detailed the events of her sexual assault for the Complaint to pass muster under the Federal Rule." (Pl.'s Resp. at 5). This is a mischaracterization of Roberts' argument; his argument is that Plaintiff has failed to allege factual support for her IIED claim.

Plaintiff argues that the allegations relating to the IIED which apply to Roberts are well identified. *Id.* at 6. She then specifically argues that paragraphs 22, 23, 27, 29-31, 36-56, 65, 73-80 of the SAC describe Robert's behavior that form the basis of her IIED claim, and that paragraphs 45, 51, 56-57, 66, 67, 69, 71, 81 and 82 describe the effects on Plaintiff. *Id.* at 7. However, she includes allegations which have nothing to do with Roberts, including for example that other individuals harassed Plaintiff, not Roberts, and that the Defendant Employer's actions caused her distress. *See., e. g.,* SAC ¶¶ 66, 69, 71, 81, and 82.

She argues that this is not a case where a Defendant is placed in an unfair position of not knowing what is being alleged against him. (Pl.' Resp. at 6). However, this is exactly that situation. It is not clear if Plaintiff's IIED claim is based solely upon the alleged sexual assault, i.e., she is alleging that the alleged sexual assault caused the post-employment harassment and caused her to resign from her job, which is not logical considering that the IIED claim is alleged against both Defendants. Moreover, as Roberts argues in his Motion to Dismiss, Plaintiff alleges

3

Defendants acted both negligently and intentionally, which Plaintiff did not address. *See* SAC ¶ 110. Because Plaintiff has not sufficiently alleged a IIED claim against Roberts, this claim should be dismissed with prejudice.

### III. The exclusivity provision of the Workers' Compensation Act bars Plaintiff's IIED claim.

Roberts seeks dismissal of Plaintiff's IIED claim on the ground it is barred by the exclusivity provision of the Workers' Compensation Act – not her assault and battery claim. In her response, Plaintiff conflates her claim for assault and battery with her claim for IIED, and argues that an intent to harm is inferred when a person sexually assaults another citing a case which did not address the Workers' Compensation Act's exclusivity provision. (Pl.'s Resp. at 13) (citing *State Farm Fire & Cas. Co. v. Barrett*, 340 S.C. 1, 530 S.E.2d 132 (Ct. App. 2000)). In *State Farm*, the court held that insurance coverage for an accidental occurrence does not include sexual misconduct because a general "intent to harm" is inferred when there is a sexual assault or misconduct. 530 S.E.2d at 136.

The court's analysis in *Repasky v. Pfizer*, No. 2:12-cv-3331-RMG, 2013 WL 3946230, *5 (D.S.C. July 31, 2013), however, is directly on point for the issue in this case. There the court addressed whether the plaintiff's claim of IIED was barred by the Workers' Compensation Act exclusivity provision. The court noted that there were "no allegations that these defendants deliberately treated plaintiff in these ways for the express purpose of causing her emotional distress, as South Carolina requires." *Id.* (citing *Peay v. United States Silicia Co.*, 313 S.C. 91, 437 S.E.2d 64, 65 (1993)). The court stated, "That their conduct might have ultimately caused distress or even that they might have been indifferent to the substantial likelihood that their conduct might cause distress is not legally sufficient." *Id.*

The court carefully reviewed the allegations against the defendants:

4

> Somewhat distinguishable from other Complaints previously confronting this Court, . . . the plaintiff, in this case, has carefully pled allegations of the right kind, at least as to Defendant Digieso. She first contends that Defendant Digieso "intentionally told a violent and brutal story" knowing that the plaintiff was an animal lover." (Compl.¶¶ 32, 33.) Had her accusations ended there, the claim would likely have failed for alleging intentionality of only the indifferent variety. But, the plaintiff more precisely averred that "Defendant Digieso deliberately told the story to 'psyche out' Plaintiff and to adversely affect her performance at the selling skills seminar." *Id.* ¶ 34, 437 S.E.2d 64. Said again, the plaintiff complains that the defendant allegedly acted with the kind of specific and purposeful desire to injure that is not insulated by the Act.

*Repsky*, 2013 WL 3946230, *4. Here, Plaintiff's allegations regarding her IIED claim do not include any allegations that Roberts acted with the kind of specific intent that South Carolina requires – intent to inflict emotional distress.

Plaintiff also argues that judicial estoppel applies based on the denial of her workers' compensation claim (Pl.'s Resp. at 10-11). However, Roberts was not a party to Plaintiff's workers' compensation proceeding and thus has not taken an inconsistent legal position in another action. Based on the foregoing, Plaintff's IIED claim is barred by the Workers' Compensation Act exclusivity provision and should be dismissed with prejudice.

**IV.    Plaintiff fails to sufficiently allege a tortious interference with a contract claim.**

Plaintiff was not terminated by her employer; rather she resigned, and she has not alleged that Roberts "intentionally and unjustifiably procured" her resignation, which is an element of a tortious interference with a contract claim. Instead, she alleges that "Roberts not only caused Plaintiff's to require time off, and eventually terminate her position, but actively sought to interfere with her job." (SAC ¶135). She specifically argues that Roberts' *post-employment* actions interfered with her work leaving her with no option but to resign. (Pl.'s Resp. at 18) (citing to SAC ¶¶ 71 and 137). Further, she argues that "the situation crafted by Roberts

interfered with her relationship with the employer, her reputation, her ability to work with the team, her ability to represent the employer and to learn and perform the job." *Id.* at 19.

First, Plaintiff attempts to distinguish the cases cited by Roberts for the proposition that because she voluntarily resigned, she cannot allege a tortious interference with a contract claim by arguing those cases were at the summary judgment stage and address questions of fact.[2] The statement of law is the same, and there is no question of fact here– Plaintiff voluntarily resigned. Furthermore, Plaintiff continued to work for W&S for over almost six (6) months after Roberts was terminated. (ECF No. 23 at 1) ("Plaintiff was employed with W&S from March 15, 2022 to September 30, 2022."). Second, as for any post-employment actions, Plaintiff does not allege that Roberts continued some sort of campaign directed at her employer to have her terminated or to make her resign. Instead, she alleges that she was harassed on social media by other individuals. Plaintiff fails to allege any facts supporting her claim that Roberts' post-employment actions intentionally procured the breach of her employment contract. Accordingly, Plaintiff has failed to state a claim for tortious interference with an employment contract against Roberts.

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant his Partial Motion to Dismiss and dismiss Plaintiff's claims of defamation, intentional infliction of emotional distress, and tortious interference with contract against Roberts. Further, because Plaintiff has been given the opportunity to amend these claims, the dismissals should be with prejudice.

---

[2] Plaintiff also argues that Roberts fails to note that in *Nucor*, the tortious interference claim was not dismissed at the motion to dismiss stage. *Nucor*, however, is distinguishable because the plaintiff's claim for tortious interference with a contract was not dismissed at the motion to dismiss stage because the court determined that whether that claim was preempted by the South Carolian Torts Claim Act was dependent on whether certain information was determined to be trade secrets. The defendant's motion to dismiss in *Nucor* was not based on the failure to sufficiently allege a claim.

        Respectfully submitted,

        s/Deborah B. Barbier
        Deborah B. Barbier (#6639)
        DEBORAH B. BARBIER, LLC
        1811 Pickens Street
        Columbia, South Carolina 29201
        803-445-1032
        dbb@deborahbarbier.com

September 15, 2024