IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Lauren Ballard, | ) | C/A No. 2:24-cv-1682-RMG-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Weston & Sampson Engineers, Inc., | ) | |
| and Jason Roberts, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| Jason Roberts, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Lauren Ballard, | ) | |
| | ) | |
| Counter-Defendant. | ) | |
| _____ | ) | |

**DEFENDANT JASON ROBERTS' AMENDED ANSWER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT AND COUNTERCLAIMS**

Following the Court's March 17, 2025 Order ruling on Defendant Jason Roberts' ("Roberts") Motion to Dismiss (ECF No. 76), Roberts, by and through his undersigned attorney, files the following Amended Answer in response to Plaintiff's Second Amended Complaint ("SAC") (ECF No. 43) and sets forth Roberts' counterclaims against Plaintiff Lauren Ballard ("Plaintiff"). Roberts answers the allegations in the separately numbered paragraphs of the SAC as follows:

## I. NATURE OF THE ACTION

As to the unnumbered paragraph titled "Nature of the Action," Roberts admits only that Plaintiff alleges in her SAC claims of assault and battery, discrimination, defamation, contractual

interference, infliction of emotional distress, and retaliation against Defendants.

## II. PARTIES

1.  As to Paragraph 1, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

2.  As to Paragraph 2, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

3.  As to Paragraph 3, Roberts admits only that Plaintiff was employed by Weston & Sampson in their North Charleston office beginning in March 2022. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

4.  As to Paragraph 4, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

5.  As to Paragraph 5, Roberts admits only that W&S has an office in North Charleston. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

6.  As to Paragraph 6, Roberts admits only that he was employed by W&S as a GIS Specialist in March 2022. Roberts denies the remaining allegations in this paragraph.

7.  As to paragraph 7, Roberts admits this allegation.

8.  As to Paragraph 8, Roberts admits this allegation.

## III. JURISDICTION AND VENUE

9.  As to Paragraph 9, Roberts hereby realleges and incorporates herein each and every response contained above as though set forth herein verbatim.

10. Paragraph 10 contains conclusions of law to which Roberts is not required to respond. To the extent a response is required, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

11. As to Paragraph 11, Roberts admits only that W&S operated a facility in North Charleston, South Carolina, in March 2022. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations.

12. As to Paragraph 12, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

13. As to Paragraph 13, Roberts admits this allegation.

14. Paragraph 14 contains conclusions of law to which Roberts is not required to respond. To the extent a response is required, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

15. As to Paragraph 15, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

16. As to Paragraph 16, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

17. As to Paragraph 17, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

18. Paragraph 18 contains conclusions of law to which Roberts is not required to respond. To the extent a response is required, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

## V. FACTUAL ALLEGATIONS

19. As to Paragraph 19, Roberts hereby realleges and incorporates herein each and every response contained above as though set forth herein verbatim.

20. As to Paragraph 20, Roberts admits these allegations.

21. As to Paragraph 21, Roberts admits only that he was a Technical Specialist. Roberts denies that he was Plaintiff's supervisor.

22. As to Paragraph 22, Roberts admits only that he was disciplined once for excessive drinking at a company event. Roberts denies the remaining allegations in this paragraph.

23. As to Paragraph 23, Roberts admits only that he was counseled for excessive drinking at a December 2021 company sponsored event and that he was not terminated at that time. Roberts denies the remaining allegations in this paragraph.

24. As to Paragraph 24, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

25. As to Paragraph 25, no response is required as W&S's literature speaks for itself. To the extent a response is required, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

26. As to Paragraph 26, no response is required as W&S's website speaks for itself. To the extent a response is required, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

27. As to paragraph 27, Roberts admits only that Plaintiff was hired by W&S in March 2022 to work in its North Charleston office. As to the remaining allegations, Roberts

lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

28. As to Paragraph 28, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

29. As to Paragraph 29, Roberts denies these allegations.

30. As to Paragraph 30, Roberts denies these allegations.

31. As to Paragraph 31, Roberts denies these allegations.

32. As to paragraph 32, Roberts denies these allegations.

33. As to Paragraph 33, Roberts admits that he did not provide Plaintiff with the alleged information and financial matters were not discussed during the preparatory Zoom call. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations as they relate to Employer Defendant.

