IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LAUREN BALLARD,<br><br>            Plaintiff,<br><br>v.<br><br>WESTON & SAMPSON ENGINEERS, INC, ET AL.,<br><br>            Defendants. | C/A No. 2:24-cv-01682-RMG-WBS |

## **DEFENDANT WESTON & SAMPSON ENGINEERS, INC.'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Defendant Weston & Sampson Engineers, Inc. ("Defendant W&S"), by and through its undesigned counsel, respectfully submits this Response to Plaintiff's Memorandum in Support of Motion to Compel Discovery ("Plaintiff's Motion"). (ECF No. 107.) To date, Defendant W&S and the Parties have been engaging in discovery and Defendant W&S has provided responses, including supplemental responses, and corresponding document productions totaling over 1,000 pages to Plaintiff's written discovery requests. Defendant W&S has and intends to continue actively engaging in discovery in good faith and pursuant to the Federal Rules of Civil Procedure through the discovery deadline in this case, which is January 27, 2026. For the following reasons, Defendant W&S requests that the Court deny Plaintiff's Motion in its entirety.

**I.      RELEVANT PROCEDURAL HISTORY**

Plaintiff filed this action against Defendants Weston & Sampson and Jason Roberts on April 3, 2024. (ECF No. 1.) On May 16, 2024, Defendant W&S moved to dismiss Plaintiff's state law claims and Title VII hostile work environment claim against Defendant W&S. (ECF No. 7.)

Plaintiff filed a Response in Opposition to that Motion to Dismiss on June 10, 2024 (ECF No. 18), and on June 17, 2024, Defendant W&S filed a Reply in support of its Motion to Dismiss. (ECF No. 20.) On June 12, 2024, Plaintiff filed a motion requesting leave to amend her Complaint. (ECF No. 19.) In her proposed Amended Complaint attached to the motion for leave, Plaintiff maintained the same claims against Defendant W&S and the factual allegations supporting those claims in her Amended Complaint were nearly identical to those in her initial Complaint. (Compare ECF No. 18-4 at ¶¶ 1-70, 73-76, 78-82 with ECF No. 1 at ¶¶ 1-70, 71-74, 75-79.) Briefing was exchanged and Plaintiff filed her Amended Complaint against Defendants on July 26, 2024.

On August 12, 2024, Plaintiff filed her Second Amended Complaint against Defendants as ordered by the Court.[1] (ECF No. 43.) On August 26, 2024, Defendant W&S filed its Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 47), and Plaintiff filed a Response in Opposition on September 9, 2024 (ECF No. 48). On October 29, 2024, Magistrate Judge Brown issued a Report and Recommendation ("R&R") and Defendant W&S filed Objections to the R&R on November 12, 2024. On March 17, 2024, District Judge Gergel issued an opinion ruling on the R&R, in which the Court dismissed Plaintiff's intentional infliction of emotional distress ("IIED") claim against Defendant W&S.[2]

At this stage of the case, the Parties are engaging in and exchanging discovery. Pursuant to the current Fourth Amended Scheduling Order, the discovery deadline in this case is January 27, 2026. (ECF No. 106.) Plaintiff sent first sets of interrogatories and requests for production of

---

[1] The Court issued an order on August 5, 2024, stating, in part, "Within seven (7) days from the date that this Order is entered, Plaintiff must file an Amended Complaint identifying herself by name as the Plaintiff in this case." (ECF No. 41.)
[2] Plaintiff references her IIED claim multiple times throughout her Motion. (ECF No. 107 at 2, 7.) While such references may have been unintentional, Defendant W&S reminds the Court that Plaintiff's IIED claim against Defendant W&S has been dismissed.

2

documents to Defendant W&S on May 15, 2025. On June 16, 2025, Defendant W&S's Counsel requested an extension of time to respond to those discovery requests through July 8, 2025, which Plaintiff's Counsel consented to. Defendant W&S's Counsel provided responses and a corresponding document production to Plaintiff's Counsel on July 8, 2025. Plaintiff's Counsel sent a deficiency letter on July 28, 2025. Although the letter referenced Local Rule 37.01 generally, Plaintiff's Counsel did not include language extending Defendant W&S's time to cure its responses and by default, time to extend Plaintiff's deadline to file a Motion to Compel related to the first set of discovery requests pursuant to the language of Local Civil Rule 37.01.