34. As to Paragraph 34, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

35. As to Paragraph 35, Roberts admits he attended the conference with Plaintiff and a male co-worker on March 30, 2022. As to the remaining allegations, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

36. As to Paragraph 36, Roberts denies these allegations.

37. As to Paragraph 37, Roberts admits only that he was selected to attend the conference. As to the remaining allegations, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

38. As to Paragraph 38, Roberts denies these allegations.

39. As to Paragraph 39, Roberts denies the allegations in the first sentence. As to the remaining allegations, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

40. As to Paragraph 40, Roberts denies the allegations.

41. As to Paragraph 41, Roberts denies the allegations.

42. As to Paragraph 42, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

43. As to Paragraph 43, Roberts denies these allegations.

44. As to Paragraph 44, Roberts denies these allegations.

45. As to Paragraph 45, Roberts denies these allegations.

46. As to Paragraph 46, Roberts admits only that during the time of her employment, he was larger than Plaintiff. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegation.

47. As to Paragraph 47, Roberts denies these allegations.

48. As to Paragraph 48, Roberts denies these allegations.

49. As to Paragraph 49, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

50. As to paragraph 50, Roberts denies these allegations.

51. As to Paragraph 51, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

52. As to Paragraph 52, Roberts admits only that he consumed some alcohol on the second day of the conference, but denies the remaining allegations in this paragraph.

53. As to Paragraph 53, Roberts admits only that he and Plaintiff were on the same flight home, that Plaintiff missed her connecting flight due to bad weather, and that they drove together to a hotel in his vehicle. Roberts denies the remaining allegations in this paragraph.

54. As to Paragraph 54, Roberts denies that he forced Plaintiff to drive by threatening her with his gun that was in the vehicle and that he said Plaintiff should not do anything stupid while driving "or else." Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

55. As to Paragraph 55, Roberts denies these allegations.

56. As to Paragraph 56, Roberts denies he injured Plaintiff. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

57. As to Paragraph 57, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

58. As to Paragraph 58, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

59. As to Paragraph 59, Roberts denies the allegations relating to his behavior. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

60. As to Paragraph 60, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

61. As to Paragraph 61, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

62. As to Paragraph 62, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

63. As to Paragraph 63, Roberts denies that he threatened Plaintiff. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

64. As to Paragraph 64, Roberts admits that he was terminated for drinking alcohol.

65. As to Paragraph 65, Roberts admits only that he has claimed and continues to claim in privileged statements that Plaintiff's account of the events are untrue and any physical contact was consensual, and that Plaintiff denies this.

66. As to Paragraph 66, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

67. As to Paragraph 67, Roberts denies threatening Plaintiff with a gun. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

68. As to Paragraph 68, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

69. As to Paragraph 69, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

70. As to Paragraph 70, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations

71. As to Paragraph 71, Roberts admits only that it is his understanding that Plaintiff resigned from her job. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

72. As to Paragraph 72, Roberts denies that any statements that Plaintiff engaged in a voluntary sexual or intimate relationship were untrue and made without privilege. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

73. As to Paragraph 73, Roberts denies these allegations.

74. As to Paragraph 74, Roberts admits only that he had access to Plaintiff's resume. Roberts denies the remaining allegations in this paragraph.

75. As to Paragraph 75, Roberts denies these allegations.

76. As to Paragraph 76, Roberts denies that he harassed Plaintiff. As to the remaining allegations, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

77. As to Paragraph 77, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

78. As to Paragraph 78, Roberts denies making untrue statements. Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

79. As to Paragraph 79, Roberts denies these allegations.

80. As to Paragraph 80, Roberts denies that he has harassed or threatened Plaintiff. As to the remaining allegations, Roberts lacks sufficient information or knowledge upon which to form a belief as to the truth or falsity of these allegations.