On September 15, 2025, Plaintiff's Counsel reached out via email to Defendant W&S's Counsel and Defendant Roberts' Counsel to request time to confer regarding discovery. On September 15, 2025, Defendant W&S provided supplemental discovery responses and a corresponding supplemental production to Plaintiff's first set of discovery requests. On September 16, 2025, Defendant W&S's Counsel responded and inquired as to availability for a call on September 17, 2025. After some back and forth, Counsel for all parties agreed to schedule a call for September 19, 2025. On September 19, 2025, Counsel for all parties had a call and discussed discovery. On October 1, 2025, Defendant W&S's Counsel and Plaintiff's Counsel had another call to discuss discovery and outstanding medical records authorizations necessary to send subpoenas to third-party providers in order to obtain Plaintiff's medical and psychotherapy records that are outstanding. On October 8, 2025, Plaintiff's Counsel sent suggested revisions to the language of the authorizations to Defendant W&S's Counsel and Defendant W&S's Counsel requested that Plaintiff's Counsel send copies of those forms executed by Plaintiff. Also on October 8, 2025, Defendant W&S's Counsel informed Plaintiff's Counsel that they were in the process of finalizing supplemental responses and a supplemental production and that it would

hopefully be forthcoming that same week.

Defendant W&S's Counsel provided second supplemental responses and a corresponding supplemental production to Plaintiff's Counsel and Defendant Roberts' Counsel on October 21, 2025. While Plaintiff filed her Motion without informing Defendant W&S's Counsel of a forthcoming Motion to Compel, much of the requests in Plaintiff's Motion are now moot as additional information and responsive documents were provided in the October 21, 2025, supplemental responses and production as described in detail below.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 37(a)(1) states, "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *See Holmes v. Doctors Care, P.A.*, 2018 U.S. Dist. LEXIS 58234, at *3 (D.S.C. Mar. 7, 2018). Broad discretion is afforded a district court's decision to grant or deny a motion to compel. *See, e.g.*, *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion."); *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court.").

The scope of discovery may be relatively broad when compared against the standard for admissible evidence, however, it is limited to only those non-privileged items that are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, Plaintiff is seeking to compel overbroad, irrelevant, and premature discovery responses, or discovery responses and/or documents which have already been produced, as detailed below. Accordingly, Plaintiff's Motion to Compel must be denied.

### III. ANALYSIS

#### A. Plaintiff's Motion Must be Denied Because It Is Untimely Pursuant to Local Civil Rule 37.01.

Plaintiff's Motion should be denied for multiple reasons. As an initial matter, Plaintiff's Motion is untimely under Local Civil Rule 37.01, and it should be denied for that reason. Local Civil Rule 37.01(A) states as follows:

> Motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed or, where no response has been received, within twenty-one (21) days after the response was due. If counsel are actively engaged in attempts to resolve the discovery dispute, they may agree to extend the time to comply with the discovery request so long as the extension does not place the due date beyond thirty (30) days before the deadline for completion of discovery as set by the scheduling order. [] This extension will automatically extend the deadline for the motion to compel by an equal amount of time. The extension shall be confirmed in writing. In the event a later motion to compel is filed, the correspondence confirming the extension shall be attached.

District of South Carolina, Local Civil Rule 37.01(A). Here, Plaintiff filed the instant Motion to Compel on October 17, 2025. (ECF No. 107.) Under Local Civil Rule 37.01(A), the deadline for Plaintiff to file a motion to compel was July 29, 2025 (21 days after Defendant W&S provided responses to Plaintiff's first set of discovery requests). Plaintiff's Counsel's letter to Defendant's Counsel, while dated July 28, 2025, did not include any request to extend the time to comply with the discovery requests in order to preserve the deadline for Plaintiff to file a motion to compel, as is required by Local Civil Rule 37.01(A). Further, no such extension was ever placed in writing,