81. As to Paragraph 81, Roberts denies these allegations.

82. As to Paragraph 82, Roberts denies these allegations.

## VI. FOR A FIRST CAUSE OF ACTION
### As to Defendant Roberts (Civil Assault and Battery)

83. As to Paragraph 83, Roberts hereby realleges and incorporates herein each and every response contained in Paragraphs 1-82 as though set forth herein verbatim.[1]

84. As to Paragraph 84, Roberts denies these allegations.

85. As to Paragraph 85, Roberts denies these allegations.

86. As to Paragraph 86, Roberts denies these allegations.

87. As to Paragraph 87, Roberts denies these allegations.

## VII. FOR A SECOND CAUSE OF ACTION
### As to Defendant Weston & Sampson
### (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.)

88. As to Paragraphs 88-98, a response is not required as these allegations are not directed at Roberts.

## VIII. FOR A THIRD CAUSE OF ACTION
### As to Defendant Weston & Sampson
### (Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq.)

89. As to paragraphs 99-108, a response is not required as these allegations are not directed at Roberts.

---

[1]In her SAC, Plaintiff refers to the preceding Paragraphs as being 1-74. Clearly, this is just a typographical error and should be Paragraphs 1-82.

## IX. FOR AFOURTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress against all Defendants)

90. As to Paragraph 109, Roberts hereby realleges and incorporates herein each and every response contained in Paragraphs 1-108 as though set forth herein verbatim.

91. As to paragraph 110, Roberts denies these allegations.

92. As to paragraph 111, Roberts denies these allegations.

93. As to paragraph 112, Roberts denies these allegations.

94. As to paragraph 113, Roberts denies these allegations.

## X. FOR A FIFTH CAUSE OFA ACTION
### As to all Defendants (Defamation and Defamation Per Se)

95. As to paragraph 114, Roberts hereby realleges and incorporates herein each and every response contained in Paragraphs 1-113 as though set forth herein verbatim.

96. As to paragraph 115, Roberts denies these allegations.

97. As to paragraph 116, Roberts denies these allegations.

98. As to paragraph 117, Roberts denies these allegations.

99. As to paragraph 118, Roberts denies these allegations.

100. As to paragraph 119, Roberts denies these allegations.

101. As to paragraph 120, Roberts admits only that he had more work experience than Plaintiff, but denies the remaining allegations in this paragraph.

102. As to paragraph 121, Roberts denies these allegations.

103. As to paragraph 122, Roberts denies these allegations.

104. As to paragraph 123, Roberts denies these allegations.

105.    As to paragraph 124, Roberts admits that Plaintiff has denied the conduct was consensual, but denies the remaining allegations in this paragraph.

106.    As to paragraph 125, Roberts denies these allegations.

107.    As to paragraph 126, Roberts denies these allegations.

108.    As to paragraph 127, Roberts denies these allegations.

109.    As to paragraph 128, Roberts denies these allegations.

110.    As to paragraph 129, Roberts denies these allegations.

## XI. FOR A SIXTH CAUSE OF ACTION
### As to Defendant Roberts (Tortious Interference with Contract)

111.    On March 17, 2025, the Court dismissed this claim. (ECF No. 76). Accordingly, no response is required for paragraphs 130-139.

112.    As to Plaintiff's Prayer for Relief, Roberts denies that the Plaintiffs are entitled to any recovery from this Defendant.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

113.    Plaintiff fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Intervening Causes)

114.    Roberts would further show, upon information and belief, that some or all damages allegedly sustained by the Plaintiff (the existence of such damages being

12

denied) were a proximate result of one or more independent, efficient, intervening causes which Roberts pleads as a bar to this action.

### THIRD AFFIRMATIVE DEFENSE
**(Consent)**

115.    Roberts would further show, upon information and belief, that any injuries or damages sustained by Plaintiff, all of which are denied by the Defendant, were (a) caused by the Plaintiff's own conduct and are barred in whole or in part because the Plaintiff consented to and/or initiated such conduct and/or (b) waived either expressly or impliedly by the Plaintiff's own conduct.