5

and thus no such extension was attached to Plaintiff's instant Motion to Compel, as required by Local Civil Rule 37.01(A). Virtually all South Carolina district courts have denied motions to compel when they were filed outside the 21-day window, as is the case here. *See*, *e.g.*, *State Farm Fire v. Lang*, 2022 U.S. Dist. LEXIS 2374343, at *5-6 (D.S.C. Oct. 24, 2022) (Gergel, J.) (citing *Hill Holiday Connors Cosmopulos, Inc. v. Greenfield*, 2009 U.S. Dist. LEXIS 109275, at *2 (D.S.C. Nov. 23, 2009)); *Peeples v. Herrnstein Auto Grp., LLC*, 2022 U.S. Dist. LEXIS 73833, at *3 (D.S.C. Apr. 22, 2022) (denying untimely motion to compel production served roughly two months late); *Kelly v. Equifax, Inc.*, 2013 U.S. Dist. LEXIS 159414, at *3 (D.S.C. Nov. 7, 2013) ("The court need not reach the meris of [the] motion to compel because it was untimely filed.").

Plaintiff's Motion is untimely per the requirements under Local Civil Rule 37.01(A) by approximately two (2) and a half months, and Plaintiff's Counsel has provided no explanation for this untimely delay. For this reason alone, Plaintiff's Motion should be denied.

### B. Plaintiff's Motion Must be Denied Because Plaintiff's Counsel Failed to Comply with Local Civil Rule 7.02.

Plaintiff's Motion should also be denied because prior to filing the instant Motion, Plaintiff's Counsel failed to consult with Defendant W&S's Counsel as required by District of South Carolina, Local Civil Rule 7.02 ("all motions shall contain an affirmation by the movant's counsel prior to filing the motion that he or she conferred or attempted to confer with opposing counsel and attempted in good faith to resolve the matter contained in the motion. If a conference could not be held despite an attempt to do so, counsel shall explain why such conference could not be held."). South Carolina district courts have denied motions to compel for a party's failure to comply with Local Civil Rule 7.02. *See*, *e.g.*, *Dax Ventures LLC v. Pure Fishing Inc.*, 2024 U.S. Dist. LEXIS 136890, at *7 (D.S.C. Jan. 12, 2024) (denying motion to compel and finding, "Plaintiffs' motion concerns Defendant's answers to Plaintiffs' interrogatories and Defendant's

6

supplemental responses to Plaintiffs' requests for admission. While Plaintiffs may have conferred with Defendant on its answers to Plaintiffs' interrogatories, Plaintiffs did not confer with Defendant on its supplemental responses to Plaintiffs' requests for admission. Thus, Plaintiffs' motion is, at least in part, in violation of Local Rule 7.02 and Rule 37, FRCP."); *Renshaw First Protective Ins. Co.*, 2024 U.S. Dist. LEXIS 241678, at *4 (D.S.C. Aug. 2, 2024) (Gergel, J.) ("Local Civil Rule 7.02 was adopted to remedy this type of situation by having the parties attempt to agree amongst themselves to an appropriate resolution. [] The Court emphasizes that discovery discussions and negotiations must take place before calling upon the Court's time and resources. Accordingly, Plaintiff's motion is denied at this time[.]"); *Quartermen v. Spirit Line Cruises, LLC*, 2016 U.S. Dist. LEXIS 11228, at * 12 (D.S.C. Feb. 1, 2016) ("Local Civil Rule 7.02 requires that the parties confer and attempt to resolve the motion before filing a nondispositive motion. Local Civil Rule 7.02 was adopted to remedy this type of situation by having the parties attempt to agree amongst themselves to an appropriate resolution. Here, Plaintiffs filed a vague motion to compel. The Court lauds the parties for attempting to resolve the contents of the present Motion after its filing, but it emphasizes that such negotiation must take place before calling upon the Court's time and resources. Accordingly, Plaintiffs' Motion is denied at this time[.]").

Prior to filing the instant Motion, Plaintiff's Counsel did not attempt to confer with Defendant W&S's Counsel regarding the Motion and, further, no affirmation describing any such conferral attempt was included in the Motion. For this reason alone, and as outlined in the supporting case law above, Plaintiff's Motion should be denied.