### FOURTH AFFIRMATIVE DEFENSE
**(Laches, Waiver, and/or Estoppel)**

116.    Plaintiff's Complaint may be barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel. By way of example, Plaintiff may be estopped from obtaining the relief requested due to her own conduct, acts, and/or omissions and/or Plaintiff has voluntarily and intentionally waived known rights against Roberts.

### FIFTH AFFIRMATIVE DEFENSE
**(Unclean Hands)**

117.    Plaintiff may have engaged in inequitable conduct, which directly relates to the subject matter of this litigation which has thereby resulted in prejudice to Roberts. Accordingly, Plaintiff's claims are barred from recovery and equity under the Doctrine of Unclean Hands as a result of the inequitable conduct.

### SIXTH AFFIRMATIVE DEFENSE
**(No Punitive Damages)**

118.    Plaintiff is not entitled to punitive damages and further she fails to state facts sufficient to support a prayer for punitive damages.

## SEVENTH AFFIRMATIVE DEFENSE
### (Punitive Damages Violate Constitution)

119.    Even if punitive damages were available against Roberts, Plaintiff is not entitled
to recover such damages because an award of punitive damages violates the Fifth and
Fourteenth Amendments to the United States Constitution as well as Article I, § 3 and
Article I, § 14 of the South Carolina Constitution:

A. An award of punitive damages must strictly comply with the guidelines set forth in State Farm Mutual Automobile Insurance *Company v. Campbell*, 538 U.S. 408 (2003), and the failure to do so renders any such award unconstitutional.

B. Any award of punitive damages that is subject to no predetermined limit violates the Defendant's due process rights because it is not subject to meaningful standards and because it does not allow the Defendant to be fully informed of the nature and cause of the accusation and ruling.

C. The judiciary's ability to correct a punitive damages award at the appellate level is inconsistent with due process guarantees. To the extent an award of punitive damages is excessive, such award violates due process guarantees.

D.   The jury's unfettered power to award punitive damages in any amount it chooses is wholly devoid of meaningful standards and is inconsistent with due process guarantees. Any standard that allegedly governs imposition of punitive damages violates the Defendant's due process rights because it is void for vagueness.

E.   Any award of punitive damages violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution as well as Article I, § 3 of the South Carolina Constitution because it is based upon Defendant's wealth and status.

F. Roberts specifically incorporates by reference any and all applicable South Carolina and Untied States Supreme Court standards or limitations regarding the determination and/or enforceability of punitive damages awards.

## EIGHTH AFFIRMATIVE DEFENSE
### (No Jury Trial for Punitive Damages)

120.    Roberts would further show, upon information and belief, that pursuant to *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), if punitive damages are recoverable, which is denied, the amount of punitive damages "is not really a fact tried by the jury." *Id.* at 437 (citation and quotation marks omitted). Therefore, Plaintiff's request that punitive damages be determined by the jury violates the United States Constitution.

## NINTH AFFIRMATIVE DEFENSE
### (Amount of Any Punitive Damages Award)

121.    Roberts would further show, upon information and belief, that pursuant to *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008), if punitive damages are recoverable, which is denied, the amount of punitive damages must be limited to an amount no greater than the award of actual damages.

## TENTH AFFIRMATIVE DEFENSE
### (Punitive Damages under S.C. Law)

122.    Roberts would further show, upon information and belief, that any award of punitive damages is subject to the limitations set forth in the South Carolina Code.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

123.    Some of Plaintiff's claims are barred by the applicable statute of limitations.

## TWELTH AFFIRMATIVE DEFENSE
### (Truth)

124.    Plaintiff's claims are barred because they are based on statements that are true.

## THIRTEENTH DEFENSE
### (Absolute Privilege)

125.    Plaintiff's claims are barred in whole or in part by the doctrine of absolute privilege.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Qualified Privilege)

126.    Plaintiff's claims are barred in whole or in part by qualified privilege.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Jason Roberts ("Roberts"), for his Counterclaim against Plaintiff/Counterclaim Defendant Jane Doe ("Plaintiff"), alleges and states as follows:

### PARTIES

127.    Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

128.    Defendant/Counter-Plaintiff Jason Roberts ("Roberts") resides in Columbia, South Carolina, and is a citizen and resident of Richland County, South Carolina.