    **C.**  **Plaintiff's Motion Must be Denied Because Weston & Sampson Has Responded to Plaintiff's Requests and Produced Documents in its Possession, Custody, or Control Responsive to Plaintiff's Requests and Intends to Supplement as Necessary Through the Discovery Deadline.**

7

As provided below, Defendant W&S has responded to Plaintiff's First Interrogatories and Requests for Production, including with supplemental responses and document productions on September 15, 2025, and again on October 21, 2025, providing the specified grounds and bases for tailored objections where appropriate when asserted. Plaintiff fails to cite any binding case law demonstrating that Defendant W&S's tailored objections based on certain of Plaintiff's overbroad and burdensome requests constitute inadequate responses to the requests. In addition, Plaintiff has failed to explain how the information and documents provided in response to her first discovery requests, and supplemented by Defendant W&S as necessary on two occasions, are inadequate, especially when the objections provided by Defendant W&S in response to certain interrogatories and requests are not general, boilerplate objections, as detailed below.

  a.  **Interrogatory No. 6**

Interrogatory No. 6 states, "Describe the criteria and employer policies for an employee to attend any conference." (ECF No. 107-1 at 5.) On October 21, 2025, Defendant W&S responded, "Subject to and without waiving the objections stated in Defendant W&S's Responses to Plaintiff's Interrogatories, Defendant W&S does not have criteria or any policies responsive to this interrogatory." (Ex. A – Defendant W&S's Supplemental Responses to Plaintiff's First Set of Interrogatories.) Plaintiff's request as it relates to this Interrogatory appears to be based solely on Plaintiff's own assumptions and not rooted in any fact or knowledge of actual existence, and she has failed to explain how this tailored supplemental response is deficient. Upon Defendant W&S's response in its Supplemental Responses to Plaintiff's First Set of Interrogatories, Defendant maintains that this request has been resolved and is now moot.

  b.  **Interrogatory No. 10**

Interrogatory No. 10 states, "Identify each circumstance involving employees disciplined (via a letter of reprimand, suspension, terminated, or other) during the past five years for inappropriate and unprofessional conduct, including racial or sexual statements or discrimination, unwanted touching, alcohol abuse, or physical or verbal harassment/aggression, use of inappropriate or vulgar language including inappropriate sexualized language, threats and/or firearms issues in the relevant time period as set forth in the instructions above. Please identify the policy violation and the result (discipline, counseling, termination, etc). For the purposes of maintaining privacy please identify each employee by initials, number or other symbol." (ECF No. 107-1 at 5-6.)

Defendant responded, "Defendant W&S objects to this request to the extent it seeks information related to any employees other than Plaintiff or Defendant Roberts on the grounds that any such persons are not parties in this case and such information is neither relevant to any party's claim or defense nor proportional to the needs of the case. Defendant W&S further objects to this request to the extent it seeks information regarding such employees who were disciplined during the past five years for inappropriate and unprofessional conduct, policy violations, and the result, as all such information is not relevant and not proportional to the needs of the case – except for such information that may apply to Plaintiff and/or Defendant Roberts. Further, to the extent this request requests information related to racial statements or discrimination, such information is neither relevant to any party's claims or defenses nor proportional to the needs of the case because Plaintiff is not alleging race discrimination or retaliation here." This is a case brought by Plaintiff as a former employee against her employer and Defendant Roberts in which Plaintiff is only asserting hostile work environment and retaliation claims on the basis of sex – not race or any other protected characteristic. Further, Plaintiff was employed by Defendant W&S for

9

approximately six (6) months, and during that time she was actively looking for jobs and took a leave of absence.

This interrogatory appears to be a fishing expedition by Plaintiff's Counsel especially in light of the fact that all information and documents related to Defendant Roberts' disciplinary history at W&S, including related investigations and communications, have been provided in discovery. (Ex. A at 1-2.) Plaintiff's request for each circumstance involving employee discipline in the past five (5) years for "inappropriate and unprofessional conduct, including racial or sexual statements or discrimination, unwanted touching, alcohol abuse, or physical or verbal harassment/aggression, use of inappropriate or vulgar language including inappropriate sexualized language, threats and/or firearms issues" are not relevant to any party's claim or defense and also are not proportional to the needs of this case, and this request places an undue burden of production on Defendant W&S when such a request has no bearing on Plaintiff's claims or Defendant's defenses and relevant information and documents pertaining to Defendant Roberts have already been provided. (Ex. A at 1-2.)

c. **Interrogatory No. 11**

Interrogatory No. 11 states:

Describe in detail all communication between HR personnel or any employee of the Defendant Employer regarding the following:

a) All interactions with Defendant Roberts, including sexual assault, unwanted touching, unwanted advances or interactions, and any threats or slurs made by Roberts with reference to the Plaintiff;
b) Inappropriate comments by Roberts or any other employee to Plaintiff;
c) Male or Female coworkers being uncomfortable with Defendant Roberts.