129.    Upon information and belief, Plaintiff Jane Doe a/k/a Lauren Ballard is a citizen and resident of Oconee County, South Carolina.

### JURISDICTION AND VENUE

130.    Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

131.    This Court has personal jurisdiction over Plaintiff/Counter-Defendant Jane Doe a/k/a Lauren Ballard, as alleged in Plaintiff's Second Amended Complaint.

132. As alleged in the Second Amended Complaint, subject matter jurisdiction of this Court over Plaintiff claims arises under 42 U.S.C. § 2000(e), et seq., and through supplemental jurisdiction over Plaintiff's state law claims.

133. The Court also has supplemental subject matter jurisdiction over Roberts' state law counterclaims under 28 U.S.C. § 1367.

134. Venue over the counterclaims and parties is proper in the District of South Carolina pursuant to 28 U .S.C. §§ 1391(b)(l) and (2).

## FACTUAL ALLEGATIONS

135. Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

136. In March 2022, Roberts was employed by W&S Engineers, Inc. ("W&S") as a Technical Specialist.

137. In March 2022, W&S hired Plaintiff as a GIS Analyst in its North Charleston, South Carolina office.

138. Roberts assisted with Plaintiff's initial training. However, he did not supervise Plaintiff. Further, Roberts did not give her assignments nor he did tell Plaintiff what to do or where to be.

139. On March 31, 2022, Plaintiff, Roberts, and another W&S employee attended a conference in Palm Beach, Florida.

140. A supervisor in Charleston, who was unable to attend the conference at the last minute, asked Plaintiff to attend the conference.

141. On the first night of the conference, Plaintiff asked Roberts to join her at the hotel bar for drinks, which Roberts did.

17

142.    Plaintiff subsequently invited Roberts to spend the night in her hotel room where they engaged in consensual kissing and touching.

143.    Plaintiff sent Roberts numerous flirtatious texts throughout the conference.

144.    After the conference ended, Plaintiff and Roberts shared an Uber ride to the airport.

145.    During their return trip to South Carolina, Plaintiff missed her connecting flight out of Charlotte to Charleston. Roberts had flown out of Charlotte, and, therefore, he had his vehicle.

146.    Plaintiff could have taken a later flight that night or stayed at a hotel next to the airport by herself and taken a morning flight home. However, she chose to spend the night with Roberts in a luxury hotel room in downtown Charlotte.

147.    Plaintiff drove herself and Roberts in Roberts' vehicle from the airport to the Ritz Carlton in downtown Charlotte. However, the hotel did not have any vacancies.

148.    Plaintiff and Roberts then went to The Bohemian Hotel and checked into one room with one king bed.

149.    Plaintiff did not request a separate room at any time, including while they were checking into The Bohemian Hotel, nor did she express any concerns to anyone while they were jointly checking in to the hotel.

150.    Once in the room, Plaintiff and Roberts ordered champagne through room service, and they engaged in consensual oral sex.

151.    The next morning, Plaintiff decided to not fly back to her home in Charleston, South Carolina. Instead, Plaintiff and Roberts went to brunch at a restaurant with a former colleague of Roberts. At brunch, the three talked about business and

potentially doing some work together. Afterwards Roberts' former colleague drove them back to The Bohemian Hotel.

152.    Although Roberts lived in Columbia, he offered to give Plaintiff a ride to the Charleston, South Carolina airport which was two hours from his home.