(ECF No. 107-1 at 6.) On October 21, 2025, Defendant W&S responded as follows:

a) Subject to and without waiving the objections stated in Defendant W&S's Responses to Plaintiff's Interrogatories, see documents Bates labeled DEF W&S 000108 – 111, 1020 – 1022.
b) Subject to and without waiving the objections stated in Defendant W&S's Responses to Plaintiff's Interrogatories, see documents Bates labeled DEF W&S 000108 – 111.
c) Subject to and without waiving the objections stated in Defendant W&S's Responses to Plaintiff's Interrogatories, see documents Bates labeled DEF W&S 001040 – 1048.

(Ex. A at 2.) Plaintiff makes clear that she is specifically "request[ing] the substance of communications from coworkers or customers related to the individual Defendant." (ECF No. 107 at 9.) To date, all such communications in Defendant W&S's possession have been provided to Plaintiff, and she has failed to explain how this tailored supplemental response is deficient. Upon Defendant W&S's response in its Supplemental Responses to Plaintiff's First Set of Interrogatories, Defendant maintains that this request has been resolved and is now moot.

### d.     Interrogatory No. 16

Interrogatory No. 16 states, "Describe in detail any policies, procedures, or employee handbooks that address employee intoxication, substance abuse, workplace safety, and event conduct that were in effect at the time of each incident." (ECF No. 107-1 at 7.) Plaintiff states, "Defendant provided illegible materials. … Plaintiff asks that the Defendant be ordered to produce the information in legible form." On October 21, 2025, Defendant W&S provided a legible copy[3] of its Employee Handbook re-Bates labeled DEF W&S_000017 – 107, and Plaintiff has not informed Defendant W&S that the copy that has been provided is illegible. Thus, Defendant maintains that this request has been resolved and is now moot.

### e.     Requests Nos. 1 and 4

---

[3] On July 8, 2025, Defendant W&S provided a copy of the Employee Handbook in its document production to Plaintiff's Counsel and did not realize that the text in the copy provided electronically had become pixelated and was therefore difficult to read. As provided for above, a legible copy has been provided to counsel for all parties.

Request No. 1 states, "Produce all documents which reference, reflect, or relate to the hiring, employment, wages, benefits, discipline, and separation of the employees listed below. Please include complete personnel file and payroll records. This includes files kept by Human Resources, and any employee files maintained by the chain of command including Files or Notes: Lauren Ballard, Jason Roberts, Jerry Corr (Coor), Robert (Bob) Horner." On July 8, 2025, Defendant W&S provided Lauren Ballard's personnel file, or those documents pertaining to her employment (hiring, wages, any discipline, and separation of employment), Bates labeled DEF W&S_3 – 107, 128 – 131. On the same date, Defendant W&S provided the personnel files of Jason Roberts (Bates labeled DEF W&S_108 – 127), Jerry Corr (Bates labeled DEF W&S_146 – 224), and Robert Horner (Bates labeled DEF W&S_225 – 340). Defendant also supplemented its response on September 15, 2025, and provided additional documents (Bates labeled DEF W&S_752 – 758). (Ex. B – Defendant W&S's Supplemental Responses to Plaintiff's First Set of Requests for Production.) Prior to filing her Motion to Compel, Plaintiff had not referenced Roberts' alleged retention bonus or otherwise requested documents pertaining to any retention bonus. Defendant W&S maintains that it has produced the personnel files of the requested individuals, and that the request is not proportional to the needs of this case, but it is willing to determine if there are records reflecting whether a retention bonus was paid to Roberts, and if so, if Roberts returned the retention bonus or any amount thereof.

Request No. 4 states, "Produce all performance reviews, complaints, records of promotions, demotions or disciplinary actions for the following employees: Lauren Ballard, Jason Roberts, Jerry Corr (Coor), Robert (Bob) Horner." Through its document productions on July 8, 2025, and October 21, 2025, Defendant W&S has provided <u>all</u> such documents (to the extent they exist). Plaintiff has failed to explain how the document productions are deficient. Upon Defendant

W&S's document productions which include all documents responsive to this request, Defendant maintains that this request has been resolved and is now moot.