153.    Plaintiff then drove herself and Roberts from Charlotte, North Carolina, to Charleston, South Carolina, in Roberts' vehicle. When they arrived at the Charleston, South Carolina airport where Plaintiff's vehicle was parked, they parted ways.

154.    Roberts then drove back to his home almost two hours away in Columbia, South Carolina.

155.    Shortly thereafter, Plaintiff falsely accused Roberts of inappropriate behavior to a supervisor at W&S, and Roberts was subsequently terminated.

156.    Plaintiff also falsely reported to law enforcement that Roberts had sexually assaulted her and that she had not consented.

157.    After a thorough investigation, however, law enforcement declined to bring any charges against Roberts.

158.    Plaintiff thereafter published defamatory statements regarding Roberts on the Facebook group "Are We Dating the Same Guy?" for the Columbia/Charleston/ South Carolina area.

159.    "Are We Dating the Same Guy?" is a network of 200 female-only Facebook groups with city and location-specific with more than 3.5 million members sharing dating experiences.

160.    "Are We Dating the Same Guy?" Columbia/Charleston has over 44,000 members. Members are told that they should have proof of anything they state about an

individual and, if they do not, they are specifically warned that they are in danger of being sued for libel and/or defamation.

161.    In or about June or July 2023, an anonymous member wrote that she had been talking to Roberts and was seeking to determine if there were any "tea" or red flags associated with him. She included Roberts' picture and his first name. Plaintiff, using her full name, responded: "To everyone, he SA me. I didn't know he had a criminal history. I'm putting this out there to protect anyone I can from him. He is DANGEROUS."

162.    Because access to this Facebook group is limited to the 44,000 female members, at this time, Roberts is unable to determine if Plaintiff has published additional defamatory statements about him or if she also published defamatory statements on "Are We Dating the Same Guy?" Facebook groups associated with other cities or geographical areas. Through discovery, additional defamatory statements may be discovered.

## FIRST COUNTERCLAIM
### (Defamation and Defamation Per Se)

163.    Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

164.    Roberts is a private individual.

165.    Plaintiff published false accusations about Roberts to third parties on the Facebook Group "Are We Dating the Same Guy" for the Columbia/Charleston, South Carolina areas. This Facebook group has approximately 44,000 members.

166.    In or about June or July 2023, Plaintiff, using her real name, in response to inquiries about Roberts, posted on this Facebook group the following: "To everyone,

he SA me. I didn't know he had a criminal history. I'm putting this out there to protect anyone I can from him. He is DANGEROUS."

167.   These slanderous statements were malicious, non-privileged, and false and were published and made negligently, recklessly, or with an intent to damage Roberts' reputation and destroy his good name.

168.   Plaintiff's slanderous statements were false when made and Plaintiff knew of the falsity of the statements.

169.   Further, Plaintiff's slanderous statements were published to third parties with reckless disregard for the truth by Plaintiff.

170.   Plaintiff's statements about Roberts' character and as to him being a dangerous criminal were defamatory per se.

171.   Malice is legally presumed or implied since the accusations alleged, which are false, pertain to criminal conduct.

172.   Moreover, Plaintiff did, in fact, publish her written and oral statements with actual malice.

173.   Further, the defamatory statements were not made under any circumstances that would render them subject to any privilege.

174.   As a direct and proximate result of Plaintiff's acts, Roberts has suffered great pain, suffering, mental anguish, emotional distress, anxiety, indignity, humiliation, and frustration; and injury to his personal and professional reputation and standing in the community, and he will in the future continue to suffer such harm and injury.

175.    As a direct and proximate cause of the defamatory and slanderous conduct by Plaintiff, Roberts is entitled to a judgment against Plaintiff for legally presumed and special damages, in addition to compensatory, general, and nominal damages.

176.    Further, Plaintiff's actions and omissions more specifically described above, were willful, wanton, and/or in reckless disregard of Roberts' rights, and warrant an award of punitive damages.

## SECOND COUNTERCLAIM
### (Invasion of Privacy)

177.    Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

178.    Plaintiff wrongfully intruded on Roberts' right to privacy by publicizing his private affairs and publicly portraying him in a false light.