### f. Request Nos. 2 and 3

Request No. 2 states, "Produce all training records for each employee identified as a witness by the Defendant, in addition to the training records for the following employees: Lauren Ballard, Jason Roberts, Jerry Corr (Corr), Robert (Bob) Horner." Through its supplemental document production on October 21, 2025, Defendant W&S has provided all such documents that are responsive to this request. Plaintiff has failed to explain how the document productions are deficient. (Ex. C – Defendant W&S's Second Supplemental Responses to Plaintiff's First Set of Requests for Production.) Upon Defendant W&S's document productions which include all documents responsive to this request, Defendant maintains that this request has been resolved and is now moot.

Request No. 3 states, "Produce all training materials and certifications related to discrimination, harassment, work place conduct, off site conduct, interaction with customers, drug and alcohol use provided to employees in the 2 years preceding the incident at issue." Again, through its supplemental document production on October 21, 2025, Defendant W&S has provided all such documents that are responsive to this request. (Ex. C – Defendant W&S's Second Supplemental Responses to Plaintiff's First Set of Requests for Production.) Plaintiff has failed to explain how the document productions are deficient. To the extent Plaintiff now alleges in her Motion that Defendant W&S may have considered the request for leave an ADA or FMLA matter, this is the first Defendant W&S has heard of such allegations and the document Defendant W&S maintains as it relates to Plaintiff's request for leave and related communications with Defendant

13

W&S's Human Resources personnel have been produced.[4] Plaintiff further states, "The RFP is an attempt to capture all Defendant's materials related to Plaintiff, her employment and the incidents complained of that may be within the employer's possession and control." (ECF No. 107 at 14-15.) To date, all such documents have been provided to Plaintiff, and she has failed to identify any actual deficiency in the document productions. Upon Defendant W&S's document productions which include all documents responsive to this request, Defendant maintains that this request has been resolved and is now moot.

### g. Request Nos. 6, 7, 11, 20, 28, 29

The requests pertaining to Requests Nos. 6, 7, 11, 20, 28, and 29 in Plaintiff's Motion appear to be blanket requests to cover documents falling under these requests. On September 15, 2025, Defendant provided supplemental responses and a supplemental document production identifying all documents in its possession responsive to Requests Nos. 6, 7, 11, and 20 by Bates label. In addition, Defendant W&S is not withholding any responsive documents. Plaintiff has failed to explain how these tailored supplemental responses are deficient and the general requests to the Court in her Motion as they relate to these Requests are not sufficient to notify the Court or Defendant W&S of what documents she is looking for. Therefore, Defendant maintains that this request has been resolved and is now moot.

Pertaining to Requests Nos. 28 and 29, Defendant W&S maintains that it has produced documents responsive to this request and is not withholding any documents. To that end, Defendant W&S will produce a supplemental response to Requests No. 28 and 29, and will identify all responsive documents by Bates label.

---

[4] Plaintiff had been employed by W&S for less than 2 months when she took leave, and so she was not eligible for leave under FMLA.

### h. Request Nos. 8, 10, 17, 40, 41

As it relates to Requests 8, 10, 17, 40, and 41, Plaintiff states, "Defendant provided illegible materials. … Plaintiff asks that the Defendant be ordered to produce the information in legible form." On October 21, 2025, Defendant W&S provided a legible copy[5] of its Employee Handbook re-Bates labeled DEF W&S_000017 – 107, and Plaintiff has not informed Defendant W&S that the copy provided is illegible. Thus, Defendant maintains that this request has been resolved and is now moot.

### i. Request Nos. 11 and 13

Request No. 11 states, "Produce all documentation, reports notes and records relating to any internal, or EEO, ADA, FMLA, harassment or discrimination investigation of Plaintiff Ballard or Defendant Roberts, including written statements, investigator notes, transcripts or notes taken from potential witnesses concerning the facts or issues of this action. Please include all findings and conclusions." Through its supplemental responses and document production on October 21, 2025, Defendant W&S has provided <u>all</u> such documents that are responsive to this request, which it has identified by Bates label. (Ex. C – Defendant W&S's Second Supplemental Responses to Plaintiff's First Set of Requests for Production.) Plaintiff has failed to explain how the document productions are deficient. Upon Defendant W&S's document productions which include all documents responsive to this request, Defendant maintains that this request has been resolved and is now moot.