179.    The false statements published by Plaintiff about Roberts are highly offensive and are of no legitimate concern to the public.

180.    As a direct and proximate cause of Plaintiff's conduct, Roberts has suffered and will continue to suffer significant general, actual, consequential, and special damages including, without limitation, impairment of reputation and standing in the community, personal humiliation, mental anguish and suffering, emotional distress, stress, anxiety, lost earnings, and other pecuniary loss. .

181.    Roberts also seeks punitive damages for these wrongful invasions of his privacy.

## THIRD COUNTERCLAIM
### (Malicious Prosecution)

182.    Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

183.    The foregoing paragraphs demonstrate that Plaintiff intentionally and maliciously instituted and is pursuing a civil case and attempted to pursue a criminal case against Roberts.

184.    Plaintiff reported her allegations to law enforcement. However after a thorough investigation into her allegations, law enforcement declined to bring any criminal charges against Roberts.

185.    The instant civil case was brought by Plaintiff.

186.    The prosecution of this action against Roberts is malicious and brought without any probable cause to believe that a criminal violation or any other cause of action had been committed.

187.    The bringing and continuing of this action constitutes malicious prosecution on the part of Plaintiff against Roberts, and her conduct, being willful, wanton, and/or in reckless disregard of Roberts' rights, warrants punitive damages.

188.    That as a result of the malicious prosecution, Roberts has been forced to defend himself and to expend money and time in his defense, all in an amount to be proven at trial.

189.    Plaintiff's allegations against Roberts are unfounded and frivolous and without probable cause to believe that the action filed would succeed and was for an improper purpose.

190.   As a direct and proximate result of the above-described conduct, Roberts has suffered compensatory, general, special, and nominal damages, and Plaintiff's actions and omissions warrant the award of punitive damages.

### FOURTH COUNTERCLAIM
### (Tortious Interference with Contract)

191.   Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

192.   Plaintiff has interfered with Roberts' career at W&S by making false accusations that Roberts had engaged in inappropriate conduct.

193.   Plaintiff knew or should have known her actions toward Roberts were wrongful.

194.   But for Plaintiff's actions and interference, Roberts would have continued his employment with W&S.

195.   As a direct and proximate result of Plaintiff's conduct, Roberts has suffered damages including lost wages, lost earning capacity, lost benefits, reputational loss, and emotional pain and suffering, costs, and attorney's fees.

### .FIFTH COUNTERCLAIM
### (Abuse of Process)

196.   Roberts hereby realleges and incorporates herein each and every allegation contained above as though set forth herein verbatim.

197.   Plaintiff has abused the process of both the civil court and the criminal justice system in a wrongful manner, not proper in the regular conduct of the proceedings and to accomplish a purpose for which said proceedings were not designed, specifically, for retaliation and the destruction of Roberts' reputation.

24

198.    Plaintiff has falsely represented to law enforcement that she did not consent to sex with Roberts.

199.    Plaintiff has acted with an ulterior motive to destroy Roberts' reputation and to retaliate against him.

200.    Plaintiff has also committed willful acts and submitted false information in the regular conduct of litigation.

201.    As a direct and proximate result, Roberts has suffered damages, loss and harm, including but not limited to his reputation.

## **DEMAND FOR JURY TRIAL**

202.    Roberts demands a jury trial as to all his counterclaims.

**WHEREFORE**, Roberts having fully set forth the grounds in her Complaint, Plaintiff requests a jury trial and asks the Court to award the following:

1.    Actual damages;

2.    Punitive damages in an appropriate amount against Plaintiff;

3.    Attorney's fees and costs; and

4.    Such other and further relief as the Court deems just and proper.

Respectfully submitted,


s/Deborah B. Barbier
Deborah B. Barbier (#6639)
DEBORAH B. BARBIER, LLC
1811 Pickens Street
Columbia, South Carolina 29201
803-445-1032
dbb@deborahbarbier.com


March 26, 2025