---

[5] On July 8, 2025, Defendant W&S provided a copy of the Employee Handbook in its document production to Plaintiff's Counsel and did not realize that the text in the copy provided electronically had become pixelated and was therefore difficult to read. As provided for above, a legible copy has been provided to counsel for all parties.

Request No. 13 states, "All complaints, reports or incident forms relating to the alleged incidents alleged in the complaint whether made by Plaintiff or any other person, agent or employee of the Defendant." To date, all such communications in Defendant W&S's possession have been provided to Plaintiff, and she has failed to explain how the responses and document productions, and supplemental productions, are deficient. Defendant maintains that this request has been resolved and is now moot.

### j. Request Nos. 31, 32, 33, 34, 35, 36, 37 (Requests Regarding Financial Material)

Plaintiff requests the following financial information on Weston & Sampson because she "is seeking punitive damages in this matter and as such seeks information on the financial health of Weston & Sampson," and she alleges she "is entitled to discover information relating to the defendant's ability to pay punitive damages." (ECF No. 107 at 16, 19):

31. Produce all financial statements (including balance sheets, income statement, and statements of cash flow) for the Defendant for the past five (5) years.

32. Produce all tax returns filed by the Defendant for the past five (5) years.

33. Produce copies of any audited or unaudited financial reports, including reports prepared for internal use or for third parties such as banks or investors, for the past five (5) years.

34. Produce any documents reflecting the valuation of the Defendant company or its subsidiaries (if any) within the past five (5) years, including any valuations conducted for mergers, acquisitions, insurance, litigation, or financing.

35. Produce any documents identifying the company's assets, including real property, equipment, intellectual property, subsidiaries, and investments, along with estimated or appraised values.

36. Produce all documents showing ownership structure, including the names and ownership percentages of all shareholders, members, or beneficial owners.

37. Produce copies of any loan applications, credit agreements, or financing arrangements submitted to any financial institution within the past five (5) years.

(ECF No. 107-1 at 15-16.)

As an initial matter, W&S is an employee-owned company. In addition, the declaration for the insurance policy applicable to this action, including policy limits, has been provided to the Parties. Further, as W&S employs over 500 individuals, the damages cap for compensatory as well as punitive damages for Plaintiff's Title VII claims against W&S is $300,000. *See* 42 U.S.C. § 1981a(b)(3)(D).[6] While Defendant W&S maintains its objections to Plaintiff's requests 33 through 37, reproduced above, and does not believe that such extensive requests for financial information are appropriate, let alone proportional to the needs of this case, it will provide information to the Parties regarding its Summary Annual Reports ("SARs") for the past five (5) years.[7] Thus, as Defendant W&S will produce SARs, and as all Parties have access to IRS Form 5500s, this shall satisfy Plaintiff's alternative request that Defendant W&S "provide sufficient data of net worth." (ECF No. 107 at 21.)

**CONCLUSION**

Defendant W&S maintains that it has engaged in the discovery process in this case in good faith and that it has produced responses and documents responsive to Plaintiff's requests. Defendant W&S further asserts that it fully intends to comply with its obligations under Fed. R. Civ. P. 26(e), and Defendant will supplement its discovery responses in a timely manner should it learn that certain material with respect to its responses is incomplete. For the foregoing reasons, Defendant W&S requests that the Court deny Plaintiff's Motion in its entirety.

---

[6] 42 U.S.C. § 1981a(b)(3)(D) states: "The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party— (D) in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000."

[7] Defendant W&S also notes that Plaintiff, and all parties in the instant action, can look up W&S's Form 5500, and related financial statements, filed with the IRS to the extent it pertains to five (5) years of financial information requested by Plaintiff.

Respectfully submitted this 31st day of October, 2025.

> By: *s/ D. Randle Moody, II*
> D. Randle Moody, II (Fed. I.D. No. 7169)
> Email: Randy.Moody@jacksonlewis.com
> Laura A. Ahrens (Fed. I.D. No. 13396)
> Email:  laura.ahrens@jacksonlewis.com
>
> JACKSON LEWIS P.C.
> 15 South Main Street, Suite 700
> Greenville, SC 29601
> (864) 232-7000
>
> *ATTORNEYS FOR DEFENDANT WESTON & SAMPSON ENGINEERS, INC.*